# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HALO CREATIVE & DESIGN LIMITED, a Hong Kong company, HALO TRADEMARKS LIMITED, a Hong Kong company and HALO AMERICAS LIMITED, a Hong Kong company, | ) ) ) ) ) | |
| *Plaintiffs and Counter-Defendants* | ) ) | Civil Action No. 1:14-cv-08196 |
| v. | ) ) | Judge Harry D. Leinenweber |
| COMPTOIR DES INDES INC., a Quebec corporation, CDI INTERNATIONAL, and CDI FURNITURE, | ) ) ) ) ) | Magistrate Judge Susan E. Cox |
| *Defendants and One Counter-Plaintiff.* | ) | |

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HALO'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO LOCAL RULE 56.1**

Plaintiffs and Counter-Defendants HALO CREATIVE & DESIGN LIMITED, HALO TRADEMARKS LIMITED and HALO AMERICAS LIMITED (collectively, "Halo"), herewith submit the following Statement of Undisputed Material Facts in Support of the accompanying Motion for Summary Judgment, in accordance with Local Rule 56.1.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1)      Halo is the legal and beneficial owner of all right, title and interest in and to (a) U.S. Design Patent No. D655,526 S, entitled "Armchair," issued March 13, 2012 ("the '526 Patent"); (b) U.S. Design Patent No. D655,100 S, entitled "Seating Furniture" issued March 6, 2012 (the "the '100 Patent"); and (c) the trademark **ODEON™** in association with lighting fixtures.  (Exhibit 1, Stipulation as to Liability on Patent & Trademark Claims (Counts I, II, and IV of the First Amended Complaint, ¶¶ 3-4.) The '526 Patent, the '100 Patent, and the

**ODEON™** trademark are each valid, subsisting and enforceable intellectual property rights owned by Halo. (*Id.* at ¶ 5.)

2)      Comptoir Des Indes Inc., CDI International and CDI Furniture (collectively, "CDI") have imported, offered for sale and/or sold products known as the "Vintage Leather Chair" and the "Aero Chair," as reflected in Exhibit 1, at Exhibit A. CDI's importation, offer for sale and/or sale of each of those products have admittedly infringed Halo's exclusive design patent rights under the '526 Patent. (*Id.* at ¶ 7.)

3)      CDI has also imported, offered for sale and/or sold products known as the "Eaton 3 Seater" and the "Eaton 1 Seater," as reflected in Exhibit 1, at Exhibit B. CDI's importation, offer for sale and/or sale of each of those products, have admittedly infringed Halo's exclusive design patent rights under the '100 Patent. (*Id.* at ¶ 10.)

4)      CDI has imported, offered for sale and/or sold products known as the (1) "1920s Odeon Glass Fringe 5-Ring Chandelier," (2) "1920s Odeon Glass Fringe 3-Ring Chandelier," (3) "1920s Odeon Glass Fringe Floor Lamp," and (4) "1920s Odeon Glass Fringe Table Lamp." (*Id.* at ¶ 12.) CDI's use of the designations "1920s Odeon Glass Fringe 5-Ring Chandelier," "1920s Odeon Glass Fringe 3-Ring Chandelier," "1920s Odeon Glass Fringe Floor Lamp," and "1920s Odeon Glass Fringe Table Lamp," each of which incorporates the word "Odeon," and has admittedly infringed Halo's exclusive trademark rights in and to the trademark **ODEON™**. (*Id.* at ¶ 13.)

5)      Jonathan Malka has been working at CDI since July 2014. (Exhibit 2, Excerpts from April 27, 2017 Deposition of Jonathan Malka ("Malka Deposition"), at 8:17-19.) Mr. Malka serves as CDI's "Director of Product Development and Marketing," and has held that title since his employment with CDI began. (*Id.*, Malka Deposition, at 8:20-9:2.) Mr. Malka's main

job responsibility is to "oversee all marketing activities," and "product development efforts."
(*Id.*, Malka Deposition, at 9:3-7.)

     6)    Halo designs and distributes to its retail customers its own furniture and lighting products, and tries to make sure that those exclusive designs and products are not available "anywhere else," i.e., through any distributor but Halo. (Exhibit 2, Malka Deposition, at 66:6-13.)

     7)



     9)    From 2011 to 2013, CDI did not have any employees or contractors responsible for generating its own original designs for furniture and lighting products. (Exhibit 2, Malka Deposition, at 20:4-14; Exhibit 4, Excerpts from April 26, 2017 Deposition of David Ouaknine ("Ouaknine Deposition"), at 102:13-22.) During that time, CDI's products were requested and acquired from CDI's Asian suppliers, and/or were "designed" and supplied by other companies in Asia. (*See* Exhibit 2, Malka Deposition, at 20:18-24). CDI hired its first CDI designer around July 2014. (*Id.,* Malka Deposition, at 20:9-14.)

10) ████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████

11)     When CDI began to sell the accused products, CDI was aware that Restoration

Hardware was selling "versions"[1] of those products. (Exhibit 2, Malka Deposition, at 207:7-13.).

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████

███████████████

12) ████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████

---

[1] *See* Exhibit 4, Ouaknine Deposition, at 91:15-22 (explaining that when CDI would see a product being sold by competitors, CDI would decide to offer "a version of" that product that is "similar, in the same family," "but not exactly the same," as the original product) ███████████████ xhibit 4, Malka Deposition, at 53:13- 55:6.

13)     CDI had access to Halo's product designs by virtue of Halo's products being offered for sale through Restoration Hardware and being shown on Restoration Hardware's website. (*See* Exhibit 2, Malka Deposition, at 53:13- 55:6.)

14)     ███████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████

15)     CDI had knowledge of Restoration Hardware's products before it decided to sell its own "versions" of those products. (Exhibit 2, Malka Deposition, at 216:3-7.)

16)     When CDI ordered the manufacture of, and sold, its own "versions" of Halo products, it claims that it believed it could do so because the product listing on Restoration Hardware's website purportedly did not have a copyright or patent notice shown on (or near) the product. (Exhibit 4, Ouaknine Deposition, at 38:16-39:4, 97:4-19, 130:22- 131:9, 139:2-15).

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

18)     But, in a declaration filed under oath, Mr. Ouaknine stated that when CDI "introduced the accused products to the market in the United States, I had no knowledge that Halo claimed copyright protection in its furniture and lighting designs." (Exhibit 11, August 18, 2016 Declaration of David Ouaknine, at ¶11.)

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████



22)     Halo's Aviator Tomcat Chair (as shown at Dkt. No. 67-1, pp. 38-44) includes two separate metallic side sections that appear similar to a wishbone-shaped piece enveloping the seat. The metallic side sections are not actually connected to each other in the back of the seat, and each side section features an original pattern of stainless steel panels, which appears to be riveted together, with a distressed, shiny metallic finish, and with leather positioned on the top. (*See id.*, Dkt. No. 67-1, pp. 38-44.)

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

24)     Timothy Oulton is the Founder of, and Creative Director for, Halo—and he currently acts as its CEO. (Exhibit 16, Excerpts from June 21, 2017 Deposition of Timothy Oulton ("Oulton Deposition"), at 7:10-13.)  Mr. Oulton was designated to testify in this case under certain Rule 30(b)(6) categories, including (1) the design and manufacturing of Halo's furniture and lighting products; (2) Halo's product designs; (3) Halo's efforts to design and manufacture its products; among others. (Exhibit 17, Halo's Responses and Objections to CDI's Notice of Deposition Pursuant to FRCP 30(b)(6), pp. 4, 9-10.)

25)     The Aviator Tomcat Chair was designed so that the arms appear to be removable, and the seat portion would still function as a chair without the arms. (Exhibit 16, Oulton Deposition, at 32:14-35:7.)  The original design elements of the Aviator Tomcat Chair include the shape and arrangement of the arms, the "random panels," "the way the rivets are attached," "the stitching," and the sum of all its parts. (*See id*., Oulton Deposition, at 32:14-35:7.) Each

Aviator Tomcat Chair created by Halo is intended to have the same structure of metallic panels and rivet pattern. (*Id.*, Oulton Deposition, at 36:22-37:13.)

26) If the leather was removed from the top of armrest, the lines in the leather were changed, or the metal panels were removed, the product would still function as a chair. (Exhibit 2, Malka Deposition, 217:22-219:19.)

27) Halo's Aviator Valkyrie Desk (as shown at Dkt. No. 67-1, pp. 19-25) includes an original pattern of stainless steel panels, riveted together, with a distressed, shiny metallic finish. (Exhibit 2, Malka Deposition, at 186:6-187:5.) The riveted stainless steel panels make the desk look "nice." (*Id.*, Malka Deposition, at 187:22-24.) If the riveted stainless steel panels were removed from the surface of the Aviator Valkyrie Desk, the product would continue to stand up and function as a desk or table, but it would not look as "attractive" as it looks with the riveted stainless steel panels. (*Id.*, Malka Deposition, at 188:16 – 189:5). Each Aviator Valkyrie Desk created by Halo is intended to have the same structure of metallic panels and rivet pattern. (Exhibit 16, Oulton Deposition, at 54:18-22.)

28) The original design elements of the Aviator Valkyrie Desk include the double curvature, "the way it slants, the [riveted] panels, folding the metal over the corners." (Exhibit 16, Oulton Deposition, 52:11-53:3.)

29) Halo's Mars Chair (as shown at Dkt. No. 67-1, pp. 28-35) includes two stainless steel, curved metallic structures that were designed to be "sculptural," "to look like a piece of art." (Exhibit 16, Oulton Deposition, at 56:18-57:5.) The metallic structures each include a "really artistic" "reveal in the side," "like a window" (or "gap") "in the side of the chair." (*Id.*, Oulton Deposition, at 57:13-58:5.) The two curved, metallic structures with the "reveals" or "windows" that form an arm of the chair were designed to look like they can be removed from

8

the chair and serve as an independent three dimensional sculptural work of art. (*Id*., Oulton Deposition, at 56:21-57:12.)

30)    Halo's design for the Mars Chair reflects several design choices, including the color of the leather, the curvatures of the arms, the width or narrowness of the leather in the back "where the two metal frames meet," the seat of the chair floating off the ground, and the stitching on the leather. (Exhibit 2, Malka Deposition, at 207:22-213:6.)  If one were to remove or change those features, the product would still function as a chair. (*See id*., Malka Deposition, at 207:22-213:6.)

31)    Halo's Blackhawk Coffee Table (as shown at Dkt. No. 67-1, pp. 47-52), Blackhawk Square Side Table (as shown at Dkt. No. 67-1, pp. 55-59), and Blackhawk Chest (as shown at Dkt. No. 67-1, pp. 62-67), each feature  an original pattern of stainless steel panels, riveted together, with a distressed, shiny metallic finish. (Exhibit 2, Malka Deposition, at 222:7-224:3; Exhibit 16, Oulton Deposition, at 61:7-64:13.) Those products each have curved edges and curvature pleats that are riveted into each corner, and the three pieces have similarities in their rivet patterns, but the patterns are "unique depending on the shape of the piece." (*Id*., Oulton Deposition, at 64:6-13.) Those products also have circular metal handles that are supposed to look like a motorbike petrol cap. (*Id*., Oulton Deposition, at 61:17-62:7.) Each of the Blackhawk Coffee Table, Blackhawk Square Side Table, and Blackhawk Chest are intended to have rivet patterns that are consistent from piece to piece—the intention was "to make [the pattern] appear random but not be random." (*Id*., Oulton Deposition, at 62:9-64:5.)

32)    The riveting and metal paneling are not necessary for those products to function as a coffee table, a side table or a chest. (Exhibit 2, Malka Deposition, at 224:4-9.)  If the riveted stainless steel plates and curved pleats were removed from the surface of those products, they

9

would continue to serve as storage devices—and as chests, side tables and coffee tables, respectively. (*Id.*, Malka Deposition, at 224:10-14). If the metal pull handles were removed, the coffee table would still continue to function as a coffee table. (*Id.*, Malka Deposition, at 225:6-13.)

33)     Halo's Stonyhurst Lamp Table (as shown at Dkt. No. 67-1, pp. 70-78) features wood banding in between each drawer, which wraps around the sides and back of the table, which banding appears to be locked in place by a series of pins or studs. The product also features leather handles on the side, and leather corner and edge wraps, which also appear to be held in place by a large number of pins or studs. (*See* Exhibit 16, Oulton Deposition, at 70:2-73:2, 75:12-76:24.)

34)     The Stonyhurst Lamp Table was conceived as part of a collection built around vintage steamer trunks, and the wooden banding, leather corners and leather handles, which are "absolutely necessary" for travel trunks, serve as adornment for a lamp table. (*See* Exhibit 16, Oulton Deposition, 70:19-72:15.) Indeed, the leather edging is "pure adornment," and provides no "structural reinforcement"—in fact, even though it is glued to the table, the leather edging also contains hundreds of pins or studs purely for adornment. (*Id.*, Oulton Deposition, at 72:25-73:14, 75:20-76:24.)

35)     If the wood strips, metal rivets (pins or studs), leather handles and leather corner and edge wraps of the Stonyhurst Lamp Table were removed from the product, it would continue to serve as a table. (Exhibit 2, Malka Deposition at 228:20-230: 19.)

36)     Halo's Ampleforth Chest (as shown at Dkt. No. 67-1, pp. 81-87) features black leather strips in between each drawer, which strips wrap around the sides and back of the table, and which appear to be locked in place by a series of pins or studs. The product also features

leather corner and edge wraps, which also appear to be held in place by a large number of pins or studs. This chest also features leather handles, which appear to be locked in place by rivets or tack heads. (*See* Exhibit 16, Oulton Deposition, at 70:2-73:2, 75:12-76:24, 78:16-25.)

37)     If the wood strips, metal rivets (pins or studs), leather handles, and leather corner and edge wraps were removed, the product would continue to serve as a chest.  (Exhibit 2, Malka Deposition at 230:20-232:7.) The leather handles are a "design choice." (*Id.*, Malka Deposition, at 231:12-14.)

38)     The chest was conceived as part of a collection built around vintage steamer trunks, with several external features that serve only as adornment for furniture. (*See* Exhibit 16, Oulton Deposition, 78:16-25.)

39)     Halo's **ODEON™** products comprise a series of cascading concentric circles (or, in one case, a rectangle) of hanging prismatic crystals (two concentric circles for the Odeon Table Lamp and Odeon Floor Lamp, three concentric circles for the Odeon Chandelier Small, five concentric circles for the Odeon Chandelier Medium, and two concentric rectangles for the Odeon Rectangular Chandelier). (See Dkt No. 67-1, pp. 90-93, 96-99, 102-105 and 156-162.)

40)     From the outside viewer's perspective, each concentric circle or rectangle increases in length as one moves from the outside edge of the product toward the shared center of the circle or rectangle—from the shortest, outermost concentric circle or rectangle, to the longest, innermost concentric circle. (*See* Exhibit 2, Malka Deposition, at 236:13-21.)

41)     The original design elements of the **ODEON™** products include the arrangement of cascading crystal circles and the shape of the prisms. (*See* Exhibit 16, Oulton Deposition, 86:4-88:3.)

42) The prismatic crystals are not a light bulb or a source of light. (*See* Exhibit 2, Malka Deposition, at 237:3-17.) If the concentric arrangement of prismatic crystals were removed, the remaining light bulbs and light would continue to function as a chandelier, to light a room. (*Id*., Malka Deposition at 237:18– 238:24.)

43) The concentric arrays of prismatic crystals, both circular and rectangular arrays, can each be imagined as being physically removed from the lighting elements, and serving as its own "artistic piece" or "piece of art." (Exhibit 2, Malka Deposition, at 278:3-280:12.)

44) Halo's Zig Zag Chandelier (as shown at Dkt. No. 67-1, pp. 108-111) and its other "Zig Zag" lamp products include a circular metallic "cage," comprising two parallel metallic circles positioned in horizontal planes. Connecting the two circles is a metallic diamond latticework that forms an intricate metal skeleton of the "cage." The latticework is mainly equilateral diamonds in the space between the metallic circles, but it forms isosceles triangles where the cage meets the metallic circles. A single crystal ball is suspended like a pendant from the apex of each equilateral diamond. (*See id.*, Dkt. No. 67-1, pp. 108-111.)

45) The original design elements of the Zig Zag Chandelier and related "Zig Zag" products include the metallic cage, and the arrangement of individual crystal balls hanging in each diamond. (*See* Exhibit 16, Oulton Deposition, 98:4-11.)

46) Halo believes that consumers do not buy its chandeliers to serve merely as a light source, in part because "[t]hey don't add much light," and many people have "spot lights" or "recessed lighting" in the ceiling. (*See* Exhibit 16, Oulton Deposition, at 103:17-104:7.) Rather, Halo believes that consumers buy its chandeliers "as a statement" and "as a sculpture." (*See id.*, Oulton Deposition, at 103:17-104:7.)

47)     The circular metallic cage with the crystal balls can be imaginatively or physically removed from the lighting elements, but the remaining light bulbs and light would continue to function as a chandelier, to light a room. (Exhibit 2, Malka Deposition, at 275:17-276:20.)

48)     Further, the metallic cage with the crystal balls could be physically separated from the source of light, set aside, sit on its own and serve as "piece of art." (*Id*., Malka Deposition, at 277:3-23.)

49)     The metallic cage with the crystal balls is what gives the product a "look or style" that makes it attractive to consumers. (*Id.*, Malka Deposition, at 276:21-277:2.)

50)     Halo's Gyro Crystal Chandelier (as shown at Dkt. No. 67-1, pp. 114-119) has a metallic cage or "orb" comprised of aged metallic semicircular tubes, all converging on a little circle or ring at the horizontal equator of the orb, which orb surrounds a series of dangling crystals of various shapes and sizes, including teardrop-shaped crystals, floral-shaped crystals and chains of crystals. (*See id.*, Dkt. No. 67-1, pp. 114-119.)

51)     The original design elements of the Gyro Crystal Chandelier and related "Gyro Crystal" products include the "Gyro" orb, the little circle or ring on the equator, and the "sum of the parts" relative to the crystals described above. (*See* Exhibit 16, Oulton Deposition, 105:22-108:19, 109:15-110:13.)

52)     The metallic cage in Halo's Gyro Crystal Chandelier and related "Gyro Crystal" products has no lighting elements. (Exhibit 2, Malka Deposition, at 290:20- 291:6.)  The metallic cage can be removed from the lighting product, and the product "would still function as a chandelier"—in fact, removing the cage would have "a minimal effect on the lighting." (*See id*., Malka Deposition, at 291:7-19, 292:6-12.)

13

53)     Further, if that cage were put on a table or hung from a ceiling, that cage would serve as a separate "artistic work."  (*See id.,* Malka Deposition, at 291:20-292:5.)

54)     The arrangement of crystals within Halo's Gyro Crystal Chandelier and related "Gyro Crystal" products reflects numerous design choices, including the shape of the crystals, the placement of the crystals, the shape of the metallic piece that holds up the crystals. (*See id.*, Malka Deposition, at 295:5-296:10.) Removing all of those crystals would still result in a fully functional chandelier that "would provide light." (*See id.*, Malka Deposition, at 296:11-297:11.)

55)     Further, the removed arrangement of crystals, hanging "in a very ornate, decorative way," could serve as "its own piece of art." (See *id.*, Malka Deposition, at 297:15-24.)

56)     Halo's Crystal Chandeliers (as shown at Dkt. No. 67-1, pp. 122-123, 126-129) each comprise an artificially aged metallic structure, that was designed to be a smaller, thinner frame, with dangling crystals of various shapes and sizes, hanging from various places on the metallic frame. (*See* Exhibit 16, Oulton Deposition, 117:4-24.)

57)     The original design elements of Halo's Crystal Chandelier products include the "lightness" of product, with a smaller, lighter frame, the rusted frame, fewer crystals, and the "lowermost crystal ball," among the other "sum of the parts" elements. (*See.*, Oulton Deposition, at 115:24-119:11.)

58)     The arrangement of crystals within Halo's Crystal Chandelier products reflects numerous design choices, including the shape of the crystals, the placement of the crystals, the shape of the metallic piece that holds up the crystals. (*See* Exhibit 2, Malka Deposition, at 295:5-296:10.) Removing all of those crystals would still result in a fully functional chandelier that "would provide light." (*Id.*, Malka Deposition, at 296:11-297:11.)

14

59)     Further, the removed arrangement of crystals, hanging "in a very ornate, decorative way," could serve as "its own piece of art." (*Id.*, Malka Deposition, at 297:15-24.)

60)     Halo's Georgian Architectural Dining Table (as shown at is a table comprised of unfinished, reclaimed wood, and is supported by a base made of two intricately wood-carved "pillars" or "columns" ending in a "T"-shaped base. (Exhibit 2, Malka Deposition, at 301:16-302:10.)  The original design elements of Halo's Georgian Architectural Dining Table include the scale and carving of the leg. (*See* Exhibit 16, Oulton Deposition, at 122:12-23, 127:18-129:4.). The pillars feature two "accordion-type" shapes of wood jutting in and out, as well as a separate "belly" section between the two "accordion" sections.  (Exhibit 2, Malka Deposition, at 302:16-303:9.)

61)     The "accordion" features and the "belly" feature of Halo's "Georgian Architectural Dining Table" are sculptural features that are not necessary for the table to serve as a table. (Exhibit 2, Malka Deposition, at 303:10-13.)  Rather, the sculptural pillars of Halo's Georgian Architectural Dining Table can be removed, and serve as an "artistic column." (*Id.*, Malka Deposition, at 304:24- 305:5.)

62)     Halo's Georgian Architectural Mirror (as shown at Dkt. No. 67-1, pp. 142-144) is an extremely large mirror surrounded by an intricately-carved wood frame.  Among other carvings, the top part of the frame includes carvings that appear to be three vases, one on each of the right and left sides, and one in the middle.  Between each vase is a carving of two sets of "drapes." Halo's original design elements in the Georgian Architectural Mirror include "stripping away the carving" that would normally be present in a traditional Georgian door frame or fireplace, and replacing them with Halo's intricate carvings on the wood frame. (*See* Exhibit 16, Oulton Deposition, at 132:12-19.)

15

63)     The wooden frame around Halo's Georgian Architectural Mirror can be removed from the mirror and serve as a "piece of art" and a "carved sculpture." (Exhibit 2, Malka Deposition, at 315:20- 316:4; 316:12-21.)

64)     Halo's Globetrekker Coffee Table (as shown at Dkt. No. 67-1, pp. 147-152) features an original pattern of stainless streel panels, riveted together, with a distressed, shiny metallic finish.  The Globetrekker Coffee Table also has wood strips, which wrap around the table, which strips appear to be locked in place by pins or studs.  The Globetrekker Coffee Table further features leather corner wraps, which also appear to be held in place by pins or studs. (*See id*., Dkt. No. 67-1, pp. 147-152.)

65)     Halo's Oviedo Chaise (as shown at Dkt. No. 67-1, pp. 165-171) includes a curved metallic frame attached to a leather cushion, which has stitching in several equidistant, horizontal lines that make the cushion tuft out into accordion-like pillows. (*See id*., Dkt. No. 67-1, pp. 165-171.)

66)     The stitching that forms the accordion-like pillows in the Oviedo Chaise is not necessary for the chair to serve as a lounge chair. (Exhibit 2, Malka Deposition, at 325:2-4.).  A "flat piece of leather with some sort of foam inside" would serve the same purpose as the accordion-like pillows. (*Id*., Malka Deposition, at 324:15-21.)

67)     When the frame of the Oviedo Chaise is rested on its side, "it looks like a piece of art and you wouldn't even have to put a cushion on it." (*See* Exhibit 16, Oulton Deposition, at 141:16-20.)

68)     Halo's Scaffolding Table products (as shown at Dkt. No. 67-1, pp. 174-182, 185-190) comprise two or more levels of an industrial distressed metallic frame. The wooden panels were designed to be placed "front to back to make it feel like an old vintage cart when normally

you'd run the wood left to right." (*See* Exhibit 16, Oulton Deposition, at 142:20-143:9.) The design also includes flat metallic rods positioned in the shape of an "X" on the sides of each table. The Scaffolding Table products further feature metallic caps on the corners of each table that appear to be attached to the table by tacks or bolts.

69)     Halo's inspiration for the Scaffolding Table products was to make it "look and feel like a bridge," so the original design elements include the metallic "X," the rivets, the caps on the corners, and running the wood front to back.  (*See* Exhibit 16, Oulton Deposition, at 142:20-143:18.)

70)     The Scaffolding Table could be designed in a way where the flat metallic rods in the shape of an "X" and the metallic caps were not necessary to support the structure of the table. (Exhibit 2, Malka Deposition, at 333:18-24, 336:14-20.)

71)     CDI's Counterclaim asserts that Halo purportedly interfered with CDI's "valid business relationship" with only one third party: Restoration Hardware.  (*See* Dkt. No. 94, ¶¶ 43, 45, 48, 50.)

72)     Representatives from Restoration Hardware entered one of CDI's showrooms at a trade show in High Point, North Carolina. (Exhibit 2, Malka Deposition, at 78:23-79:9.)

73)      A lot of people visit CDI's showrooms at trade shows.  (*Id*., Malka Deposition, at 80:13-15.) Not every person or company that enters CDI's showroom purchases something from CDI or forms a business relationship with CDI.  (*Id*., Malka Deposition, at 80:16-23.)  The mere fact that a person or company visited CDI's showroom does not mean that CDI has a reasonable expectation of entering into a business relationship with that person or company.  (*Id.*, Malka Deposition, at 80:24–81:4, 81:24-85:4.)

17

74)      CDI does not have any emails or other documentation showing that Restoration Hardware ever expressed an interest in any of CDI's products.  (*Id*., Malka Deposition, at 81:5-23.) CDI does not have any emails describing a representative of CDI attempting to sell products to Restoration Hardware. (Exhibit 4, Ouaknine Deposition, 41:9-21.) Restoration Hardware has never requested a sample of a CDI product. (Exhibit 2, Malka Deposition, at 81:14-17.)

75)      When representatives of Restoration Hardware visited CDI's showroom, David Ouaknine was not there at the time, so he is "assuming" that his sales representatives "would try and sell [to] Restoration Hardware." (Exhibit 4, Ouaknine Deposition, at 42:17-21.) ██████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

76)      The only evidence supporting CDI's "reasonable expectation" of entering into a business relationship with Restoration Hardware is that Restoration Hardware's representatives one time visited CDI's showroom at a trade show, ████████████████████████. (Exhibit 2, Malka Deposition, at 87:4-14.)

77)      CDI is not "aware of any evidence showing that Halo knew about CDI's business expectations relative to Restoration Hardware." (*Id*., Malka Deposition, at 88:14-89:14.) Halo could not be aware of ████████████████████████████████████████████

████████████████████████████████████ (*Id*., Malka Deposition, at 89:15-90:15.)

78)      CDI has no evidence that Halo purportedly knew of CDI's business expectations with Restoration Hardware. (Exhibit 4, Ouaknine Deposition, at 369:7-13.)

79)      CDI has no evidence that Halo possesses monopoly power in the relevant market (which CDI defines as "our type of look" and "my type of niche"). (*Id*., Ouaknine Deposition,

355:3-358:25.) CDI's claim that Halo possesses ██████ of the relevant market is based on

David Ouaknine's "assumption." (*Id*., Ouaknine Deposition, at 363:5-23.)


Dated: September 22, 2017       By:    /s/Richard D. Harris
                                      Richard D. Harris, Reg. No. 1137913
                                      Barry R. Horwitz, Reg. No. 6296764
                                      GREENBERG TRAURIG, LLP
                                      77 West Wacker Drive, Suite 3100
                                      Chicago, Illinois 60601
                                      Telephone: 312-456-8400
                                      Fax: 312-456-8435

                                      Attorneys for Plaintiffs and Counter-Defendants
                                      Halo Creative & Design Limited, Halo Trademarks
                                      Limited and Halo Americas Limited

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| HALO CREATIVE & DESIGN LIMITED, a Hong Kong company, HALO TRADEMARKS LIMITED, a Hong Kong company and HALO AMERICAS LIMITED, a Hong Kong company, <br> *Plaintiff,* <br><br> v. <br><br> COMPTOIR DES INDES INC., a Quebec corporation, CDI INTERNATIONAL and CDI FURNITURE <br><br> *Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Cause No. 1:14-cv-08196 <br><br> Judge Harry D. Leinenweber <br><br> Magistrate Judge Susan E. Cox |

## STIPULATION AS TO LIABILITY ON PATENT & TRADEMARK CLAIMS (COUNTS I, II AND IV OF THE FIRST AMENDED COMPLAINT)

Plaintiffs Halo Creative & Design Limited, Halo Trademarks Limited, and Halo Americas Limited (collectively "Halo"), together with Defendants Comptoir Des Indes INC., CDI International and CDI Furniture (collectively "Defendants"), hereby stipulate as follows:

1.  Halo filed its original Complaint in this action on October 20, 2014.

2.  Halo filed its First Amended Complaint in this action on July 29, 2016.

3.  Halo is the legal and beneficial owner of all right, title and interest in and to (a) U.S. Design Patent No. D655,526 S, entitled "Armchair," issued March 13, 2012 ("the '526 Patent"); and (b) U.S. Design Patent No. D655,100 S, entitled "Seating Furniture," issued March 6, 2012 ("the '100 Patent").

4. By virtue of its common law usage of the trademark **ODEON™** in interstate commerce, in association with lighting fixtures, Halo is the legal and beneficial owner of all right, title and interest in and to the trademark **ODEON™**.

5. The '526 Patent, the '100 Patent, and the **ODEON™** trademark are each valid, subsisting and enforceable intellectual property rights owned by Halo. At no time after the date of this Stipulation will Defendants ever challenge the validity or enforceability of any of the '526 Patent, the '100 Patent, or the **ODEON™** trademark.

6. In its First Amended Complaint, Halo alleged that Defendants had marketed, advertised, offered for sale, sold and/or distributed, in U.S. commerce, products, at least some of which were named by Defendants as their "Vintage Leather Chair" and/or their "Aero Chair," amongst other names.

7. CDI's importation, offer for sale and/or sale of each of the "Vintage Leather Chair" and the "Aero Chair" products, as reflected in the attached Exhibit A, amongst other names given to those accused designs, infringed Halo's exclusive design patent rights under the '526 Patent. Accordingly, Defendants are liable to Halo for any and all sales of their "Vintage Leather Chair" and their "Aero Chair," and any of Defendants' other named chairs bearing a patentably indistinguishable design, in an amount of damages to be determined at trial.

8. At no time after the date of this Stipulation will Defendants ever challenge the infringement of the '526 Patent by their "Vintage Leather Chair" and "Aero Chair," and any of Defendants' other named chairs bearing a patentably indistinguishable design.

9.    In its First Amended Complaint, Halo alleged that Defendants have marketed, advertised, offered for sale, sold and/or distributed, in U.S. commerce, products, at least some of which were named by Defendants as their "Eaton 3 Seater" and their "Eaton 1 Seater," amongst other names. The design of Halo's "Scruffy 3 Seater" product is reflected in the '100 Patent.

10.    CDI's importation, offer for sale and/or sale of both the "Eaton 3 Seater" and the "Eaton 1 Seater" products, as reflected in the attached Exhibit B, infringes Halo's exclusive design patent rights under the '100 Patent. Accordingly, Defendants are liable to Halo for any and all sales of their "Eaton 3 Seater" and their "Eaton 1 Seater," and any of Defendants' other named sofas bearing a patentably indistinguishable design, in an amount of damages to be determined at trial.

11.    At no time after the date of this Stipulation will Defendants ever challenge the infringement of the '100 Patent by their "Eaton 3 Seater" and "Eaton 1 Seater," and any of Defendants' other named sofas bearing a patentably indistinguishable design.

12.    In its First Amended Complaint, respectively, Halo alleged that Defendants have marketed, advertised, offered for sale, sold and/or distributed, in U.S. commerce, several products referred to as CDI's (1) "1920s Odeon Glass Fringe 5-Ring Chandelier," (2) "1920s Odeon Glass Fringe 3-Ring Chandelier," (3) "1920s Odeon Glass Fringe Floor Lamp," and (4) "1920s Odeon Glass Fringe Table Lamp." (Dkt. No. 67, at ¶¶ 32-35.)

13.    CDI's use of the four designations identified above, each of which incorporates the word "Odeon," infringes Halo's exclusive trademark rights in and to the trademark **ODEON™**. Accordingly, Defendants are liable to Halo for any and all sales of

3

their "1920s Odeon Glass Fringe 5-Ring Chandelier," their "1920s Odeon Glass Fringe 3-Ring Chandelier," their "1920s Odeon Glass Fringe Floor Lamp," and their "1920s Odeon Glass Fringe Table Lamp" in an amount of damages to be determined at trial.

14.     At no time after the date of this Stipulation will Defendants ever challenge the infringement of Halo's exclusive trademark rights in and to the trademark **ODEON™** by their (1) "1920s Odeon Glass Fringe 5-Ring Chandelier," (2) "1920s Odeon Glass Fringe 3-Ring Chandelier," (3) "1920s Odeon Glass Fringe Floor Lamp," and (4) "1920s Odeon Glass Fringe Table Lamp."

15.     The issues of willfulness and exceptionality, or lack thereof, relative to the above stipulations of validity, enforceability, and liability for Defendants' infringement of Halo's '526 Patent,  the '100 Patent, and its **ODEON™** trademark, are not addressed in this stipulation, and are expressly reserved by all parties for determination at summary judgment or at trial.  Likewise, the amount of damages owed to Halo by Defendants, relative to the above stipulations of liability for Defendants' infringement of Halo's '526 Patent,  the '100 Patent, and its **ODEON™** trademark, including but not limited to compensatory damages and punitive or exemplary damages, in view of the potential for findings of willfulness and exceptionality, or lack thereof, is not addressed in this stipulation, and is expressly reserved by all parties for determination at summary judgment or at trial.

**PLAINTIFFS SO STIPULATE**

**/s Richard D. Harris**
Signature

**Richard D. Harris**
Printed Name

Counsel for Plaintiffs

Dated:        August 8, 2017

**DEFENDANTS SO STIPULATE**

**/s Alastair J. Warr**
Signature

**Alastair J. Warr**
Printed Name

Counsel for Defendants

Dated:        August 8, 2017

5

Exhibit A

EXHIBIT A: STIPULATION AS TO LIABILITY FOR U.S. PATENT NO. D655,526



| Figures of Asserted Design Patent – USD655,526 | Products Sold by Defendants |
|---|---|
| FIG. 1 | CDI's "Vintage Leather Chair" |
| FIG. 2 | CDI's "Vintage Leather Chair" |

EXHIBIT A: STIPULATION AS TO LIABILITY FOR U.S. PATENT NO. D655,526



FIG. 3

CDI's "Vintage Leather Chair"

FIG. 4

CDI's "Vintage Leather Chair"

EXHIBIT A: STIPULATION AS TO LIABILITY FOR U.S. PATENT NO. D655,526



FIG. 6

CDI's "Vintage Leather Chair"

EXHIBIT A: STIPULATION AS TO LIABILITY FOR U.S. PATENT NO. D655,526

| Figures of Asserted Design Patent – USD655,526 | Products Sold by Defendants |
|---|---|
|  Fig. 1 (rotated 180°) |  **CDI's "Aero Chair"** <br><br> **CDI Catalog**, Published July 2013, Page 54, *available at* https://issuu.com/cdif/docs/catalog_july2013 |

EXHIBIT A: STIPULATION AS TO LIABILITY FOR U.S. PATENT NO. D655,526

| Figures of Asserted Design Patent – USD655,526 | Products Sold by Defendants |
|---|---|
| <br>Fig. 1 (rotated 180°) | **CDI's "Aero Chair"**<br><br>Identified as "Our version from Restoration Hardware"<br><br>CDI-0007586 |

Exhibit B

EXHIBIT B: STIPULATION AS TO LIABILITY FOR U.S. PATENT NO. D655,100



| Figures of Asserted Design Patent – USD655,100 | Products Sold by Defendants |
| --- | --- |
| FIG. 1 | "Eaton 1 Seater" **CDI Catalog**, Published July 2013, Page 160, *available at* https://issuu.com/cdif/docs/catalog_july2013 |
| FIG. 2 | "Eaton 3 Seater" – Front View, **CDI Catalog**, Published July 2013, Page 160, *available at* https://issuu.com/cdif/docs/catalog_july2013 |

EXHIBIT B: STIPULATION AS TO LIABILITY FOR U.S. PATENT NO. D655,100



"Eaton 1 Seater" – Front View, **CDI Catalog**, Published July 2013, Page 160, *available at* https://issuu.com/cdif/docs/catalog_july2013

FIG. 4

"Eaton 3 Seater" – Side View, **CDI Catalog**, Published July 2013, Page 160, *available at* https://issuu.com/cdif/docs/catalog_july2013

"Eaton 1 Seater" – Side View, **CDI Catalog**, Published July 2013, Page 160, *available at* https://issuu.com/cdif/docs/catalog_july2013

EXHIBIT B: STIPULATION AS TO LIABILITY FOR U.S. PATENT NO. D655,100

# FIG. 5





"Eaton 3 Seater" – Side View, **CDI Catalog**, Published July 2013, Page 160, *available at* https://issuu.com/cdif/docs/catalog_july2013



"Eaton 1 Seater" – Side View, **CDI Catalog**, Published July 2013, Page 160, *available at* https://issuu.com/cdif/docs/catalog_july2013

EXHIBIT B: STIPULATION AS TO LIABILITY FOR U.S. PATENT NO. D655,100



FIG. 6

"Eaton 3 Seater" – Top View, **CDI Catalog**, Published July 2013, Page 160, *available at* https://issuu.com/cdif/docs/catalog_july2013

FIG. 8

"Eaton 3 Seater" **CDI Catalog**, Published July 2013, Page 160, *available at* https://issuu.com/cdif/docs/catalog_july2013

"Eaton 1 Seater" **CDI Catalog**, Published July 2013, Page 160, *available at* https://issuu.com/cdif/docs/catalog_july2013

# Exhibit 2

Redacted, Filed Under Seal

# Exhibit 3

Redacted, Filed Under Seal

# Exhibit 4

Redacted, Filed Under Seal

# Exhibit 5

Redacted, Filed Under Seal

# Exhibit 6

Redacted, Filed Under Seal

# Exhibit 7

Redacted, Filed Under Seal

# Exhibit 8

Redacted, Filed Under Seal

# Exhibit 9

Redacted, Filed Under Seal

# Exhibit 10

Redacted, Filed Under Seal

# EXHIBIT 11

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HALO CREATIVE & DESIGN LIMITED, a Hong Kong company; HALO TRADEMARKS LIMITED, a Hong Kong company; and HALO AMERICAS LIMITED, a Hong Kong company, | ) ) ) ) ) | Case No. 14-cv-08196 |
| | ) | Judge Harry D. Leinenweber |
| Plaintiffs, | ) ) | Magistrate Judge Susan E. Cox |
| v. | ) ) | |
| COMPTOIR DES INDES INC., a Quebec corporation; CDI INTERNATIONAL; CDI FURNITURE; and DAVID OUAKNINE, | ) ) ) ) | |
| Defendants. | | |

## DAVID OUAKNINE DECLARATION

I, David Ouaknine, under the penalties of perjury, hereby declare:

1)     I am over the age of eighteen, am of sound mind, and have personal

knowledge of the facts stated in this Declaration.

2)     I am a Canadian citizen residing in Montreal.

3)     I am, and at all time relevant to the allegations in the Amended

Complaint have been, the President and CEO of Comptoir des Indes Inc.

4)     I do not own or lease property in Illinois.

5)     I have not entered into contracts with Illinois residents or companies,

and I have not had commercial dealings with Illinois residents or companies.

1

6) I have not traveled to Illinois within the past six years, and have never traveled to Illinois for any business purposes.

7) With respect to the allegations in the Amended Complaint, at all times I acted as an officer of Comptoir de Indes, Inc. and not in my individual capacity.

8) I had no knowledge of Halo's asserted patents before Comptoir de Indes, Inc. offered the accused products for sale in the United States.

9) Halo's products were not, to my knowledge marked with the symbol "TM" prior to Comptoir de Indes, Inc.'s introducing the accused products into the United States.

10) Comptoir de Indes, Inc. offered many of the accused products for sale before Halo filed its applications for copyright registration.

11) When Comptoir de Indes, Inc. introduced the accused products to the market in the United States, I had no knowledge that Halo claimed copyright protection in its furniture and lighting designs.

12) Comptoir Des Indes Inc. was founded in 2002 by my Uncle, Henri Ouaknine.

13) In 2008, when I was 18 years old, my Uncle Henri Ouaknine asked my assistance in obtaining some new domain names for his company because I was more experienced than him in internet-related topics. Because I already had a GoDaddy.com account, I used it to register several domain names on behalf of Comptoir des Indes Inc., including <CDIFURNITURE.COM>.

2

14)   Although I used my GoDaddy.com account to register the <CDIFURNITURE.COM> domain name, Comptoir Des Indes Inc. paid for it and immediately took control of the domain.

15)   After that initial registration, Comptoir Des Indes Inc. took responsibility for maintaining and paying for the domain name registration. The www.cdifurniture.com website has always displayed the corporate web pages of Comptoir des Indes Inc., and not any personal content of mine.

16)   I became an employee of Comptoir des Indes Inc. in late 2011. At that time Comptoir des Indes Inc. had about five employees, and I filled a variety of roles, learning about the business along the way.

17)   Henri Ouaknine passed away in March of 2011, and I became the President and CEO of Comptoir des Indes Inc. in August of 2013.

18)   I do not own, nor have I ever owned, any portion or share of Comptoir des Indes Inc.

19)   All of the actions I take in relation to Comptoir des Indes Inc. are done as part of my job as an employee of Comptoir des Indes Inc.

20)   The Comptoir des Indes, Inc. website, www.cdifurniture.com, does not now contain, nor has it ever contained, functionality allowing internet users to purchase goods and to have those goods shipped to the United States generally and Illinois in particular.

21)   I do not personally showcase, display, and/or offer the accused products for sale in several furniture shows in the United States, including at the Las Vegas

3

World Market in Las Vegas, Nevada, and at the High Point Market in High Point, North Carolina.

22) I do not personally offer such furniture for sale for nationwide distribution within the United States.

23) I do not personally showcase, display, and/or offer the Accused Products for sale through several distributors in the United States, without geographical limitation or restriction as to the method of sale, including through distributors who offer such products for sale over the Internet with free nationwide shipping, including products for sale within or into this judicial district, in direct competition with HALO's products also being sold within this judicial district.

I declare under the penalty of perjury under the laws of the United States that the foregoing statements are true and accurate.

Dated: _Aug. 18, 2016_

_____
David Ouaknine

4

EXHIBIT 12

Message

| | |
|---|---|
| **From**: | Henry--J.S.Y [fswcfurniture9@126.com] |
| **Sent**: | 4/30/2013 2:29:21 AM |
| **To**: | David Ouaknine [david@cdifurniture.com] |
| **Subject**: | Re:Re: special price request for FA1088BR |

David,

I just check with Mr.Tan,as you know,this model has the copy right from Halo Asia,so i think if you sell this model in such quantity,will have the problem.
Are you sure that you keep on buying this model?

--
2013年4月30日

Best Regards

Henry
**PAK FURNITURE**
www.pak-hk.com
Tel: 86-757-29220271 / Fax:86-757-29220275
Email:info@pak-hk.com
      fswcfurniture9@126.com
MSN: henrybusiness9@hotmail.com
SKYPE: henry82999
Mobile: +86-(0)13929908499

At 2013-04-30 10:03:58,"David Ouaknine" <david@cdifurniture.com> wrote:

Dear Henry,

Please tell me what is the best possible price for one 40 hq of that model?

this has nothing to do with the 3 containers we will order please let me know asap. we are in the process of finishing all the orders now.

Thanks,
David O.

On Mon, Apr 29, 2013 at 8:27 PM, Henry--J.S.Y <fswcfurniture9@126.com> wrote:
Hi,Iris,

Sorry,we can not make this chair with price like USD300.



Confidential Subject to Protective Order

--
2013年4月30日

Best Regards

Henry
**PAK FURNITURE**
www.pak-hk.com
Tel: 86-757-29220271 / Fax:86-757-29220275
Email:info@pak-hk.com
      fswcfurniture9@126.com
MSN: henrybusiness9@hotmail.com
SKYPE: henry82999
Mobile: +86-(0)13929908499


At 2013-04-30 02:32:08,"Iris Tian" <iristian@cdifurniture.com> wrote:
Hi Henry:
    Good day.
    We have a special request about FA1088BR, we want to see if we buy more than 150 pc of FA10088BR, could we get a special price like $300. We will also give you other containers with, please try to get back to me ASAP, thank you very much.


--
Best Regards,

Iris Tian

01-514-428-5888 #104
iristian@cdifurniture.com


--
David Ouaknine | CEO | CDI International
241 Migneron, St-Laurent (QC) H4T 1W8 Canada
T:1-866-428-9211 | T: 514-428-5888 | F: 514-428-5558
http://www.cdifurniture.com/ | http://www.facebook.com/CDIfurniture

STATEMENT OF CONFIDENTIALITY
The information contained in this email and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information.  If you are not the intended recipient, please notify the sender immediately and destroy all copies of this email and any attachments. All information contained within the email is the Copyright of CDI International inc. - © 2013.

Confidential Subject to Protective Order

Confidential Subject to Protective Order

# EXHIBIT 13

Message

| | |
|---|---|
| **From:** | Henry--J.S.Y [fswcfurniture9@126.com] |
| **Sent:** | 4/30/2013 2:59:22 AM |
| **To:** | David Ouaknine [david@cdifurniture.com] |
| **Subject:** | Re:Re: Re: special price request for FA1088BR |

David,

But now we are having a court with Halo and Artsome about the copyright....
Mr.Tan right now said we are really worry about this....


--
2013年4月30日

Best Regards

Henry
**PAK FURNITURE**
www.pak-hk.com
Tel: 86-757-29220271 / Fax:86-757-29220275
Email:info@pak-hk.com
      fswcfurniture9@126.com
MSN: henrybusiness9@hotmail.com
SKYPE: henry82999
Mobile: +86-(0)13929908499


At 2013-04-30 10:47:43,"David Ouaknine" <david@cdifurniture.com> wrote:

Dear Henry,

There are a lot of companies that sell this model in china this is avery good and popular one but trust me i will not have any problem selling this model i have shown this at my fair in north carolina high point and no one dare to tell me anything trust me this will not be an issue the client who wants this is very big they have 150 stores so please reply fast like that i can send them an email rig away

Thanks,
David o.

On Mon, Apr 29, 2013 at 10:29 PM, Henry--J.S.Y <fswcfurniture9@126.com> wrote:
David,

I just check with Mr.Tan,as you know,this model has the copy right from Halo Asia,so i think if you sell this model in such quantity,will have the problem.
Are you sure that you keep on buying this model?



Confidential Subject to Protective Order

CDI-0041466

--
2013年4月30日

Best Regards

Henry
**PAK FURNITURE**
www.pak-hk.com
Tel: 86-757-29220271 / Fax:86-757-29220275
Email:info@pak-hk.com
      fswcfurniture9@126.com
MSN: henrybusiness9@hotmail.com
SKYPE: henry82999
Mobile: +86-(0)13929908499


At 2013-04-30 10:03:58,"David Ouaknine" <david@cdifurniture.com> wrote:
Dear Henry,

Please tell me what is the best possible price for one 40 hq of that model?

this has nothing to do with the 3 containers we will order please let me know asap. we are in the process of finishing all the orders now.


Thanks,
David O.

On Mon, Apr 29, 2013 at 8:27 PM, Henry--J.S.Y <fswcfurniture9@126.com> wrote:
Hi,Iris,

Sorry,we can not make this chair with price like USD300.


--
2013年4月30日

Best Regards

Henry
**PAK FURNITURE**
www.pak-hk.com
Tel: 86-757-29220271 / Fax:86-757-29220275
Email:info@pak-hk.com
      fswcfurniture9@126.com
MSN: henrybusiness9@hotmail.com
SKYPE: henry82999
Mobile: +86-(0)13929908499

Confidential Subject to Protective Order                                          CDI-0041467

At 2013-04-30 02:32:08,"Iris Tian" <iristian@cdifurniture.com> wrote:
Hi Henry:
    Good day.
    We have a special request about FA1088BR, we want to see if we buy more than 150 pc of FA10088BR, could we get a special price like $300. We will also give you other containers with, please try to get back to me ASAP, thank you very much.


--
Best Regards,

Iris Tian

01-514-428-5888 #104
iristian@cdifurniture.com


--
David Ouaknine | CEO | CDI International
241 Migneron, St-Laurent (QC) H4T 1W8 Canada
T:1-866-428-9211 | T: 514-428-5888 | F: 514-428-5558
http://www.cdifurniture.com/ | http://www.facebook.com/CDIfurniture

STATEMENT OF CONFIDENTIALITY
The information contained in this email and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information.  If you are not the intended recipient, please notify the sender immediately and destroy all copies of this email and any attachments. All information contained within the email is the Copyright of CDI International inc. - © 2013.


--
David Ouaknine | CEO | CDI International
241 Migneron, St-Laurent (QC) H4T 1W8 Canada
T:1-866-428-9211 | T: 514-428-5888 | F: 514-428-5558
http://www.cdifurniture.com/ | http://www.facebook.com/CDIfurniture

STATEMENT OF CONFIDENTIALITY
The information contained in this email and any attachments to this message are intended for the exclusive use

of the addressee(s) and may contain confidential or privileged information.  If you are not the intended recipient, please notify the sender immediately and destroy all copies of this email and any attachments. All information contained within the email is the Copyright of CDI International inc. - © 2013.

Confidential Subject to Protective Order

CDI-0041469

# Exhibit 14

Redacted, Filed Under Seal

# Exhibit 15

Redacted, Filed Under Seal

# Exhibit 16

Redacted, Filed Under Seal