IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HALO CREATIVE & DESIGN LIMITED, a Hong Kong company, HALO TRADEMARKS LIMITED, a Hong Kong company and HALO AMERICAS LIMITED, a Hong Kong company,<br><br>*Plaintiffs,*<br><br>v.<br><br>COMPTOIR DES INDES INC., a Quebec corporation, CDI INTERNATIONAL, CDI FURNITURE,<br><br>*Defendants.* | Civil Action No. 1:14-cv-08196<br><br>Judge Harry D. Leinenweber<br><br>Magistrate Judge Susan E. Cox |

# COMPTOIR DES INDES, INC.'S BRIEF IN SUPPORT OF MOTION TO EXCLUDE, IN PART, DAMAGES OPINIONS OF MICHAEL PAKTER

Alastair J. Warr
FisherBroyles LLP
203 North LaSalle, Suite 2100
Chicago, IL 60601
Mailing Address: P.O. Box 666
Zionsville, IN 46077
Telephone: 317.407.5260
Email: alastair.warr@fisherbroyles.com

Bradley P. Nelson
FisherBroyles LLP
One North Franklin Street, Suite 3200
Chicago, IL 60606
Telephone: 312.300.4005
Email: brad.nelson@fisherbroyles.com

1

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 1

STATEMENT OF LAW AND ARGUMENT ............................................................................... 1

    I.      Legal Standards ........................................................................................................ 1

    II.     Damages Are Not Proper For Halo's Discontinued Products (Category B). .......................................................................................................... 3

    III.    Damages Are Not Proper For CDI's Non-Infringing Products (Category C). .......................................................................................................... 6

    IV.    Damages Are Not Proper For CDI's Increased Profitability (Category D). ........................................................................................................ 11

CONCLUSION ............................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Andreas v. Volkswagen of Am., Inc.*,
    336 F.3d 789 (8th Cir. 2003) ............................................................................... 10

*Baldwin Cooke Co. v. Keith Clark, Inc.*,
    420 F. Supp. 404 (N.D. Ill. 1976) ......................................................................... 5

*Bucklew v. Hawkins, Ash, Baptie & Co., LLP*,
    329 F.3d 923 (7th Cir. 2003) ................................................................................. 9

*Burns v. Imagine Films Entm't, Inc.*,
    2001 U.S. Dist. LEXIS 24653 (W.D.N.Y. April 23, 2001) ................................. 14

*Business Trends Analysts v. Freedonia Grp. Inc.*,
    887 F.2d 399 (2d Cir. 1989) ............................................................................ 9, 14

*CSC Hldgs, Inc. v. Redisi*,
    309 F.3d 988 (7th Cir. 2002) ................................................................................. 9

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ....................... 2, 6, 11, 15

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
    886 F.2d 1545 (9th Cir. 1989) ............................................................................ 14

*Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.*,
    915 F.2d 316 (7th Cir. 1990) ............................................................................... 10

*Krik v. Exxon Mobil Corp.*,
    870 F.3d 669 (7th Cir. 2017) ................................................................................. 2

*Law Bulletin Publ'g Co. v. Rodgers*,
    1988 U.S. Dist. LEXIS 13497 (N.D. Ill. Nov. 28, 1988) ................................... 11

*Lawton v. Melville Corp.*,
    1997 U.S. App. LEXIS 15228 (2d Cir. June 24, 1997) ..................................... 14

*Lewis v. CITGO Petroleum Corp.*,
    561 F.3d 698 (7th Cir. 2009) ................................................................................. 2

*MindGames, Inc. v. Western Publ'g Co.*,
    218 F.3d 652 (7th Cir. 2000) ............................................................................... 10

*Smith v. Ford Motor Co.*,
  215 F.3d 713 (7th Cir. 2000) .............................................................................. 2, 11, 15

*Sunset Lamp Corp. v. Alsy Corp.*,
  749 F. Supp. 520 (S.D.N.Y. 1990) ........................................................................ 7, 9, 10

*United States v. Parra*,
  402 F.3d 752 (7th Cir. 2005) ......................................................................................... 2

**Statutes**

17 U.S.C. § 504 ................................................................................................................. 1

**Rules**

Fed. R. Evid. 702 ..................................................................................................... 1, 2, 6

**Treatises**

6 William F. Patry, PATRY ON COPYRIGHT § 22:104 (2011) ........................................ 13

Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT §14.02[A][1] (2012) 11

INTRODUCTION

The Pakter Report includes opinions on five categories of damages enumerated below. The Copyright Act, 17 U.S.C. § 504, permits categories (a) and (e) but not the remaining categories. CDI moves to exclude Mr. Pakter's opinions and other evidence concerning categories (b)-(d). They are unreliable speculation and fail the test for admissibility under Rule 702 of the Federal Rules of Evidence.

STATEMENT OF FACTS

On November 7, 2017, Halo served Mr. Pakter's Expert Report on Plaintiffs' Damages. Halo served a Supplement Expert Report on December 22, 2017. The Supplemental Report revises some calculations, but otherwise adopts the original report (both reports are referred to herein as "the Pakter Report"). The five categories of damages include: (a) Halo's Lost Profits – CDI's Sales of (Allegedly) Infringing Products; (b) Halo's Lost Profits – Halo's Discontinued Products; (c) CDI's Sales Attributable to the (alleged) Infringement – CDI's Sales of Non-Infringing Products; (d) CDI's Increased Profitability from Use of Halo's Designs; and (e) CDI's Profits – CDI's Sales of Infringing Products. (Ex. 2, p. 4)

STATEMENT OF LAW AND ARGUMENT

I.    **Legal Standards**

Federal Rule of Evidence 702 governs the admission of expert testimony. It provides, in relevant part: "A witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion" where (1) the witness's scientific, technical or other specialized knowledge will assist the trier of fact, (2) the testimony is "based on sufficient facts or data," (3) the

testimony is "the product of reliable principles and methods," and (4) the witness has "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Rule 702 requires the district court to perform a "gatekeeping" function before admitting expert scientific testimony to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005) ("Rule 702 has superseded *Daubert*, but the standard of review that was established for *Daubert* challenges is still appropriate.").

Before considering whether the testimony "will assist the trier of fact to understand or determine a fact in issue," a district court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." *Daubert*, 509 U.S. at 592-93. When assessing the reliability of an expert's methodology, courts consider factors including: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether it has been generally accepted within the relevant scientific community. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000) (citing *Daubert*, 509 U.S. at 593-94).

The party seeking to introduce expert witness testimony bears the burden of demonstrating the testimony satisfies the *Daubert* standard by a preponderance of the evidence. *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 673 (7th Cir. 2017); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

II.     **Damages Are Not Proper for Halo's Discontinued Products (Category B).**

The Court should exclude Mr. Pakter's opinions because (1) Halo may not recover damages for lost sales of products it discontinued for reasons other than the alleged infringement and (2) Mr. Pakter relies on erroneous assumptions and includes errors that render his opinion speculative and unreliable.

Mr. Pakter opines Halo lost profits of ▮▮▮▮ from two products it discontinued ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."[1] [Ex. 2, at 4] Mr. Pakter simply assumed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Ex. 1 at 22] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [.]" [*Id.*; Ex. 3, Transcript of Michael Pakter, January 4, 2018 ("Pakter Tr.") 52:23-53:7] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [*Id.* 54:6-10] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. [*Id.* 58:7-16 & 60:6-12]

The documentary evidence contradicts this assumption. Mr. Pakter relied on the Timothy Oulton Range Reports.[2] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" [Ex. 1 at 22 n.32] Mr. Pakter admitted ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] The discontinued products are the Aviator Blackhawk Side Table and Scaffolding Console Table. [Report, Ex. 2, Sch. 3]

[2] Pakter describes a "Range Report" as a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3

███████████████████████.” [Pakter Tr. 60:16-24] According to Mr. Pakter, ███

████████████████████████████████████████████████████████████████████

████████████████████████. Without evidence supporting the assumption that CDI's sales caused Halo to discontinue these products, Mr. Pakter's opinions are unreliable speculation.

The chronology of CDI's sales reinforces the lack of nexus between its sales and Halo's discontinuation of the products.[3] Halo discontinued the Aviator Blackhawk Side Table around October 1, 2016. CDI's last sale of the allegedly infringing product, the Aero Design Night Stand, was around October 21, 2015 – a full year before Halo discontinued its sales. Some reason other than CDI's sales must have prompted Halo to discontinue this product a year after CDI stopped selling the allegedly infringing product. Mr. Pakter did not consider any other possible causes of Halo's decision to discontinue this product. Because Mr. Pakter's methodology fails to account for such other causes, it is speculative and unreliable.

Halo discontinued the Scaffolding Console Table on October 4, 2015. CDI only sold ███ units of the allegedly infringing product, the Console Industielle, after November 13, 2014, and that sale was invoiced in December 2015. Many tables of this style have been on display at trade shows in India and China. Because CDI made minimal, if any, sales that could have impacted Halo's discontinued products, CDI's actions cannot be the sole reason for Halo's decision to discontinue this table.

---

[3] ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
[Pakter Tr. 155:21-159:13]

4

Again, Mr. Pakter did not consider any other possible causes for Halo's decision to discontinue this product.

Other flaws render Mr. Pakter's methodology speculative and unreliable. Mr. Pakter estimated Halo's historic sales of discontinued products and applied Halo's profit margin to his projection of lost future sales of discontinued products. ▮

▮

▮ [Pakter Tr. 160:2-161:2] ▮

▮

▮

▮ [*Id.*] Mr. Pakter also assumed Halo's discontinued products would have had the same sales volume experienced in the last year of sales of the product, but cannot identify any facts to support this assumption. Because Mr. Pakter did not analyze the average life cycle of Halo's products or how the profitability of Halo's products may change over time, his opinions are speculation. *See, e.g., Baldwin Cooke Co. v. Keith Clark, Inc.*, 420 F. Supp. 404, 408 (N.D. Ill. 1976) (rejecting damages for plaintiff's lost future sales as speculative where expert "inferred first that plaintiff would have made the sales taken away by defendant through its infringement, and then inferred that those sales would repeat for plaintiff in accord with plaintiff's repeat sales history"). ▮

▮

████████. [Pakter Tr. 61:13-62:18] Mr. Pakter did not tie his damage calculation to the underlying facts, which renders his methodology speculative and unreliable.

This category double-counts damages. Mr. Pakter captured damages related to infringement of the Blackhawk Side Table and its Scaffolding Side Table in his calculation of lost profits under category (a). For example, ████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████ [Ex. 1 Rpt., Ex. 2] ████████████████████████████ ██████████████████████████████████████████ [Ex.2, Supp. Sch. 3] Mr. Pakter's inclusion of both the profit from CDI's alleged infringing sales and the profit from the lost sales resulting from the discontinued products double-counts damages from CDI's alleged infringement and overstates the amount of damages allegedly suffered by Halo.

Mr. Pakter's opinions on this category of damages are not based upon sufficient facts or data and are not the product of reliable principles and methods. The court's "gatekeeping" function requires exclusion of this evidence. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589.

### III. Damages Are Not Proper for CDI's Non-Infringing Products (Category C).

Category (c) attempts to capture profits earned by CDI on non-accused and non-infringing products for certain customers. Because it is contrary to the law of this circuit, lacks factual support, and is based on an untested methodology that is not generally accepted, the Court should exclude this category of damages.

6

Mr. Pakter opines, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Ex. 2, at 4 and Ex. 1 at 23-24] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. [*Id.*]

Mr. Pakter bases his inclusion of this category of damages on having ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" [Ex. 1 at 15 & n.23 (citing *Sunset Lamp Corp. v. Alsy Corp.*, 749 F. Supp. 520, 524 (S.D.N.Y. 1990))] Mr. Pakter's opinion is factually and legally unsupported.

Mr. Pakter cannot identify any causal link between the sales of Accused Products to sales of non-accused products. Mr. Pakter ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Ex. 1 at 23] Mr. Pakter could not identify any facts to support that assumption, relying on the circular assumption ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7

██████████████████████████████ [Pakter Tr. 74:13-75:7] Assuming such facts without supporting evidence makes Mr. Pakter's opinion speculative and unreliable.

Mr. Pakter ██████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████ [*Id.*] ██████████

██████████████████████████████████████████████████████████

███████████████ [*Id.*, Ex. 2, Sch. 4] ████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████ [Pakter Tr. 66:15-70:11] ██████

██████████████████████████████████████████████████████████

███████████ [*Id.* 76:8-77:9] Mr. Pakter's suggestion that such a broad range of values could indicate the importance of the Accused Products in generating future sales, and his inability to identify any generally-accepted boundaries, renders his methodology untestable, speculative and overreaching.

Asked whether he looked at any factor that may have impacted the customer's decision to purchase the non-infringing product, Mr. Pakter responded:

██████████████████████████████████████████████████████████

████████████████████████████ [*Id.* 163:19-164:13; *see also id.* 165:21-165:3("I neither ruled out nor ruled in" other possible factors)] Asked whether the importance of the sale of the accused products in relation to the sale of non-infringing products would wane over time, Mr. Pakter testified ████████████

8

███████████ [*Id.* 165:24-166:11] Likewise, using the mere percentage of Accused Products to non-infringing products to justify causation is mere speculation.

Mr. Pakter's opinion also contradicts the law. *Sunset Lamp* reflects that court's summary of *Business Trends Analysts v. Freedonia Grp. Inc.*, 887 F.2d 399 (2d Cir. 1989): "[T]he *Business Trends* panel *left open the possibility* of recovering a defendant's profits derived from the sale of non-infringing goods provided that the copyright owner could establish the necessary causal relationship between those products and the infringement." 749 F. Supp. at 524 (emphasis added).[4] *Business Trends* has been cited in this Circuit for that proposition once. *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923 (7th Cir. 2003).

*Buklew* stated allowing recovery of an infringer's lost profit "will sometimes require tracing those profits into another product, **as where it is bundled with the infringing product**." *Id.* at 933 (emphasis added). Mr. Pakter does not cite evidence that CDI bundled its non-infringing products with the Accused Products. No court in this Circuit has applied the *Business Trends* reasoning in any other circumstance. *Bucklew* found the evidence there too speculative to sustain an award of damages because, although one "employee [] testified that the infringing [product] would indeed help with the sale of [non-infringing products]," "no evidence was presented that would have enabled the market value of this 'help' to be gauged." *Id.* "[W]e repeat previous reminders to the bench and bar of this circuit

---

[4] *Sunset Lamp* describes *dicta* in *Business Trends*: "Had this issue been pursued and purchasers of the infringing study been matched with purchasers of later [non-infringing] studies . . . [the plaintiff] might well have argued that revenues from such subsequent sales were 'profits' . . . . This issue was not pursued, however." *Bus. Trends*, 887 F.2d at 407.

9

that proof of damages requires— proof." *Id.* (citing *CSC Hldgs, Inc. v. Redisi*, 309 F.3d 988, 995 (7th Cir. 2002); *MindGames, Inc. v. Western Publ'g Co.*, 218 F.3d 652, 658 (7th Cir. 2000); *Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.*, 915 F.2d 316, 318-19 (7th Cir. 1990)).

*Sunset Lamp* extended *Business Trends dicta* to allow a damages theory based on *plaintiff's* lost profits from its *non-infringed* goods, not *defendant's* profits from *non-infringing* goods. 749 F. Supp. at 524-25 ("plaintiff claims that the floor lamp was intended as a 'door opener' for its entire line [Sunrise] of lamps and that the infringement of that item . . . directly diminished its sales of other lamp models."). The court allowed the theory to proceed only with respect to other products within Sunset's same Sunrise line of products, not products wholly unrelated to the Accused Products as Mr. Pakter does here. *Id.* The court required "credible evidence of a relationship" between the non-infringed and infringed products, such as "testimony from a purchaser at a department store that it canceled an order for many items in the Sunset line" because of the infringing lamp. *Id.* at n.2. And the court noted that "should plaintiff fail to provide substantial credible evidence" of such a relationship, it may award costs to the defendant. *Id.* at 525. No court in this circuit has applied the *Sunset Lamp* reasoning to any set of facts.[5]

Mr. Pakter's opinion confuses two different theories. *Sunset Lamp*, involving lost profits from the plaintiff's *non-infringed* goods, does not support Mr. Pakter's

---

[5] The Eight Circuit held that relying on *Sunset Lamp* as authority for recovering profits on other items where infringement enhances sales of a "door opener" product "takes the reasoning of that case too far." *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 799 (8th Cir. 2003).

10

opinion involving alleged lost profits from the accused infringer's *non-infringing goods*. "A damage theory based upon a copyright owner's lost profits must be distinguished from a claim based upon the infringer's profits." *Law Bulletin Publ'g Co. v. Rodgers*, 1988 U.S. Dist. LEXIS 13497 (N.D. Ill. Nov. 28, 1988); Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT §14.02[A][1] (2012) (cautioning courts not to confuse defendant's profits with plaintiff's lost revenue).

Halo seeks to disgorge CDI's profits from sales of non-accused, non-infringing products CDI did not bundle with Accused Products (unlike in *Bucklew*) and that are not even in the same product lines as the Accused Products (unlike in *Sunset Lamp*).[6] The methodology used by Mr. Pakter to seek disgorgement of profits from non-accused, non-infringing products has not been tested, not been subjected to peer review and publication, has an unknown potential rate of error, and is not generally accepted within the relevant scientific community; as such, it should be excluded. *Daubert*, 509 U.S. at 593-94; *Smith*, 215 F.3d at 719.

### IV. Damages Are Not Proper for CDI's Increased Profitability (Category D).

Category (d) estimates CDI's increased profitability purportedly attributable to the use of Halo's designs in the amount of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ [Ex. 2 at 4 & Pakter Tr. 104:14-105:13] Mr. Pakter's opinion is contrary to the law of this circuit, lacks factual support, contains errors that render

---

[6] Mr. Pakter does not rely on evidence establishing the non-infringing products for which he allocated damages are in the same design family as the Accused Products.

it speculative and unreliable, and is based on an untested methodology that is not generally accepted.

██████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████ [Ex. 1 at 24-25] Mr. Pakter's methodology relies on several erroneous assumptions lacking evidentiary support.

Mr. Pakter assumes ████████████████████████████████

████████████████████████████████████████████████

████████ [*Id.* at 25] Mr. Pakter ███████████████████████████

████████████████████████████████████████████████

██████████████████████████████. [Pakter Tr. 106:17-108:15] The average annual growth rates used in Mr. Pakter's projection show no relationship to CDI's historical growth rates, even before CDI's alleged infringement. In the two years before CDI's alleged infringement, the U.S. furniture wholesale industry revenue growth rate outpaced CDI by nearly 20% in one year and then lagged behind CDI's growth rate by nearly 16% the next year.

Mr. Pakter does not show any correlation between CDI's revenues and the benchmark he used, doesn't know anything about how the benchmark was compiled, and the benchmark does not have any predictive value to estimate CDI's

12

but-for revenues between 2013 and 2016. Mr. Pakter has not provided any reasonable basis to assume that CDI would be expected to grow at exactly the industry average growth rate between 2013 and 2016, especially in light of the disparity between CDI's sales and the industry average in preceding years. Mr. Pakter's reliance on this benchmark to project the growth in CDI's sales is inappropriate and renders this aspect of his methodology unreliable.

Mr. Pakter assumes, without evidentiary support, any CDI revenue growth exceeding the industry average between 2013 and 2016 was attributable ▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. He did not consider other factors that could have contributed to CDI's revenue growth between 2013 and 2016 such as business acumen, marketing activities, pricing of products, new product offerings, new customers, number of SKUs offered, distribution channels, or other factors.[7] Mr. Pakter admitted ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇ [*Id.* 146:23-150:6]

Without any analysis of other possible factors, Mr. Pakter fails to connect this category of damages to any alleged infringement of Halo's intellectual property.

---

[7] The record provides multiple credible explanations for CDI's revenue growth outside of the alleged infringement of Halo's designs. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇ Deposition of Jonathon Malka, April 27, 2017, at 20] CDI also secured significant customers in the last two years, including American Signature/Value City Furniture.

6 William F. Patry, PATRY ON COPYRIGHT § 22:104 (2011) ("In assessing whether plaintiff has established the required causal link, the court should examine all relevant market factors, including the extent to which the parties have an existing market share, channels of distribution, and customer relations.") Without any evidence supporting a causal nexus between the alleged wrongdoing and the increased profits, Mr. Pakter's opinion is inadmissible.

The Pakter Report cites ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ No court in this Circuit has applied the reasoning in *Business Trends* to award lost profits based on a defendant's "increased profitability," much less "enhanced good will" or "market recognition." Courts in other circuits routinely exclude evidence of such damages as speculative and unreliable. *See, e.g., Burns v. Imagine Films Entm't, Inc.*, 2001 U.S. Dist. LEXIS 24653, *11 (W.D.N.Y. April 23, 2001) (describing as "rare" instances "in which a copyright holder can recover profits from a non-infringing enterprise based on its 'enhanced good will or market recognition'"; denying recovery because "too speculative and the relationship between such profits and infringement is too attenuated"); *Lawton v. Melville Corp.*, 1997 U.S. App. LEXIS 15228, *6 (2d Cir. June 24, 1997) (affirming denial of lost profits for "some unquantifiable enhanced goodwill in favor of [defendant]" because such damages "would be purely speculative"); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1553-54 (9th Cir. 1989) (denying recovery for damages attributable to defendant's increased goodwill as too speculative and too attenuated).

14

*Business Trends* stated "proving the value received from an infringing product used to enhance commercial reputation may be difficult" and rejected such an award based on inadequate proof. 887 F.2d at 404 (finding some gain in market recognition was conceded by defendant, but the gain could not be attributed to the infringing product alone because other non-infringing products were part of the same market strategy), 407 ("Where there is no evidence at all allowing an assessment of the value of such an enhancement, establishment of the fact of enhancement will not support an award."). Mr. Pakter's methodology to account for CDI's purported "enhanced profitability" has not been tested and is not generally accepted, and fails to account for other factors unrelated to the alleged infringement, thus fails to allow for an assessment of the value of the increased profitability caused by the alleged infringement. As such, Mr. Pakter's opinion should be excluded. *Daubert*, 509 U.S. at 593-94; *Smith*, 215 F.3d at 719.

## CONCLUSION

For the foregoing reasons, CDI respectfully requests that the Court grant its motion and exclude from evidence any testimony from Mr. Pakter, or other evidence offered by Halo, in support of claimed damages identified in categories (b) – (d) of the Pakter Report.

Dated:       January 10, 2018

Respectfully submitted,

FISHERBROYLES LLP

*/s/ Alastair J. Warr*
FisherBroyles LLP
203 North LaSalle, Suite 2100
Chicago, IL 60601
Mailing Address: P.O. Box 666
Zionsville, IN 46077
Telephone: 317.407.5260
Email: alastair.warr@fisherbroyles.com

Bradley P. Nelson
FisherBroyles LLP
One North Franklin Street, Suite 3200
Chicago, IL 60606
Telephone: 312.300.4005
Email: brad.nelson@fisherbroyles.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served upon the following by filing with the Court's ECF and by email as agreed between counsel, on January 10, 2018.

Richard D. Harris
Barry R. Horwitz
Jacqueline V. Brousseau
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601

*/s/Alastair J. Warr*
Counsel for Defendants