**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HALO CREATIVE & DESIGN LIMITED, a Hong Kong company; HALO TRADEMARKS LIMITED, a Hong Kong company; and HALO AMERICAS LIMITED, a Hong Kong company, | |
| | Case No. 14 C 8196 |
| Plaintiffs, | Judge Harry D. Leinenweber |
| v. | |
| COMPTOIR DES INDES INC., a Quebec corporation; CDI INTERNATIONAL; and CDI FURNITURE, | |
| Defendants. | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This case involves a close legal question regarding the extent of copyright protection for features of useful articles, requiring the Court to delve into the morass of distinguishing applied art from industrial design. Halo and CDI are competitors in the home furniture and lighting business. Halo alleges that CDI copied Halo's furniture and lighting designs and sold versions in the United States in violation of copyright, patent, trademark, and state law.

This matter is before the Court on Cross-Motions for Partial Summary Judgment on Count III for copyright infringement. Both parties ask the Court to determine if the

furniture and lighting fixtures at issue are copyrightable. In addition, Halo moves for summary judgment on three counts of CDI's Counterclaims for attempted monopolization and intentional interference with prospective business expectancy and economic advantage. For the reasons stated herein, the Court grants in part and denies in part the parties' Cross-Motions for Partial Summary Judgment on Count III. The Court grants Halo's Motion for Summary Judgment on Counts II to IV of CDI's counterclaims.

## I. <u>BACKGROUND</u>

The parties move for summary judgment on limited issues. Accordingly, the Court will include only facts relevant to those issues.

Halo Creative & Design Ltd., Halo Trademarks, Ltd, and Halo Americas Ltd. (collectively, "Halo") are Hong Kong companies in the business of designing and distributing high-end furniture and lighting products, including the products at issue in this lawsuit. (Defs.' Resp. to Pl.'s L.R. 56.1(a) Statement of Material Facts in Supp. of Mot. for Partial Summ. J. ("Defs.' Resp. to PSOF") ¶¶ 1, 6.) Comptoir Des Indes, Inc. ("CDI") is a Canadian corporation with its principal place of business in Montreal, Quebec, Canada. (Pls.' Resp. to Defs.' L.R. 56.1(a) Statement of Material Facts in Supp. of Mot. for Partial Summ. J. ("Pls.' Resp. to PSOF") ¶ 2.) CDI is also in the business of

selling furniture and lighting fixtures to distributors and consumers directly. (Defs.' Resp. to PSOF ¶ 10.) Halo sued CDI alleging, among other things, that CDI infringed its copyright in its furniture and lighting products by copying its designs and then selling products substantially similar in the United States.

Here, the primary question before the Court is whether the furniture and lighting products at issue are protected by copyright. A picture being worth a thousand words, images of the products follow:

| Halo's ODEON Lighting Fixtures | Halo's Zig Zag Lighting Fixtures |
|---|---|
|  |  |
| Halo's Gryo Chandeliers | Halo's Crystal Chandeliers |
|  |  |

| Halo's Aviator Tom Cat Chair | Halo's Aviator Valkyrie Desk |
|---|---|
|  |  |
| Halo's Blackhawk Furniture | Halo's Globetrekker Coffee Table |
|  |  |
| Halo's Scaffolding Tables | Halo's Stonyhurst Lamp Table and Ampleforth Chest |
|  |  |



| Halo's Mars Chair | Halo's Oviedo Chaise |
|---|---|
| Halo's Georgian Architectural Mirror | Halo's Georgian Architectural Table |

(*See,* Ex. 2 of Defs.' Mem. Supp. Summ. J.; *see also,* Pls.' Resp. to PSOF ¶ 6.)

CDI counterclaimed against Halo, asserting counts for sham IP litigation under the Sherman Act and intentional interference with prospective business expectancy and economic advantage, among others. CDI alleged that Halo knew its copyright claims lacked any basis in fact or law and brought suit solely to interfere with CDI's business. (*See,* CDI's counterclaims,

¶¶ 23-25 (Nov. 4, 2016) ECF No. 94.)  Further, CDI also alleged that Halo intentionally interfered with its business by creating a disturbance at one of CDI's trade shows and by sending letters to CDI's customers regarding Halo's alleged copyright.  (*See, id.* at ¶¶ 45, 50; Defs.' Resp. to PSOF Add'l Fact ¶ 71.)  Halo sent letters to Elegant Lighting, Inc., Dynamic Home Décor, and Frenchvilla regarding its claim of copyright and those companies refused to do business with CDI thereafter.  (Defs.' Resp. to PSOF Add'l Fact ¶ 72.)

## II.  ANALYSIS

### A.  Halo's Motion to Strike

Halo sought to register its asserted furniture and lighting design works as copyrightable works with the U.S. Copyright Office (the "Copyright Office").  (Pls.' Resp. to PSOF ¶ 7.)  The Copyright Office denied registration to many of Halo's works. (*See,* Copyright Office Correspondence, Exs. 3, 8-10 to CDI's Mem. in Supp. Summ. J.)  Halo moves to strike the Copyright Office Correspondence (the "Documents") and the portions of CDI's statement of facts that rely on those Documents.  Halo argues that the Documents from the Copyright Office are inadmissible for three independent reasons:  the documents are (1) inadmissible hearsay, (2) speculative, and (3)

irrelevant because they rely on an outdated standard. None of these arguments have merit, and as such, the Court denies Halo's Motion to Strike the Documents and corresponding statements of fact.

Halo argues that the Documents from the Copyright Office are hearsay and do not fall under the Public Records Exception of Federal Rule 803(8). Hearsay is defined as "a statement that" "the declarant does not make while testifying at the current trial or hearing; and" "a party offers in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c). The Court will assume for the purposes of this Motion and based on the parties' arguments that the Documents are being offered for the truth of the matter asserted. There is an exception to the hearsay rule for public records. *See,* FED. R. EVID. 803(8). That exception provides:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> [. . .]
>
> (8) Public Records. A record or statement of a public office if:
>
> > (A) it sets out:
> >
> > > (i) the office's activities;
> > >
> > > (ii) a matter observed while under a legal duty to report, but not including, in a

> > criminal case, a matter observed by law-enforcement personnel; or
> >
> > (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
>
> (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

FED. R. EVID. 803(8). "The public-records exception is justified on the assumption that public officials will perform their duties properly and without bias." *Jordan v. Binns,* 712 F.3d 1123, 1132 (7th Cir. 2013) (citing FED. R. EVID. 803(8) advisory committee's note; *United States v. De La Cruz,* 469 F.3d 1064, 1069 (7th Cir. 2006)). Although three categories of public records are covered by the exception, many public records fall into more than one category. *Id.* Records falling into one of the three categories are "presumptively admissible but may be excluded . . . if the party opposing admission establishes that the circumstances indicate a lack of trustworthiness." *Id.* (citations omitted). The Court is aware of no dispute regarding the authenticity of these Documents or any other evidence that indicate a lack of trustworthiness. Halo argues that the Copyright Office's use of an outdated standard lacks trustworthiness, but the Court rejects that argument, discussed further below.

The Court holds that the Documents fall under Rule 803(8) under several categories. *See,* 4 Federal Evidence § 8:86 (4th ed.) (noting the "extraordinary breadth" of the public-records exception). The Documents fall under the first category because they constitute a "record or statement of a public office" that "sets out" "the office's activities." The Copyright Office is charged to administer the Copyright Act of 1976, *see,* 17 U.S.C. § 701, which includes deciding applications for copyright registrations. Specifically, Section 410(b) of the Copyright Act of 1976 requires that a copyright applicant be notified in writing of the reasons for the Register's refusal:

> In any case in which the Register of Copyrights determines that, in accordance with the provisions of this title, the material deposited does not constitute copyrightable subject matter or that the claim is invalid for any other reason, the Register shall refuse registration and shall notify the applicant in writing of the reasons for such refusal.

17 USCS § 410(b). The Documents here were written pursuant to this statutory requirement and thus fall under Rule 803(8)(A)(i). *In re Vitamin C Antitrust Litigation* does not support Halo's position. *See, In re Vitamin C Antitrust Litigation,* No. 05-CV-0453, 2012 WL 4511308, at *2 (E.D.N.Y. Oct. 1, 2012). Although the Court questioned whether "litigation position papers drafted by an interested amicus" would fall outside of the office's regular activities, the Court

- 9 -

nevertheless "assumed that the requirements of Rule 803(8)(A)(i) [were] satisfied." *Id.* The Court held the statements were inadmissible because they failed to satisfy the trustworthiness factor, which, as stated prior, is not the case here. *See, id.* There, the substance of the documents in question was different, as was the legal basis of the conclusion.

Additionally, the Documents at issue fall under fall under the third category under Rule 803(8)(A)(iii). The Documents relay the Copyright Office's factual findings. *See, Young v. James Green Mgmt., Inc.,* 327 F.3d 616, 624 (7th Cir. 2003) (noting administrative findings regarding claims of discrimination are generally admissible under Rule 803(8)(C)). The Eleventh Circuit upheld a district court's ruling admitting a letter from the Copyright Office, reasoning that the letter "set[] forth factual findings" and the "factual findings resulted from an authorized search of the copyright registration records." *Watkins v. Se. Newspapers, Inc.,* 163 F. App'x 823, 825 (11th Cir. 2006). Although different types of Documents from the Copyright Office are at issue here, the same reasoning applies. The Court does not take such a restrictive view of what constitutes "factual findings" as Halo. Halo is correct that statements not based on factual investigation are inadmissible under Rule 803(8)(A)(iii), but the restrictive view

of "factual investigation" of Halo is not consistent with the Supreme Court's "broad approach to admissibility under Rule 803(8)(C)" in *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 169 (1988). *Beech Aircraft* expanded the applicability of the Rule, stating that "factually based conclusions or opinions are not on that account excluded from the scope of Rule 803(8)([iii])." *Id.* at 162. The Documents here include a statement of facts about the Works and conclusions of the Copyright Office based on those facts. Under *Beech Aircraft* and *Young,* this is sufficient to bring the documents within subsection (A)(iii) of the public records exception.

The cases relied on by Halo are inapposite. In *La Resolana,* the Tenth Circuit expressly did not address the district court's evidentiary ruling because that ruling had not been appealed. *See, La Resolana Architects, PA v. Clay Realtors Angel Fire,* 416 F.3d 1195, 1208 (10th Cir. 2005), abrogated by *Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154 (2010); *see also,* 2 Nimmer on Copyright § 7.16 (2017) (in reference to *La Resonlana,* noting that *La Resolana* "might have gone the opposite way" "had plaintiff appealed the evidentiary ruling excluding the Copyright Office's letter as inadmissible hearsay"). The primary issue in *La Resolana* was jurisdictional. *See, generally, id.* Similarly, in *RGB Plastic, LLC v. First Pack,*

- 11 -

*LLC,* the Court stated that "perhaps the examiner's statement . . . could qualify for a hearsay exception," specifically "the public-report exception," but explicitly did not address the exception because the parties failed to argue it. *RGB Plastic, LLC v. First Pack, LLC,* 184 F.Supp.3d 649, 664 (N.D. Ill. 2016). And finally, in *Van Houten-Maynard v. ANR Pipeline Co.,* the reports ruled inadmissible were expressly barred by statute. *See, Van Houten-Maynard v. ANR Pipeline Co.,* No. 89 C 0377, 1995 WL 311367, at *7 (N.D. Ill. May 19, 1995). The footnote in *Van Houten-Maynard* relied on by Halo merely stated that the letter was "clearly not based on factual investigation" due to, presumably, the fact that the letter stated that a "cursory review" resulted in agreeing with another agency's conclusion. *Id.* at *3 n. 3. This is in sharp contrast to the detailed analysis issued by the Copyright Office here.

Accordingly, the Court finds the Documents from the Copyright Office fall under the public-records exception under either subsection (i) or (iii). A pragmatic policy animates Federal Rule 803(8). Without the public records exception, agents of the Copyright Office would potentially be required to testify in a large amount of copyright cases, causing an enormous disruption to the efficiency of the Office. *See,* 2 McCormick On Evid. § 295 (7th ed.). In fact, given the volume

of registration filings and the length of time to bring these matters to trial, the written statement contemporaneous in time may be more reliable than an official's memory. *Id.* This ruling is consistent with that policy. Given this ruling, the Court does not address whether the business records exception would apply.

Halo further argues that the Documents are inadmissible because the conclusions of the Copyright Office rely on an outdated standard after *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S.Ct. 1002, 1007 (2017). Halo's argument is persuasive, but not as to the admissibility of the Documents. The fact that *Star Athletica* was not available as guidance to the Copyright Office at the time these Documents were written is notable, but it goes to the weight of the Documents rather than their admissibility. The relevancy bar is a low one and easily met here. *See,* Fed. R. Evid. 401. *Star Athletica* does not bring every conclusion of the Copyright Office into question and is better addressed by the weight given to its reasoning where *Star Athletica* is implicated. The Court also considered Halo's argument for inadmissibility based on speculation and found it meritless.

Accordingly, the Court denies Halo's Motion to Strike and will consider the Documents from the Copyright Office as

- 13 -

evidence in the parties' Cross-Motions for Summary Judgment. However, the Court will consider *Star Athletica* in determining the weight given to the conclusions of the Copyright Office.

### B. Partial Summary Judgment on Count III

#### 1. Legal Standard

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Copyrightability is an issue of law for the court to decide. *Schrock v. Learning Curve Int'l,* 586 F.3d 513, 517 (7th Cir. 2009).

#### 2. Useful Articles under the Copyright Act

The Copyright Act of 1976 protects "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). "Works of authorship" include "pictorial, graphic, and sculptural works." 17 U.S.C. § 102(a)(5). "Pictorial, graphic, and sculptural works" include "two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans." 17 U.S.C. § 101. Notably the Copyright Act expressly protects applied art, but removes any "mechanical or utilitarian aspects" of the work from protection.

- 14 -

*Id.* To the extent that the "design of a useful article" constitutes a "pictorial, graphic, or sculptural work," it is only protectable if the "design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." *Id.* The statute further defines a "useful article" as "having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. An article that is normally a part of a useful article is considered a 'useful article'." *Id.*

This language was "intended to distinguish creative works that enjoy protection from elements of industrial design that do not." *Pivot Point Int'l, Inc. v. Charlene Prod., Inc.,* 372 F.3d 913, 920–21 (7th Cir. 2004) (citations omitted). As recognized by the Seventh Circuit, where to draw this line has caused the Courts "significant difficulty" and "consternation," and resulted in different standards among the Circuits. *Id.; Incredible Techs., Inc. v. Virtual Techs., Inc.,* 400 F.3d 1007, 1012 (7th Cir. 2005); *see also, Masquerade Novelty, Inc. v. Unique Indus., Inc.,* 912 F.2d 663, 670 (3d Cir.1990) ("Courts have twisted themselves in knots trying to create a test to effectively ascertain whether the artistic aspects of a useful

article can be identified separately from and exist independently of the article's utilitarian function.").

### 3. *Star Athletica v. Varsity Brands*

It is in the context of this "consternation" that the U.S. Supreme Court decided *Star Athletica*. The Court recognized that "[t]he line between art and industrial design . . . is often difficult to draw. This is particularly true when an industrial design incorporates artistic elements." *Star Athletica, L.L.C. v. Varsity Brands, Inc.,* 137 S.Ct. 1002, 1007 (2017). The analysis laid out in *Star Athletica* focuses on the statutory text, holding that a "pictorial, graphic, or sculptural featur[e]" incorporated into the "design of a useful article" is eligible for copyright protection if it: (1) "can be identified separately from," and (2) is "capable of existing independently of, the utilitarian aspects of the article." *Id.* at 1009 (citing § 101).

The Court characterizes the first requirement - "separate identification" - as "not onerous." *Id.* at 1010. The Court "need only be able to look at the useful article and spot some two- or three-dimensional element that appears to have pictorial, graphic, or sculptural qualities." *Id.*

The second requirement - the "independent-existence requirement" - is more stringent. *Id.* The Court must determine

whether the separately identified feature has the "capacity to exist apart" "as its own pictorial, graphic, or sculptural work." *Id.* The true question for the Court is "whether the feature for which copyright protection is claimed would have been eligible for copyright protection as a pictorial, graphic, or sculptural work had it *originally been fixed in some tangible medium other than a useful article* before being applied to a useful article." *Id.* at 1011 (emphasis added).

*Star Athletica* analyzed whether the surface decorations on the cheerleading uniforms were copyrightable. *Id.* at 1012. The Court found the separate identification requirement met because the decorations on the uniform could be identified as having pictorial, graphic, or sculptural qualities (specifically, the arrangement of colors, shapes, stripes, and chevrons on the cheerleading uniforms). *Id.* Second, the Court reasoned these features met the independent-existence requirement because had the features been applied in another medium, such as on a painter's canvas, they would qualify as a two-dimensional work of art under the Copyright Act. *Id.*

Before applying this test to the products at issue, *Star Athletica* also assisted the Courts by explicitly rejecting earlier tests developed by the Circuits. *Star Athletica* rejected the principle that "copyright extend[] only to 'solely

artistic' features of useful articles" or that "the useful article with the artistic feature removed would 'remai[n] similarly useful.'" *Id.* at 1013. Under *Star Athletica,* "[t]he focus of the separability inquiry is on the extracted feature" alone and it is irrelevant whether the useful article remains functional after the feature has been removed. *Id.* The one caveat is that something must be left behind of the original useful article. *Id.* If the extracted feature itself is a useful article, then no copyright protection follows. *Id.* Furthermore, the Supreme Court held that the artistic feature may add to the utilitarian function of the article without losing copyright protection. *Id.* at 1014 ("An artistic feature that would be eligible for copyright protection on its own cannot lose that protection simply because it was first created as a feature of the design of a useful article, even if it makes that article more useful."). However, when removed from the useful article, the feature must "qualify as a *nonuseful* pictorial, graphic, or sculptural work on its own." *Id.* at 1013 (emphasis added).

Halo and CDI heavily dispute the meaning of *Star Athletic* and its application to this case, specifically in regards to the separability analysis. Halo argues repeatedly that *Star Athletica* repudiated the conceptual separability test. It is true that *Star Athletica* "abandon[ed] the distinction between

"physical" and "conceptual" separability," but it did not go so far as Halo asserts. *Id.* at 1014. *Star Athletica* described the distinction it abandoned in detail, stating that the physical-conceptual distinction – which it rejected – required that the feature "be physically separated from the article by ordinary means while leaving the utilitarian aspects of the article completely intact." *Id.* at 1014. However, the Court repeatedly confirmed that, in accordance with the statute, the feature must meet the "independent-existence requirement" if imagined separately from the useful article, which means a separability analysis is still applicable. *Id.* at 1007.

The Court also rejected two other tests. The Court rejected a test that would analyze whether the features reflect artistic judgment rather than functional influence because the inquiry should be "limited to how the article and feature are perceived, not how or why they were designed." *Id.* at 1015. It also rejected a test that would analyze whether the "feature would still be marketable to some significant segment of the community without its utilitarian function," finding that this test "threatens to prize popular art over other forms, or to substitute judicial aesthetic preferences for the policy choices embodied in the Copyright Act." *Id.* From this the Court can

take away two things - both the subjective intent of the designer and market evidence are irrelevant. *Id.*

While the Court did not find a Seventh Circuit case analyzing the availability of copyright protection in furniture or lighting fixtures, several other Circuits have addressed this issue. The Court notes that these cases were decided prior to *Star Athletica,* and many of them apply different legal standards. The results are not consistent, although the majority finds that furniture and lighting fixtures are not copyrightable. *Compare, Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.,* 618 F.3d 417 (4th Cir. 2010) (affirmed finding of copyright infringement of plaintiff's furniture collections); *Amini Innovation Corp. v. Anthony Cal., Inc.,* 439 F.3d 1365, 1369 (Fed. Cir. 2006) (noting that the "trial court correctly accorded protection to the expressive ornamental carvings on the furniture, but not the furniture pieces as a whole"), *with Heptagon Creations, LTD v. Core Grp. Mktg. LLC,* 507 F. App'x 74 (2d Cir. 2013) (unpublished) (affirmed dismissal of claims of copyright infringement of high-end furniture designs); *Progressive Lighting, Inc. v. Lowe's Home Ctrs., Inc.,* 549 F. App'x 913 (11th Cir. 2013) (unpublished) (affirmed district court's decision that lighting fixtures were not copyrightable); *Ochre Ltd. Liab. Co. v.*

*Rockwell Architecture, Planning & Design, P.C.*, 530 F. App'x 19 (2d Cir. 2013) (unpublished) (affirmed dismissal of copyright infringement action based on lighting fixtures); *Aqua Creations USA Inc. v. Hilton Worldwide, Inc.*, 487 Fed. Appx. 627 (2d Cir. 2012) (affirmed dismissal of copyright infringement claim for lamps); *Magnussen Furniture v. Collezione Europa USA,* 116 F.3d 472 (4th Cir. 1997) (unpublished) (affirmed decision to deny preliminary injunction on a copyright infringement claim for design features of tables); *Esquire, Inc. v. Ringer,* 192 U.S. App. D.C. 187, 591 F.2d 796 (1978) (reversed district court's decision that outdoor lighting fixture was copyrightable).

The most applicable Seventh Circuit guidance is *Pivot Point Intern., Inc. v. Charlene Products, Inc.,* 372 F.3d 913 (2004). Although it is important to keep in mind that *Pivot Point* was decided prior to *Star Athletica* - and thus applied a different standard - *Pivot Point* still provides helpful guidance because the result of *Pivot Point* would likely remain. *Pivot Point* held that the particularized facial expression of a mannequin was subject to copyright protection. *Id.* at 931-32. *Star Athletica* broadened the availability of copyright protection for utilitarian articles by rejecting several tests that would ordinarily narrow the category of works that received copyright protection. *See, id.* at 1015. For example, no longer must the

artistic elements not play any role or assist in the utility of the object. *See, id.* at 1014. Also, it will not bar copyright if, after the removal of the protectable elements, the useful article is no longer functional. *See, id.* at 1013. Both requirements were rejected in *Star Athletica* and thus some objects that would have failed either test will merit copyright protection. Thus, in this Circuit, the particularized facial expression of a mannequin receives copyright protection, and would likely continue to do so under the *Star Athletica* analysis.

### 4. *The Copyright Office's Denial of Registrations*

It is unclear what level of deference, if any, should be given to a rejection of registration by the Copyright Office. *See, Games Workshop Ltd. v. Chapterhouse Studios, LLC,* No. 10 C 8103, 2013 WL 1340559, at *3 (N.D. Ill. Apr. 1, 2013) (collecting cases); *compare, Clarus Transphase Sci., Inc. v. Q-Ray, Inc.,* No. 06 C 4634, 2006 U.S. Dist. LEXIS 95005, at *67 (N.D. Ill. Oct. 6, 2006) (where plaintiff's applications for registration were rejected by the Copyright Office, "the district court makes an independent determination regarding [plaintiff]'s ownership of a valid copyright; a *de novo* determination as to whether plaintiff's work is copyrightable."), *with Design Ideas, Ltd. v. Yankee Candle Co.,*

889 F.Supp.2d 1119, 1126–27 (C.D. Ill. 2012) (granting deference to the opinions of the Copyright Office which rejected plaintiff's applications). The Court considers the substance of the Documents, but weighs the Copyright Office's opinions based on the consistency with *Star Athletica*.

### 5. *Application under Star Athletica*

Armed with the analysis of *Star Athletica*, the Court turns to the individual works at issue. Both parties acknowledge that the works here constitute useful articles and that *Star Athletica* applies.

#### a. *Halo's Lighting Fixtures*

Halo claims copyright protection for features in its ODEON lighting fixtures, its Zig Zag lighting fixtures, its Gyro Crystal Chandelier, and its Crystal Chandeliers (the "Lighting Fixtures"). Halo argues that the following artistic features are copyrightable:

> (1) in the ODEON lighting fixtures, the "arrangement of cascading crystal circles and the shape of the prisms," *see,* Defs.' Resp. to Pls.' SOMF ¶ 41;

> (2) in the Zig Zag lighting fixtures, the "circular metallic cage having diamond latticework, where crystals are suspended within each diamond," *id.* ¶ 45;

> (3) in the Gyro Chandelier, the orb, the little ring on the equator, and the relative arrangement of the crystals to the orb, *id.* ¶ 51; and

(4) in the Crystal Chandelier, the "lightness of the product with a smaller frame, the rusted nature of the frame, the amount and arrangement of the crystals, and the lowermost crystal ball," *id.* ¶ 57.

The Court considers the copyrightability of the asserted lighting fixtures together because the analysis is similar. The Court finds the first requirement—"separate identification" - met. The Court finds that the features identified in the Lighting Fixtures have three-dimensional elements containing sculptural qualities, recognizing that this requirement is "not onerous." *Star Athletica,* 137 S.Ct. at 1010.

Turning to the "independent-existence requirement," the question is whether the features of the Lighting Fixtures are eligible for copyright "as a pictorial, graphic, or sculptural work had [they] originally been fixed in *some tangible medium other than a useful article* before being applied to a useful article." *Id.* at 1011 (emphasis added). Halo argues that the chandelier features could exist independently as its own sculptural work, separate from the lighting elements. For example, in reference to the Odeon fixtures, Halo argues that "one can imagine the arrangement of concentric circle or rectangles of hanging prismatic crystals . . . hung from a ceiling [to] stand on their own as a separate work of modern art." (Pls.' Brief at 10.) Indeed, without any lightbulb or

wiring the functionality of the chandelier would be absent, but the sculptural qualities would not. In considering the Gyro Chandelier, the Court can imagine the orb placed on a pedestal with no lighting elements as an independent sculptural work. *Star Athletica* warns that a copyrightable feature will not lose protection merely because it was first created as part of a useful article rather than as a sculpture. Similarly, the Court can imagine the other Lighting Fixtures hanging without functioning as a light and possessing sufficient sculptural qualities to exist independent of any usefulness.

However, is this sufficient? The difficulty lies in the broad array of works subject to copyright under a test such as this. Here, when the features identified are removed from the functional lighting fixture, the artistic features that are perceived hanging from the ceiling are perceived as components of a chandelier, even absent the wiring that would cause the light to function. If this is sufficient, it is difficult to imagine what chandelier would not receive copyright protection, given that chandeliers are designed to be beautiful. To be clear, the shape or form of a chandelier is not copyrightable. But the specific expression of features within a chandelier may be. *See, Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.,* 618 F.3d 417, 433 (4th Cir. 2010), *as amended*

(Aug. 24, 2010) (noting the "shape of [] furniture cannot be the subject of a copyright, no matter how aesthetically pleasing it may be, but the decorative elements that are separable from the furniture can be.")

The Court finds it an exceedingly close question as to whether this conception of separability is sufficient to meet the independent-existence requirement. Prior to *Star Athletica,* the fact that the artistic features also contributed to the utilitarian function - as argued by CDI - would remove the chandelier from copyright protection. However, *Star Athletica* makes clear that "an artistic feature that would be eligible for copyright protection on its own cannot lose that protection simply because it was first created as a feature of the design of a useful article, *even if it makes that article more useful*." *Star Athletica,* 137 S.Ct. at 1014 (emphasis added). In other words, a sculptural work does not become uncopyrightable merely because a lightbulb was placed inside it and it was hung from a ceiling. CDI argues that elements of the lighting fixtures cannot be copyrightable because its features relate to its "utilitarian function as a device used to combat darkness," quoting *Chosun Int'l, Inc. v. Chrisha Creations, Ltd.,* 413 F.3d 324, 328 (2d Cir. 2005). Again, *Star Athletica* rejected this reasoning, finding that an artistic feature is not barred simply

- 26 -

because it assists in the utility of the article. Thus, the fact that each individual prism is not wholly decorative – given that it refracts light and thus assists in the utilitarian function of the article – is no longer sufficient to bar the feature from copyright protection. *Id.* at 1014. For the same reason, the fact that the sculptural features may also act as a lamp shade for the bare lightbulb is not sufficient under *Star Athletica* either. Thus, the Court lessens the weight given to the Copyright Office's rejection of the Light Fixtures because the reasoning relies on the Office's determination that the features were not wholly decorative. (*See,* Copyright Office Correspondence, Ex. 3 to Defs.' Mem. in Supp. Summ. J.) The standard no longer requires a feature to be wholly decorative to receive copyright protection. *See, id.* at 1013 (rejecting the requirement that "copyright extend[] only to 'solely artistic' features of useful articles").

Additionally, the Seventh Circuit's holding in *Pivot Point,* recognizing the copyrightability of the facial expression of a mannequin, emphasizes the breadth of separability and supports a finding of copyrightability here. In contrast, CDI relies on *Aqua Creations,* which held that the "shape of lighting fixture shades is clearly informed by utilitarian concerns, and the associated creative elements are not conceptually separable."

*Aqua Creations USA Inc. v. Hilton Hotels Corp.,* No. 10 CIV. 246 PGG, 2011 WL 1239793, at *6 (S.D.N.Y. Mar. 28, 2011), *aff'd sub nom.,* 487 F. App'x 627 (2d Cir. 2012). However, *Star Athletica* rejected both the requirement that the removed features must be solely artistic and the test analyzing whether the features were designed with art or function in mind. *See, Star Athletica,* 137 S.Ct. at 1014-15. CDI also cites to *Esquire, Inc. v. Ringer,* 591 F.2d 796, 805 (D.C. Cir. 1978). There, the D.C. Circuit upheld the Copyright Office's denial of registration for the *overall design* of its outdoor lighting fixtures. *Esquire, Inc. v. Ringer,* 591 F.2d 796, 806 (D.C. Cir. 1978). Here, Halo has identified specific features of its lighting fixtures for copyright protection. CDI argues that this case is parallel to *Esquire* because Halo is attempting to copyright "the sum of its parts" rather than specific features of the lighting fixtures, pointing to testimony at deposition. However, when the testimony is read in context, even reading it in the light most favorable to CDI, it is clear that Mr. Oulton identified distinct features of the chandelier, not just the "sum of its parts." (CDI's Resp. to Halo's SOMF ¶ 57; Halo's Resp. to CDI SOMF ¶ 61.)

Cases following *Star Athletica* also support a finding of copyright protection here. The district court in *Jetmax Ltd. v.*

*Big Lots, Inc.* considered the copyrightability of a Tear Drop Light Set, notably less ornately designed than the chandeliers before this Court. *See, Jetmax Ltd. v. Big Lots, Inc.,* No. 15-CV-9597 (KBF), 2017 WL 3726756, at *6 (S.D.N.Y. Aug. 28, 2017). The district court held that the decorative covers of the product were sculptural works "capable of existing apart from the utilitarian aspect of the light set," the utilitarian aspect being the light bulb and components that cause the product to light a room. *Id.* The Court reasoned that "[t]he primary purpose of the cover is artistic; once the covers are removed, the remainder is a functioning but unadorned light string." *Id.* The court there recognized that the decorative covers would "reduce glare and serve some utilitarian function," but found that *Star Athletica* confirmed that serving some utilitarian function did not bar the feature from copyrightability. *Id.* at *6 n. 2 (citing *Star Athletica,* 137 S.Ct. at 1014).

Granting that the legal question is exceedingly close, the Court concludes that the specific features identified by Halo in its Lighting Fixtures are copyrightable. The Court recognizes this reading of the useful articles provision is broad, but feels compelled to this result given the analysis of *Star Athletica, Pivot Point* and the persuasive reasoning of *Jetmax*.

Accordingly, the Court finds that Halo's various Lighting Fixtures contain copyrightable features.

### b. Halo's Furniture

The Court now turns to consider the majority of the furniture at issue (the "Furniture"). Halo claims copyright protections in the following features:

1. in the Blackhawk Furniture, the "pattern of stainless steel panels, riveted together with a distressed, shiny metallic finish, with curved edges and curvature pleats riveted into each corner" (Defs.' Resp. to Pls.' SOMF ¶ 41);

2. in the Stonyhurst Furniture, the wooden bands wrapping around the article held in place by pins or studs (*Id.* ¶¶ 33-35);

3. in the Ampleforth Chest, the leather strips wrapping around the article held in place by pins or studs (*Id.* ¶¶ 36-37);

4. in the Globetrekker Coffee Table, the "pattern of stainless steel panels, riveted together with a distressed, shiny metallic finish" and the "wood strips that wrap around the table, and leather corner wraps, all of which appear to be locked in place by pins or studs" (*Id.* ¶ 64);

5. in the Oviedo Chaise, the "curved metallic frame attached to a leather cushion, which has stitching in several equidistant, horizontal lines that make the cushion tuft out into accordion-like pillows" (*Id.* ¶ 65-66);

6. in the Scaffolding Tables, the "two or more horizontal sections made from an industrial distressed metallic frame, with wooden panels that are placed front to back," the "flat metallic rods in the shape of an "X" on the side of each table," and the "metallic caps on the corners of each table that appear to be attached to the table by tacks or bolts" (*Id.* ¶ 68);

7. in the Aviator Tomcat Chair, the shape and arrangement of the arms, the "random panels," "the way the rivets are attached," "the stitching," and "the sum of its parts" (*Id.* ¶ 25);

8. in the Mars Chair, the two separate stainless steel metallic structures, which emerge together in a wishbone (*Id.* ¶ 29); and

9. in the Aviator Valkyrie Desk, the unique finish, the riveted panels, the abrupt bend, and the curved leg with inlaid reveals. (*Id.* ¶ 27-28).

The Court finds the first requirement – "separate identification" – met. Recognizing that this requirement is "not onerous," the Court finds that all of the features identified in the Furniture have three-dimensional elements with pictorial, graphic, and sculptural features, except the Oviedo Chaise. *See, Star Athletica,* 137 S.Ct. at 1010. The Oviedo Chaise lacks sculptural qualities. The test is not "onerous," but is also not superfluous. *See, id.* at 1010. Halo identified the "curved metallic frame attached to a leather cushion, which

- 31 -

has stitching in several equidistant, horizontal lines that make the cushion tuft out into accordion-like pillows," which is tantamount to identifying the entirety of the useful article. Accordingly, the Court finds the Oviedo Chaise is not subject to copyright protection.

Turning to the independent-existence requirement, the Court must "determine that the separately identified feature has the capacity to exist apart from the utilitarian aspects of the article." *Star Athletica,* 137 S.Ct. at 1010 (2017). The Court will consider whether the independent-existence requirement is met for each furniture piece. Halo argues that all of the features described can exist as their own sculptural work by imaginatively removing the identified feature and hanging it on a wall.

However, *Star Athletica* cautioned that the removed "feature cannot itself be a useful article or an article that is normally a part of a useful article." *Star Athletica,* 137 S.Ct. at 1010 (internal quotation omitted). The features identified here do not all create their own separable piece of artwork, because if imaginatively removed from the product, the removed feature itself creates another piece of furniture or an outline of furniture. On the other hand, if the materials were not put in the same position as they operated on the product, the unique

expression attempting to receive copyright protection would be lost. Similarly, if the Court follows *Star Athletica*'s analysis and imaginatively removes the features from the furniture and applies another medium to the feature, wood for example, the result is a wood carving of furniture. This distinction distinguishes the furniture at issue here from the graphic at issue in *Star Athletica*. *See, Star Athletica,* 137 S. Ct. at 1012.

Turning to the specific pieces at issue, if the Court imaginatively removes the wooden bands wrapping the furniture in the Stonyhurst design, the bands either lose the unique expression by being placed in an entirely different arrangement or they recreate the outline of furniture. The same is true in regards to Ampleforth's leather strips. In regards to the Globetrekker Coffee Table and the Blackhawk Furniture, the features identified – the stainless steel pattern and the appearance of the wood and leather strips – cannot independently standalone without either recreating the furniture or losing the unique expression of the work itself, which is the only part that is copyrightable. Similarly, in regards to the Scaffolding Tables, the removed features—the distressed metallic frame, the wooden panels, and the metallic rods in the X-shape—recreate the entire table. *See, Star Athletica, L.L.C. v. Varsity Brands,*

- 33 -

*Inc.,* 137 S.Ct. 1002, 1010, 197 L.Ed. 2d 354 (2017) ("[T]he feature cannot itself be a useful article."). The Copyright Office's determinations support this conclusion. (*See,* Copyright Office Correspondence, Ex. 3 to Defs.' Mem. in Supp. Summ. J.) Thus, the Court finds that the artistic features of the furniture are so inextricably linked to the useful article that they are inseparable, even under the analysis laid out in *Star Athletica*. A contrary ruling as to the features of Halo's furniture would read the independence-existence requirement for useful articles so broadly as to vitiate the requirement at all. Copyright protection does not extend to useful articles unless the independence-existence requirement is met and that requirement must do some work. *See, Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.,* 74 F.3d 488, 493 (4th Cir. 1996) ("[T]he industrial design of a unique, aesthetically pleasing chair cannot be separated from the chair's utilitarian function and, therefore, is not subject to copyright protection.").

Three of the furniture pieces, however, create exceptionally close questions: the Aviator Tom Cat Chair, the Mars Chair, and Aviator Valkyrie Desk. The Copyright Office rejected the registrations for features of these works, relying on the fact that the artistic features assisted in the function

- 34 -

of the useful article and functional considerations influenced the design. (*See,* Copyright Office Correspondence, Exs. 3, 10 to CDI's Mem. in Supp. Summ. J.) The Court gives this opinion little weight because, as discussed above, this reasoning was explicitly rejected in *Star Athletica*. The Court also rejects Halo's arguments regarding the relevancy of the concept behind its designs. For example, Halo asserts that the Aviator Valkyrie Desk "evokes the cockpit of the iconic World War II-era British Spitfire fighter plane." Although interesting, under *Star Athletica,* the subjective intent of the designer and the conceptual undertaking for the piece is irrelevant as the statutory text focuses solely on "how the article and feature are perceived, not how or why they were designed." *Star Athletica,* 137 S.Ct. at 1015.

Turning to the independent-existence requirement, if the arms of the Aviator Tomcat Chair were removed and placed independently in the same relative shape, the work could stand on its own as a sculptural piece, broken in the middle of its curvature. Further, if the arms were created in another medium, the replicated feature would be perceived as sculpture rather than either an armrest or a chair. In the same way, the two stainless steel features that form the arm rest for the Mars Chair are also capable of independently creating a sculptural

- 35 -

work, either in steel or in another medium. Accordingly, the Aviator Tomcat Chair and the Mars Chair contain copyrightable features.

The Aviator Valkyrie Desk's features – the unique finish, the riveted panels, the abrupt bend, and the curved leg with reveals – reflect sculptural qualities as well. However, the Court finds this a close question as the design of the Aviator Valkyrie Desk subsumes the whole article itself. *Star Athletica* affirmed that the feature identified for copyright cannot be the useful article itself. *See, Star Athletica,* 137 S.Ct. at 1010; *see also,* 1 Nimmer on Copyright § 2A.08 (2017) ("Even if an article has a distinctive shape, like 'works of modernistic form sculpture' it should still be denied protection if that shape is inseparable from its function.") Copyrighting the shape of the Aviator Valkyrie Desk is essentially seeking copyright protection for the useful article. The test is broad, but the law is clear that copyright is unavailable for the entire useful article. *See, id.* Notably, the features on the table leg and the "inlaid reveals" are copyrightable as a feature within the useful article. Accordingly, the Court holds that the features on the leg of the Aviator Valkyrie Desk are copyrightable, but not its overall shape.

Halo claims the intricate carvings in the upper portion of the wooden frame of the Georgian Architectural Mirror and the wood carvings in the legs of the Georgian Dining Table are copyrightable. (SOF, ¶¶ 60, 62.) The Court finds this a fairly simple application of *Mazer,* reaffirmed by *Star Athletica*. *See, Mazer v. Stein,* 347 U.S. 201, 217 (1954); *Star Athletica,* 137 S.Ct. at 1012. These carvings are both identifiable and capable of independent existence outside of the mirror or dining table's frame. *See, id.* Accordingly, the carvings are copyrightable. The carvings in the legs of the Georgian Dining Table are also copyrightable, but due to the simple design, the copyright in place is exceptionally thin, protecting only against almost exact copying. Still however, these features meet the test of *Star Athletica* as they are identifiable and can exist independently as a sculptural work outside of the table.

To be clear, the concepts behind Halo's furniture and lighting fixtures are not copyrightable. *See, JCW Investments, Inc. v. Novelty, Inc.,* 482 F.3d 910, 917 (7th Cir. 2007) (citing Feist, 499 U.S. at 348–49)). ("It is, of course, a fundamental tenet of copyright law that the idea is not protected, but the original expression of the idea is."). The Court holds that the specific features discussed above merit copyright protection. However, Halo cannot prevent another designer from creating a

desk inspired by a World War II airplane or a modern-version of an old chandelier. Copyright will only attach to the specific, original expression in the work. *See, Gaiman v. McFarlane,* 360 F.3d 644, 659 (7th Cir. 2004) ("If standard features could be used to prove infringement, not only would there be great confusion because it would be hard to know whether the alleged infringer had copied the feature from a copyrighted work or from the public domain, but the net of liability would be cast too wide; authors would find it impossible to write without obtaining a myriad of copyright permissions.").

### 6. *Originality*

In addition to meeting the test laid out in *Star Athletica,* Halo's asserted works must be original. The requirement of originality is baked into the Copyright Act. *See,* 17 U.S.C. § 102(a) ("*original* works of authorship) (emphasis added). "Originality requires that the elements be independently created and possess at least some minimal degree of creativity." *Nova Design Build, Inc. v. Grace Hotels, LLC,* 652 F.3d 814, 818 (7th Cir. 2011) (citing *Schrock v. Learning Curve Int'l, Inc.,* 586 F.3d 513, 519 (7th Cir. 2009)). Originality is not a high burden: "[T]he requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative

spark, no matter how crude, humble or obvious it might be." *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1991) (internal quotation and citations omitted).

Turning to the works previously identified as having met the requirements of *Star Athletica,* the Court finds that the "extremely low" requisite of creativity is satisfied. *Feist,* 499 U.S. at 345. CDI argues that many of Halo's design incorporate simple geometric shapes. *Star Athletica* found that the simple geometric designs on cheerleading uniforms met the originality requirement. *Star Athletica,* 137 S.Ct. at 1013. Thus, it is also met here. Certainly chandeliers are not novel, but they do not have to be novel to merit copyright protection. "Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Id.* The Court holds that the designs here have been independently created and are sufficiently original to merit copyright protection.

### C. Count II of CDI's Counterclaims: Sham Litigation/ Attempted Monopolization under Section 2 of the Sherman Act

In order to invoke the "sham litigation" exception to the Noerr-Pennington Doctrine, "the lawsuit must be objectively baseless in the sense that no reasonable litigant could

realistically expect success on the merits." *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60 (1993). The Court finds that this litigation is not objectively baseless, and as such, does not reach the second question as to whether the "lawsuit conceals an attempt to interfere directly with the business relationships of a competitor, through the use of the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon." *Id.* at 60-61 (internal quotations and alterations omitted).

CDI argues that if Halo's asserted foreign works are not protected under the Copyright Act, Halo's copyright claims lack basis in fact and law. CDI copies its substantive arguments above, stating that the asserted designs are not separable or original and therefore have no protection. CDI also argues that on the basis of the Copyright Office's rejection of registration, this ensuing litigation is "sham litigation." As obvious from the extensive discussion above, this area of the law is open to reasonable interpretation and claiming copyright protection in the products at issue is not objectively baseless. As such, the Court does not reach the other requirement for the exception or the substance of the underlying antitrust claim. Accordingly, the Court grants Halo's Summary Judgment Motion as to Count II of CDI's Counterclaims.

### D. Counts III and IV of CDI'S Counterclaims: Intentional Interference with Prospective Economic Advantage and Business Expectancy

Under Illinois law, the elements for a claim of Intentional Interference with Prospective Economic Advantage and a claim for Intentional Interference with Business Expectancy are substantially the same, if not identical. *Compare, Anderson v. Vanden Dorpel,* 172 Ill. 2d 399, 406, 667 N.E.2d 1296, 1299 (Ill. 1996); (listing elements of intentional interference with prospective economic advantage), *with Mannion v. Stallings & Co.,* 204 Ill. App. 3d 179, 188, 561 N.E.2d 1134, 1139 (1990) (listing elements of intentional interference with a business expectancy). "Under Illinois law, the elements of [a tortious interference with a business expectancy] claim are '(1) the plaintiff's reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference.'" *Botvinick v. Rush Univ. Med. Ctr.,* 574 F.3d 414, 417 (7th Cir. 2009) (quoting *Fellhauer v. City of Geneva,* 568 N.E.2d 870, 878 (Ill. 1991). To avoid summary judgment, CDI must present

evidence creating a triable issue of fact on each contested element. *Id.*

Halo contends that it is entitled to summary judgment because CDI has failed to adduce evidence that it had a reasonable expectation of entering into a business relationship with Restoration Hardware or other third parties. In regards to Restoration Hardware, representatives of Restoration Hardware went to CDI's show rooms during a trade show in North Carolina. (*See,* Defs.' Resp. to PSOF ¶ 72.) Halo contends that there is no other evidence indicating a reasonable expectation on part of CDI to enter into a business relationship with Restoration Hardware. CDI does not dispute that a representative visiting a show room is insufficient to create a reasonable expectation of a business relationship. (*Id.* at ¶ 73.) However, CDI fails to direct the Court to any more substantial evidence. No evidence indicates that Restoration Hardware expressed interest in CDI's products and the evidence is sparse, at best, to show that CDI attempted to sell its products to Restoration Hardware. (*Id.* at ¶ 74.) Based on these facts, no reasonable jury could find that CDI had a reasonable expectation of a business relationship with Restoration Hardware.

CDI argues that its Counterclaim is not limited to Restoration Hardware and that is has established a reasonable

expectation of business with other third parties. At the summary judgment stage, the third parties must be specifically identified. *See, Celex Grp., Inc. v. Exec. Gallery, Inc.,* 877 F.Supp. 1114, 1125 (N.D. Ill. 1995). The only third parties identified by CDI are Dynamic Home Décor, Elegant Lighting, Inc., Frenchvilla, and Gilt. (Declaration of D. Ouaknine, Ex. 13 to CDI's MSJ, ¶ 7.) In the Declaration of Mr. Ouaknine (CDI's CEO and President), he declares that CDI lost business to those four customers as a result of letters sent by Halo regarding its purported copyrights. (*Id.* ¶¶ 1, 7.) The letters provide evidence of communication to these customers by Halo. (*See* Letter, Ex. 17 to CDI's Mem. in Supp. Summ. J.) However, neither his declaration nor CDI's brief refers the Court to any exhibits, statements of material fact, or other evidence in the record substantiating lost business from any of these customers outside of Mr. Ouaknine's declaration. CDI provides no evidence that shows that Halo's letters *caused* Dynamic Home Décor, Elegant Lighting, Inc., Frenchvilla, or Gilt to stop doing business with CDI. *See, Botvinick v. Rush Univ. Med. Ctr.,* 574 F.3d 414, 418 (7th Cir. 2009). No documents or deposition testimony from any representatives of those four companies substantiating why the companies reduced their business with CDI. "To avoid summary judgment, [CDI] must present evidence

creating a triable issue of fact on each contested element." *Botvinick v. Rush Univ. Med. Ctr.,* 574 F.3d 414, 417 (7th Cir. 2009). A declaration is insufficient to preclude summary judgment.

CDI argues that whether, and the extent, that CDI lost business from these customers is a material fact that precludes summary judgment. "It is well-established that a party opposing a motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial; the party may not hold back evidence until trial but rather must present sufficient evidence to show that there is a triable issue." *Celex Grp., Inc. v. Exec. Gallery, Inc.,* 877 F.Supp. 1114, 1125 (N.D. Ill. 1995) (citations omitted). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The opposing party must then "go beyond the pleadings" and "designate specific facts showing that there is a genuine [material] issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The non-moving party cannot create an issue of fact with speculation or conjecture. *Borcky v. Maytag,* 248 F.3d 691, 695 (7th Cir. 2001). Here, CDI is unable to identify specific evidence

supporting its claims that show a genuine material issue for trial. As such, the Court must grant summary judgment in Halo's favor on Counts III and IV of CDI's Counterclaims.

### III. <u>CONCLUSION</u>

For the reasons stated herein, the Court grants in part and denies in part the parties' Cross-Motions for Partial Summary Judgment on Count III [ECF Nos. 120, 128]. Halo's Motion for Summary Judgment [ECF No. 128] is granted as to Counts II through IV of CDI's Counterclaims.

**IT IS SO ORDERED.**

_____

Harry D. Leinenweber, Judge
United States District Court

Dated:  1/17/18