1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF ILLINOIS
2               EASTERN DIVISION

3  HALO CREATIVE & DESIGN LIMITED,      )
   et al.,                              )
4                                       )
        Plaintiffs/Counter-Defendants,  )
5                                       )
                 v.                     )  No. 14 CV 08196
6                                       )
   COMPTOIR DES INDES, INC., et al.,    )
7  et al.,                              )  Chicago, Illinois
                                        )  January 22, 2018
8      Defendants/Counter-Plaintiff.    )  9:20 a.m.

9            EXCERPT TRANSCRIPT OF PROCEEDINGS

10       BEFORE THE HONORABLE HARRY D. LEINENWEBER

11 APPEARANCES:

12 For the Plaintiffs:        GREENBERG TRAURIG, LLP
                              BY:  MR. RICHARD D. HARRIS
13                                 MR. BARRY R. HORWITZ
                                   MS. JACQUELINE V. BROUSSEAU
14                            77 West Wacker Drive, Suite 3100
                              Chicago, Illinois 60601
15                            (312) 456-1037

16 For the Defendants:        FISHER BROYLES, LLP
                              BY:  MR. ALASTAIR J. WARR
17                                 MR. BRADLEY P. NELSON
                              One North Franklin Street
18                            Suite 3200
                              Chicago, Illinois 60606
19                            (312) 407-5260

20

21 Court Reporter:           Judith A. Walsh, CSR, RDR, F/CRR
                             Official Court Reporter
22                           219 S. Dearborn Street, Room 1944
                             Chicago, Illinois 60604
23                           (312) 702-8865
                             judith_walsh@ilnd.uscourts.gov
24

25

1      (Proceedings heard in open court:)

2           THE CLERK:  14 C 8196, Halo versus Creative Design.

3           THE COURT:  Appearances?

4           MR. HARRIS:  Good morning, your Honor.  Richard

5  Harris, Barry Horwitz, and Jacqueline Brousseau on behalf of

6  the plaintiffs, the Halo Creative & Design plaintiffs.  And

7  with us, your Honor, from Halo is, first of all, Timothy

8  Oulton who's sitting at the end of the table, its CEO and

9  creative director, as well as Ms. Emily Haslam, their general

10  counsel and business director and shareholder, also from the

11  Halo companies.

12           THE COURT:  How does he pronounce his name?

13           MR. HARRIS:  Oulton.

14           THE COURT:  Timothy --

15           MR. HARRIS:  Timothy Oulton, O-u-l-t-o-n, Oulton.

16           THE COURT:  Oulton?

17           MR. HARRIS:  Yes.

18           THE COURT:  Okay.

19           MR. WARR:  Good morning, your Honor.  Alastair Warr

20  of Fisher Broyles on behalf of the defendant, CDI Furniture.

21  With me at my counsel table is my partner Brad Nelson and Mark

22  Abell, who is our electronic evidence assistant.  David

23  Ouaknine, who is the CEO of CDI, will be with me at counsel

24  table as well.

25           THE COURT:  That was the question I had.  You

1    pronounce it Ouaknine, like "W"?

2            MR. WARR:  Yes, your Honor.

3            THE COURT:  Okay.  Thank you.  A couple of things.

4    The first thing we should take up is the motion to -- for

5    leave to appeal.  As I understand, the basis is that there was

6    a belief -- excuse me, the belief of the defendant that the

7    Court did not expressly rule on the question of originality.

8    And I've gone over the summary judgment opinion, and on Pages

9    37 through 39, we did discuss the issue of originality.

10           And the Court was aware of the fact that the crystal

11   chandelier design and the Odeon design were based on older

12   chandeliers, CDI's statement of material facts 17 and 61.  And

13   obviously, Halo cannot copyright the features copied from

14   antique chandeliers from the past.

15           However, the summary judgment opinion found that the

16   independently created features Halo added or removed from

17   these antique chandeliers created an original expression.

18   Those features are copyrightable.  The Court could have been

19   more explicit, but at the end of its section on separability,

20   the Court notes that the copyright will only attach to

21   specific original expression of the work.

22           Additionally, in its section on originality, the

23   Court found that certain features of the work at issue were

24   independently created and sufficiently original for

25   protection.  Specifically, on the opinion on Page 37, to be

1   clear, the concepts behind Halo's furniture and lighting

2   fixtures are not copyrightable, but the idea is not protected

3   but the original expression of the idea is.  And that's from

4   *JCW Investments, Inc., versus Novelty, Inc.*

5          The Court held that specific features discussed above

6   merit copyright protection.  However, Halo cannot prevent

7   another designer from creating a work inspired by a World War

8   II airplane or a modern version of an old chandelier.

9   Originally, chandeliers are not novel.  Certainly -- and this

10  is on Page 39.  Chandeliers are not novel, but they do not

11  have to be novel to merit copyright protection.  Originality

12  does not signify novelty.  A work may be original even though

13  it closely resembles other works so long as the similarity is

14  fortuitous, not the result of copying.

15         That was pretty clear from the *Star Athletica* case

16  which involved the use of various triangles and letters and

17  things of that nature which, obviously, were not in and of

18  themselves original, but the idea was that they were put

19  together to make an original design.  So the short of the

20  matter is that the motion for leave to appeal is denied.

21         Now, the next order should be, I think, to -- for the

22  Court to rule on the motions in limine.  And I would ask you

23  to listen.  This is a -- I'm going to give a summary of the

24  case.

25         Plaintiffs, collectively Halo, alleges that its

design patents, trademark, and copyright of various lighting fixtures and household furniture were infringed by defendants, collectively CDI.  The following design patents, trademarks, and copyrights are at issue.  Note that some have been stipulated to or removed by summary judgment.

One, Halo's U.S. Design Patent D655,526 entitled "Armchair" and D655,100 entitled "Seating furniture," the '100 patent.  CDI stipulated to these two patents being valid and enforceable.  CDI stipulated to the fact that the vintage leather chair and Aero chair infringed Halo's '526 patent.  CDI stipulated to the fact that its Eaton three-seater and Eaton one-seater infringed Halo's '100 patent.  Damages were left for trial.

Two, Halo's unregistered trademark rights in the mark "Odeon;" A, CDI stipulated to this trademark being valid and enforceable; B, CDI stipulated that the lighting fixtures CDI sold incorporated the Odeon brand name and infringed Halo's trademark, and then damages were left for trial.

Three, Halo's copyrights in its original product designs for 22 copyrighted works:  The Court ruled on summary judgment that several of these works were not protected by copyright.  Thus, only the following works are at issue for trial:  A, furniture:  Aviator Tomcat chair; Aviator Valkyrie desk; 3, Mars chair; 4, Georgian architectural dining table; 5, Georgian architectural mirror.  B, lighting fixtures:  1,

6

1    Odeon lighting fixtures; 2, Zigzag lighting fixtures; 3, Gyro

2    lighting fixtures; 4, crystal chandeliers.

3            And then there are state law claims.

4            The Court granted Halo's summary judgment on CDI's

5    counterclaims for attempted monopolization, sham litigation --

6    that's Count 2 -- and tortious interference with CDI's

7    business expectations and economic advantages, Counts 3 and 4,

8    so these issues are no longer needed to be decided at trial.

9            There are nine -- plaintiff had nine motions in

10   limine and defendants have one *Daubert* motion regarding

11   damages.  And I will now proceed first with plaintiff's

12   motions in limine, 1 through 9.

13           1, Halo's motion to exclude reference to or argument

14   on similar infringing goods sold by third parties.  The

15   argument is that lack of foundation, hearsay, documents not

16   produced during discovery.  Evidence at issue:  Copies of web

17   pages showing non-parties selling versions of Halo's designs.

18   These copies were attached to CDI's expert report.

19           CDI's response:  "The documents are not inadmissible

20   hearsay.  Even if they were, our expert relied on these

21   documents.  The evidence was not expressly requested during

22   discovery, but it was produced during expert discovery, well

23   before the expert's deposition."

24           The ruling is that that motion is denied.  CDI's

25   cases hold that a web page printout is not hearsay if the

1    printout is being offered to prove what a web page looked like

2    on a certain day, not the underlying facts.  If you find that

3    CDI's printouts are showing what a customer would see

4    searching for furniture, not what was actually available, then

5    this is not hearsay.

6           However, even if it was offered for the truth of the

7    matter, the expert may rely on it, Rule 703, and this evidence

8    is more probative than prejudicial in helping the jury weigh

9    the opinion of Halo's expert.  Halo's expert makes the

10   assumption in calculating damages that if the customer bought

11   CDI's infringing product, they would have bought Halo's

12   product -- did I say that right?

13          Halo's expert makes the assumption in calculating

14   damages that if the customer bought CDI's infringing product,

15   they would not have bought Halo's product.  Instead, CDI's

16   wrongful conduct -- or they would have bought Halo's product

17   but for CDI's wrongful conduct.  This evidence should be

18   weighed in evaluating that assumption.  Foundation for the web

19   pages can be ruled on at trial, but note that it isn't a

20   difficult foundation to establish.

21          2, the motion to exclude reference to or argument on

22   Timothy Oulton's alleged outburst.  Evidence at issue:

23   Mr. Oulton, Halo's founder, allegedly went to a trade show and

24   saw CDI's infringing furniture and purportedly went ballistic,

25   started screaming and threatening the sales reps and the

1    company.  He had to be removed by security.  Mr. Oulton will

2    be testifying at the trial.

3         CDI's response, that the arguments go to the weight

4    rather than admissibility and is relevant to 3 and 4 of the

5    counterclaims which have been disposed of.

6         This is granted.  This evidence is irrelevant because

7    we granted the summary judgment motion on Counts 3 and 4.

8    Thus, evidence of Mr. Oulton's behavior at a trade show is

9    irrelevant.

10        3, motion to exclude reference to or argument on

11   Halo's alleged attempted monopolization.  This is granted.

12   This is evidence because I granted the summary judgment.

13   However, the ruling does not bar factual references to the

14   size of the company or other background information.

15        4, motion to exclude reference to or argument on

16   Halo's demand letters, CDI's alleged lost business purportedly

17   caused by Halo, or Halo's alleged intentional interference

18   with prospective economic advantage and business expectancy.

19   This is granted because we had ruled on the summary judgment,

20   and those issues are no longer in the case.

21        5, motion to exclude reference to or argument on

22   CDI's purported per-unit costs and claims that certain sales

23   were never made or were made to non-U.S. customers.  The

24   basis:  Reliability of the evidence.

25        Evidence at issue:  CDI's expert opinions are based

1    on data from a master Excel spreadsheet that compiled large

2    amounts of data from CDI invoices and other business

3    documents.  Halo claims that this spreadsheet was not reliable.

4           CDI's response:  Experts may rely on data provided by

5    other -- by another, including financial summaries; in this

6    case, an Excel spreadsheet of invoice data provided by CDI to

7    its expert.  Halo had the opportunity to move to compel all of

8    the underlying documents that went into the spreadsheet during

9    discovery and chose not to do so.

10          The motion is denied.  The expert may rely on data

11   provided to her by CDI and testify to the factual assumptions

12   that her testimony is based on.  The man who created the

13   spreadsheet is a witness at trial, and Halo will be able to

14   cross-examine him as well.  The reliability of the underlying

15   facts can be evaluated by the jury at trial.

16          Review of case law supports CDI's argument.  In

17   *Hannah's Boutique versus Surdej*, Judge St. Eve denied a motion

18   to strike an expert opinion based on sales spreadsheets.  Just

19   as here, the movant had the opportunity to question the expert

20   about the data during depositions.  Halo's arguments about the

21   reliability of the data can be argued at trial.

22          6, the motion to exclude reference to or argument as

23   to CDI's allocated fixed costs.  Basis:  Reliability of the

24   evidence, hearsay.  Evidence at issue:  The same spreadsheet

25   as No. 5.

1          Fixed costs are deductible if the evidence shows that

2    the cost is attributable to the infringing item.  Whether the

3    cost is attributable is a question of fact for the jury.

4    Thus, Halo's arguments go to the weight of the evidence, not

5    its admissibility.  The same argument as to MIL -- as to

6    motion in limine No. 5:  The expert may rely on spreadsheets

7    or other data when coming to their opinions and hearsay as

8    well.

9          The motion is denied.  Halo argued that the allocated

10   costs are inadmissible because they're fixed costs that CDI

11   had to pay regardless of its infringing activity.  CDI argues

12   that these costs are directly related to the infringing

13   products.  Thus, it is a question of fact for the jury to

14   decide.  Under the Copyright Act, the plaintiff is required to

15   present proof of the infringer's gross revenues, with the

16   burden on the infringer to establish any deductions for

17   expenses or to demonstrate that the profits introduced by

18   plaintiff were attributable to factors other than the

19   copyrighted work.  That's *Roulo versus Russ Berrie & Company*.

20         The legal principle is that, one, costs which are

21   attributable to the infringing items may be deducted -- for

22   example, the cost of materials to make the product -- and two,

23   overhead that the company would have to pay regardless of any

24   infringement cannot be deducted -- for example, rent.

25         CDI should be allowed to present the opinion of their

1    expert that these costs are attributable to the infringing

2    products.  Halo can challenge that opinion and its basis on

3    cross-examination.  The challenges to the expert's reliance on

4    the spreadsheets should be denied for the same reasons as

5    motion in limine No. 5.

6           7, motion to exclude reference to or argument on

7    CDI's profit apportionment based on difference in profit

8    margins.  The basis:  Methodology is unreliable, no basis for

9    this damage apportionment in the law.

10          CDI argues that the courts have upheld cases that

11   have awarded minimal damages for defendant's profits.  See

12   *Balsley versus LFP, Inc.*, which affirmed a jury verdict

13   awarding damages of 8.5 percent of gross profits of magazine

14   sales for use of plaintiffs's photograph; *Brown versus*

15   *McCormick* awarding damages against a movie production company

16   of 2.35 based on applying apportionment of 0.0001176 percent

17   of the total value of the movie attributable to the use of

18   plaintiff's copyrighted quilt to $2 million production fee.

19          Granted.  I find Halo's arguments on this motion in

20   limine persuasive.  CDI attempts to argue that it should only

21   have to disgorge 12.8 percent of the profits that it made on

22   the infringing products.  "An infringer is entitled to an

23   apportionment when the evidence is sufficient to provide a

24   fair basis of division so as to give the copyright proprietor

25   all the profits that can be deemed to have resulted from the

1    use of what belonged to him.  The burden of proving an

2    apportionment is on the defendant."  See *Roulo versus Russ*

3    *Berrie & Company.*

4            However, here, I have not seen evidence of a fair

5    basis for division.  CDI relies on cases that allow

6    apportionment.  However, the cases are inapplicable.

7    Apportionment is allowed where, for example, a defendant

8    infringed a story line used for a movie.  However, a movie's

9    profitability is not only based on the story but also the

10   director, actors, etcetera, and thus, the damages should only

11   be the portion of the movie's profits based on the infringed

12   story.

13           Here, the furniture and lighting fixtures don't lend

14   themselves to apportionment.  Without any evidence of a fair

15   division and with no applicable case law supporting it, the

16   motion should be granted.

17           Further, the methodology itself is questionable.  The

18   12.8 percent margin is based on the fact that CDI's profits on

19   the infringing products had a 12.8 percent higher margin than

20   CDI's profits on the non-infringing products.  However, based

21   on this methodology, if the margin between the two was zero,

22   CDI would be able to keep all of the profits it made on the

23   infringing products, which cannot be right.

24           8, motion to exclude argument as to CDI's costs

25   estimated by overall company margin.  Basis:  Methodology is

1   unreliable.  The arguments go to the weight of -- this is

2   CDI's position.  The arguments go to the weight of the

3   evidence, not its admissibility.  This is a question of fact

4   for the jury to decide.

5        The ruling is that that motion is denied, the same

6   reason as motion in limine Nos. 5 and 6.  CDI may put evidence

7   of per-unit cost before the jury.  CDI bears the burden to

8   show that the costs are attributable to the infringing

9   products and are not fixed costs that CDI would have to pay

10  regardless of selling the infringing items.  Whether the cost

11  is attributable to the infringing product -- variable cost --

12  or a fixed cost is a question of fact for the jury.

13       9, motion to exclude reference to or argument on the

14  prosecution histories of Halo's asserted intellectual property

15  rights before the copyright office.  The same arguments as

16  motion to strike, 1 -- this is CDI's position -- falls under

17  the public records exception for hearsay; and two, it is

18  relevant to show the copyright office's opinion of the works.

19       Reserve ruling.  It depends on why CDI is bringing in

20  the evidence.  Whether the products are copyrightable was

21  decided in the Court's summary judgment ruling.  Thus, the

22  copyright office's opinions on copyrightability are

23  irrelevant.  However, the fact that the copyright office

24  denied registration may go to CDI's willfulness.  The evidence

25  should be admitted for this purpose.

1    Hearsay:  We previously ruled on the motion to strike

2    that the copyright office's correspondence was admissible

3    under the public records exception.  See 803(8).

4    Now, CDI's motions in limine.  It's a *Daubert* motion.

5    *Daubert* motion to exclude Mr. Pakter's opinions in three

6    categories of damages.  Category B:  Lost profits from Halo's

7    discontinued products.  CDI argues that there's no evidence

8    that Halo discontinued the products because of the

9    infringement and, therefore, damages from its decision to

10   discontinue the product is improper.  There's also arguments

11   that this double-counts damages.  Halo does not intend to

12   present arguments at trial on this issue.  Accordingly, the

13   Court grants the motion without objection.

14   A *Daubert* motion to exclude Mr. Pakter's opinion in

15   three categories of damages:  Category C, profits from CDI's

16   sales from non-infringing products.  CDI argues that the

17   profits earned on its non-infringing products are not related

18   to infringement and, thus, should be excluded.  CDI states

19   that the case law does not support an award of damages on

20   profits on non-infringing sales.

21   Halo argues that CDI established its base of

22   distributors in the U.S. using the infringing products and,

23   thus, CDI's profits on the non-infringing products were

24   directly attributable to the infringement.

25   Denied without prejudice.  In *Bucklew versus Hawkins*

1   allows the plaintiff to recover profits that an infringer made

2   from non-infringing products if those products are

3   attributable to the infringement.  Whether those profits are

4   attributable here is a question of fact.  It is Halo's burden

5   to establish these facts at trial.  See *Andreas versus*

6   *Volkswagen* where the plaintiff had the burden to demonstrate a

7   nexus between the infringement and indirect profits.

8           CDI argues that the case law does not support an

9   award of damages based on CDI's profit on non-infringing sales

10  unless the products were bundled.  It distinguishes

11  *Sunset Lamp*, arguing that *Sunset Lamp* allowed plaintiff's lost

12  profits to include non-infringed products from the same

13  product line, not defendant's profits from non-infringing

14  sales.

15          Halo's response is persuasive.  The reasoning of

16  *Sunset Lamp* and *Bucklew* appear to allow profits made on

17  non-infringing products if there is evidence that those

18  profits are attributable to the infringement.  Further, CDI is

19  unable to point to any case law that bars these types of

20  damages as a matter of law.  Thus, it is a question of fact

21  for the jury whether CDI's sales in the U.S. of non-infringing

22  products are attributable to the infringement.

23          If Halo does not establish sufficient facts at trial

24  for a reasonable jury to find that these profits are

25  attributable to the infringement, then this ruling would be

revisited.

Daubert motion to exclude Mr. Pakter's opinion on Category D: CDI's increased profitability based on using Halo's designs to break into the U.S. market.

CDI argues that the assumption that any revenue growth exceeding the industry average was attributable to CDI's infringement is unsupported by the evidence and the law. CDI argues that no court in this circuit has awarded lost profits based on defendant's increased profitability or enhanced good will. CDI relies on Burns versus Imagine Films Entertainment, finding profits in non-infringing products from the same product line, not defendant's profits for non-infringing sales.

Halo's response is persuasive, however. The reasoning of Sunset Lamp and Bucklew appear to allow profits made on non-infringing products if there is evidence that those products -- excuse me.

Denied without prejudice. Excuse me. This was a close question. Although case law frequently finds these types of damages too speculative -- see case law cited by CDI -- Halo has alleged sufficient facts to be proved at trial showing that CDI's infringements were related to establishing itself with important customers in the U.S. market.

Halo states that CDI's revenue growth was negative, and then the year after using Halo's designs, its revenue

1    growth jumped up.  Halo makes a compelling point that there

2    are inferences that the infringement was a substantial

3    contributor to CDI's growth.  I find that there is enough of a

4    logical connection to put these facts to the jury.

5          Additionally, although CDI cites to several cases

6    finding these damages too speculative, it cites to no case

7    barring these damages as a matter of law.  If Halo does not

8    establish sufficient facts at trial for a reasonable jury to

9    find that these profits are attributable to the infringement,

10   then this ruling should be revisited.

11         All right.  So to summarize, motions in limine -- the

12   plaintiff's motion in limine No. 1 is denied, No. 2 is

13   granted, No. 3 is granted, No. 4 is granted, No. 5 is denied,

14   No. 6 is denied, No. 7 is granted, No. 8 is denied, and No. 9

15   is, ruling is reserved.  And the *Daubert* motion, category B,

16   lost profits from Halo's discontinued products, is granted

17   without objection.

18         Category C, profits from CDI's sales from

19   non-infringing products is denied without prejudice.  Category

20   D, CDI's increased profitability based on using Halo's designs

21   to break into the U.S. market is denied without prejudice.

22         So that's -- you were going to work on a statement of

23   the case.  Have you got one?

24         MR. HARRIS:  Your Honor, on behalf of plaintiffs, we

25   do have a statement.  There is one or two areas of --

1  requiring resolution by the Court, but we believe we're very

2  close on something.  We can present it.

3  　　　　　THE COURT:  Okay.  I would suggest that the statement

4  of the case should be as far as possible -- more, just,

5  educational rather than -- so what the case is about.

6  　　　　　MR. HARRIS:  Right.

7  　　　　　THE COURT:  But I -- if you have some competing

8  versions, I'm happy to look at them.

9  　　　(Pause.)

10 　　　　　MR. HARRIS:  In the spirit of cooperation, we're

11 sharing one copy here, Judge.

12 　　　　　THE COURT:  All right.  So let me read it.

13 　　　　　MR. WARR:  Your Honor, the redline language is

14 language that CDI added to what Halo had prepared.  And the

15 highlighted language, I think, identifies Halo's concerns with

16 the language we have provided.

17 　　　　　MR. HARRIS:  That's correct, the yellow bold.  We're

18 okay with the redlines, underlined, and the deletions.

19 　　　　　THE COURT:  The yellow bold is --

20 　　　　　MR. HARRIS:  The yellow bold, we do not agree with.

21 For example, there's mention there now that defendant CDI is a

22 Montreal-based designer and wholesaler.  Well, that's what

23 this case is about.  That's argumentative as to whether, in

24 the circumstances of this case, they were a designer at all,

25 so we don't believe that that was appropriate.

1    And what we were doing at the end there is, we were

2    just cleaning up the language.  It should read, "Copyright

3    rights infringed copyright."  It should read "copyright

4    rights," and it should talk about the patent and trademark

5    infringement as well as infringement of Halo's copyright

6    rights that you may find occurred.  Remember, we're addressing

7    the damages for all the rights, not just some of them.

8        MR. WARR:  We struck it believing it was redundant

9    with some of the language that appears earlier in the case

10   description, your Honor, that talks about the patent rights,

11   trademark rights, and copyrights.

12       THE COURT:  The first one, how about this:  Defendant

13   CDI is a Montreal-based -- let's see -- furniture wholesaler

14   and contends that it is a designer as well.

15       MR. WARR:  That would be acceptable.

16       MR. HARRIS:  I'm sorry, your Honor?  Designer --

17       THE COURT:  "Is a wholesaler and contends that it is

18   a designer as well."  And the last part, it seems to me that

19   would be okay because it's just telling what the -- you could

20   have a line of what Halo's -- or what CDI's position is.

21       MR. HARRIS:  Your Honor, we have no problem with the

22   contention language on the first part.  With regard to the

23   second part, the last, very last sentence in yellow, is it the

24   Court's position that it's okay to leave it in?

25       THE COURT:  "To receive for the patent and determine

1   what amount of damages Halo is entitled to receive for patent

2   and trademark infringement as well as for" -- let's see.

3   Which one -- the patents are conceded; is that right?

4           MR. WARR:  The patents and trademark --

5           MR. HARRIS:  Yes.

6           MR. WARR:  -- are stipulated, your Honor.

7           MR. HARRIS:  But not the damages.

8           MR. WARR:  But not the damages.

9           THE COURT:  Yes.  I think -- okay.

10          MR. HARRIS:  This relates only to damages.

11          THE COURT:  All right.  I think that's -- the way it

12  reads is all right.  I don't have any --

13          MR. HARRIS:  Very well, your Honor.  Thank you.

14          THE COURT:  So then the difference would be, we leave

15  in the agreed changes, and the designer -- "is a Montreal-

16  based wholesaler of furniture" -- I guess it's furniture,

17  isn't it?

18          MR. WARR:  If we use "furniture" in a broad sense to

19  encompass lighting products as well, your Honor.

20          THE COURT:  Yes.  Furniture and lighting products,

21  "and contends that it is a designer as well."

22          MR. HARRIS:  That's fine, your Honor.

23          THE COURT:  All right.

24          MR. HARRIS:  And then finally, we've come in with

25  voir dire questions.  All of these were submitted by

1    plaintiff.  The redline is what was added by defendants.  And,

2    your Honor, the only objection that we've got is at item 23

3    where they ask, "Do you believe competition is good," which

4    is -- gives a pretty good idea of where they're going with

5    that.

6           THE COURT:  I don't -- I have made a consistent

7    ruling in the past that I don't ask for their beliefs and

8    concepts.  My -- I usually limit my questions to issues of

9    fact concerning the jurors' background rather than their

10   beliefs, other than the fact that -- let me just see what

11   you've got here.  I'm not going to give all these anyway.

12          MR. HARRIS:  Thank you, your Honor.  Well, with the

13   removal of 23, we have -- plaintiff has no objection to the

14   remaining ones.

15          THE COURT:  "25, would you prefer to buy American-

16   made products instead of imported products," is that a big

17   issue in the case?

18          MR. HARRIS:  It is not, your Honor.  All the products

19   are made outside of the U.S.

20          THE COURT:  Okay.  I'm not going to give that one.  I

21   don't see where that's important unless it's an issue in the

22   case.

23          MR. HARRIS:  Do you believe that's an issue here?

24          MR. WARR:  No, your Honor, not as to the products in

25   the case, but we just thought it might add some --

1          THE COURT: I'm going to whittle this down.

2          MR. HARRIS: Thank you.

3          THE COURT: If at the conclusion, I've left something

4 out you think is quite important, then I'd be happy to add

5 additional questions.

6          All right. When will the jurors be ready?

7          THE CLERK: They're ready now, Judge.

8          THE COURT: They're ready?

9          THE CLERK: Yes, sir.

10          MR. HARRIS: Your Honor?

11          THE COURT: Yes.

12          MR. HARRIS: Will the parties be receiving sheets

13 with the addresses of the jurors in advance?

14          THE CLERK: Just the names.

15          THE COURT: What?

16          THE CLERK: Just the names, not addresses.

17          THE COURT: I don't think we do that. I will ask

18 them what their address is. Basically, I don't ask them

19 specifically, you know, what their street address is but the

20 geographic area in which they live.

21          MR. HARRIS: The town?

22          THE COURT: Yes, the town, or Chicago, which side,

23 south side of Chicago, north side of Chicago. Some of them,

24 particularly true in a criminal case, they're very reluctant

25 to disclose their address, so -- now, the answer is they will

1    not -- but I will ask them where they live generally.

2         All right.  Let me take a look at these.

3         All right.  Do you want -- I'm going to take a few

4    minutes and work out these questions, voir dire questions.

5         MR. WARR:  Your Honor, may I address one other issue?

6         THE COURT:  Sure.

7         MR. WARR:  Obviously, the Court spent a lot of time

8    preparing its summary judgment opinion the other day, and we

9    are curious as to what, if any, use would be permitted during

10   examination of witnesses, especially with respect to how the

11   Court dealt with what are the protected expressions in the

12   products at issue in the litigation.

13        MR. HARRIS:  Your Honor, we don't believe that

14   piece-mealing what the Court relied upon is appropriate at all

15   for --

16        THE COURT:  I agree.  I don't think you should quote

17   from my opinion.

18        MR. WARR:  Okay.  Thank you.

19        THE COURT:  That's the law rather than the facts, and

20   we will instruct them as to the law at the conclusion of the

21   case.  So no, I don't think you should take a sentence out of

22   the opinion and put that forward as gospel truth.

23        MR. HARRIS:  Thank you, your Honor.

24        MR. WARR:  Thank you, your Honor.

25        THE COURT:  That's much to do with context that you

1    may very well be correct, but I think the time to do that is

2    the instructions.

3            MR. HARRIS:  Thank you, your Honor.

4            MR. WARR:  Thank you, your Honor.

5            THE COURT:  All right.  Anything else?

6            MR. HARRIS:  Do we have anything else?  Jacqueline?

7    Barry?

8            On behalf of plaintiffs, your Honor, we're ready to

9    go.

10           MR. WARR:  Nothing further, your Honor.

11           THE COURT:  All right.  Do you want to get the

12   jurors?  I'm going to work on the questions in the back room,

13   so we'll stand at ease.

14       (Recess from 10:07 a.m. to 10:31 a.m.)

15       (Proceedings heard which are not herein transcribed.)

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T E

2          I, Judith A. Walsh, do hereby certify that the

3 foregoing is a true and accurate excerpt transcript of the

4 proceedings had in the above-entitled case before the

5 Honorable HARRY D. LEINENWEBER, one of the judges of said

6 court, at Chicago, Illinois, on January 22, 2018.

7

8 */s/ Judith A. Walsh, CSR, RDR, F/CRR*_____     April 4, 2018

9 Official Court Reporter

10 United States District Court

11 Northern District of Illinois

12 Eastern Division