**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **HALO CREATIVE & DESIGN LIMITED, a Hong Kong Company; HALO TRADEMARKS LIMITED, a Hong Kong Company; and HALO AMERICAS LIMITED, a Hong Kong Company,**<br><br>     **Plaintiffs,**<br><br>     **v.**<br><br>**COMPTOIR DES INDES INC., a Quebec Corporation; CDI INTERNATIONAL; and CDI FURNITURE,**<br><br>     **Defendants.** | **Case No. 14 C 8196**<br><br>**Judge Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

After a jury verdict in Halo's favor, the parties filed the following four Motions: (1) Defendant CDI's Petition for Recognition and Motion to Stay Proceedings Pending Bankruptcy, along with its corresponding Motion to Supplement [Dkt. Nos. 249, 261]; (2) Defendant CDI's Motion for a New Trial or, in the alternative, for this Court to amend the judgment [Dkt. No. 231]; (3) Plaintiff Halo's Motion to declare this case an exceptional case and grant enhanced damages [Dkt. Nos. 222, 223]; and (4) Halo's Bill of Costs [Dkt. No. 237]. For the reasons stated herein, CDI's Motions are denied, Halo's Motion for Enhanced Damages is granted, and Halo's Bill of Costs is granted in part and denied in part.

## I. <u>BACKGROUND</u>

Halo Creative & Design Ltd., Halo Trademarks, Ltd., and Halo Americas Ltd. (collectively, "Halo") is in the business of designing and distributing high-end furniture and lighting products. Comptoir Des Indes, Inc., CDI International, and CDI Furniture (collectively "CDI") competes in the same industry. Halo brought an intellectual property action against CDI claiming that several of CDI's furniture and lighting products infringed Halo's copyright, patent, and trademark rights. The parties went to trial and the jury found in favor of Halo, finding that CDI willfully infringed two of Halo's design patents, Halo's ODEON trademark, and nine of Halo's copyrights. For these injuries, the jury awarded Halo damages of $15,775.00 for patent infringement, $1,043,509.00 for trademark infringement, and $2,500,000.00 for copyright infringement, totaling $3,559,284.00 in damages. (*See* Judgment, Dkt. No. 217.)

Before the Court are the parties' post-judgment motions. The Court addresses each below. Citations to the trial transcripts are to draft transcripts and might not correspond exactly to any final transcript prepared in response to any party's request. *See United States v. Barta*, No. 12 CR 00487, 2013 WL 4854355, at *1 n.2 (N.D. Ill. Sept. 11, 2013), *aff'd sub nom. United States v. Buenrostro*, 781 F.3d 864 (7th Cir. 2015).

## II. <u>ANALYSIS</u>

### A. CDI'S Motion to Stay Proceedings

CDI moves to stay proceedings based on CDI's now-pending bankruptcy proceeding in Canada. Chapter 15 of the U.S. Bankruptcy Code governs this motion. In 2005, Congress enacted the Bankruptcy Abuse Prevention

and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 22 (2005), adding a new chapter to the Bankruptcy Code designed "to provide effective mechanisms for dealing with cases of cross-border insolvency . . ." 11 U.S.C. § 1501(a). "The new chapter 15 [was] intended to encourage cooperation between the United States and foreign countries with respect to transnational insolvency cases and to provide for the fair and efficient administration of cross-border insolvencies." *United States v. J.A. Jones Const. Grp., LLC*, 333 B.R. 637, 638 (E.D.N.Y. 2005). The provisions of Chapter 15 apply to cases where "assistance is sought in the United States by a foreign court or a foreign representative in connection with a foreign proceeding." 11 U.S.C. § 1501(b)(1).

To recognize a foreign bankruptcy proceeding as requested by CDI's Motion, Chapter 15 requires a petitioner to file an application for recognition with the U.S. bankruptcy court pursuant to Subchapter III, Recognition of Foreign Proceeding and Relief, 11 U.S.C. §§ 1515-1524. *See J.A. Jones*, 333 B.R. at 638. Upon receiving an application for recognition, the bankruptcy court will enter an order recognizing the foreign proceeding if: (1) such foreign proceeding is pending in a country where the debtor has the "center of its main interests" or the debtor has "an establishment," 11 U.S.C. § 1502; (2) the foreign representative applying for recognition is a person or body; (3) the petition is accompanied by all required documents under 11 U.S.C. § 1515; and (4) such recognition would not be manifestly contrary to the public policy of the United States, 11 U.S.C. § 1506. *See* 11 U.S.C. § 1517. Once the foreign proceeding is recognized, the statute authorizes a court to grant various forms of relief to the debtor, including the type of

relief CDI requests in this motion. *See* 11 U.S.C. § 1509(b)(3) ("If the court grants recognition . . . a court in the United States shall grant comity or cooperation to the foreign representative."); 11 U.S.C. § 1521(a)(1) ("Upon recognition of a foreign proceeding . . . the court may . . . grant any appropriate relief, including . . . staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities."). Furthermore, the statute requires that any "request for comity or cooperation by a foreign representative in a court in the United States" "shall be accompanied by a certified copy of an order granting recognition under section 1517." 11 U.S.C. § 1509(c). The trouble here is that CDI did not accompany its Motion with such a certified order, nor is it clear that CDI complied with the procedures of the U.S. Bankruptcy Code laid out above.

"There is little case law addressing the issue of whether a 'foreign representative' may request a stay of U.S. court proceedings involving the entity subject to liquidation in the foreign proceeding. What case law there is, however, makes clear that foreign representatives must be recognized under Chapter 15 to seek a stay from a federal court." *Reserve Int'l Liquidity Fund, Ltd. v. Caxton Int'l Ltd.*, No. 09 CIV. 9021, 2010 WL 1779282, at *5 (S.D.N.Y. Apr. 29, 2010) (denying stay absent compliance with Chapter 15). All the exhibits attached to CDI's Motion are documents from the Canadian bankruptcy proceedings. What is noticeably absent is any order granting recognition from a U.S. Bankruptcy Court. "In the absence of recognition under chapter 15, this

- 4 -

Court has no authority to consider [CDI]'s request for a stay." *J.A. Jones*, 333 B.R. at 639.

CDI must comply with Chapter 15 of the U.S. Bankruptcy Code to receive recognition of its foreign bankruptcy and the corresponding relief it seeks. *Compare Orchard Enter. NY, Inc. v. Megabop Records Ltd.*, No. 09 CV 9607, 2011 WL 832881, at *3 (S.D.N.Y. Mar. 4, 2011) (denying motion to stay based on foreign bankruptcy where debtor had not complied with Chapter 15); *Andrus v. Digital Fairway Corp.*, No. 3:08 CV 119O, 2009 WL 1849981, at *3 (N.D. Tex. June 26, 2009) (same); *Econ. Premier Assurance Co. v. CPI Plastics Grp., Ltd.*, No. CV 09-2008, 2010 WL 11561369, at *3 (W.D. Ark. June 7, 2010) (finding no basis to stay where debtor had not complied with Chapter 15), *with Giant Screen Sports LLC v. Sky High Entm't*, No. 05 C 7184, 2007 WL 627607, at *3 (N.D. Ill. Feb. 27, 2007) (granting stay where debtor received recognition of foreign bankruptcy proceeding through Chapter 15). The cases CDI cites in support of its Motion were all decided prior to Congress's enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act and thus do not control here. As the current record fails to show that CDI has received recognition in accordance with Chapter 15 of the U.S. Bankruptcy Code, the Court denies CDI's Motion to Stay.

The Court now turns to the merits of the remaining motions.

### B. CDI's Motion for a New Trial Pursuant to Rule 59(a)

#### 1. Rule 59(a) Standard

CDI moves this Court for a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure. In ruling on a motion for a new trial, the Court must "determine whether the verdict is against the weight of

the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Winger v. Winger,* 82 F.3d 140, 143 (7th Cir. 1996). The Court "will not set aside a jury verdict if a reasonable basis exists in the record to support the verdict, viewing the evidence in the light most favorable to the prevailing party, and leaving issues of credibility and weight of evidence to the jury." *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004).

### 2. *Substantial Similarity*

CDI argues that a new trial is warranted for three reasons: First, the jury was not provided with the proper legal framework to consider substantial similarity in light of protected elements; second, certain facts were impermissibly excluded; and third, testimony was admitted that confused the jury regarding substantial similarity.

CDI waived its objection to the jury instruction on substantial similarity because CDI agreed to that instruction at trial. (*See* Jury Instructions, Dkt. 209 (indicating Jury Instruction No. 27 was agreed); *Emmel v. Coca-Cola Bottling Co.*, 904 F. Supp. 723, 743 (N.D. Ill. 1995), *aff'd,* 95 F.3d 627 (7th Cir. 1996).) Furthermore, even if the objection had not been waived, it is unlikely CDI could prevail on this ground. Jury Instruction No. 27 specifically instructed the jury that "[the] substantial similarity inquiry must take into account that the copyright laws preclude appropriation of *only those elements of the work that are protected by the copyright*," which undercuts CDI's argument that the jury did not understand that it could only find infringement based on the protected parts of Halo's works. ([Final] Jury Instructions, Dkt. 209 at 27 (emphasis added).)

- 6 -

The Court did not err in instructing the jury according to the pattern instruction and adding additional language from the Seventh Circuit's *Roulo* opinion regarding substantial similarity. *See* Seventh Circuit Pattern Jury Instructions 12.4.1 (2017 rev); *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 939 (7th Cir. 1989). Further, the substance of CDI's requested instruction—the fact that Halo owned copyright in only the original elements of its work—was substantially communicated through Jury Instruction No. 27. (*Compare* Pl. Proposed Jury Instructions, Dkt. 183 at 31-33, *with* [Final] Jury Instructions, Dkt. 209 at 26.) Jury Instruction No. 27 states: "Plaintiff Halo must prove that CDI copied the *protected* expression in Halo's work . . . You may infer that CDI copied Halo's work if the similarities between the two works can be explained only by copying, rather than by coincidence, independent creation, *or the existence of a common source for both works*." ([Final] Jury Instructions, Dkt. 209 at 27.) The instruction included, from *Roulo,* the "total concept and feel" standard, as well as the cautionary note, which stated that "[t]he substantial similarity inquiry must take into account that the copyright laws preclude appropriation of only those elements of the work that are protected by the copyright." ([Final] Jury Instructions, Dkt. 209 at 27.) Thus, the jury was adequately instructed on the legal standard for substantial similarity.

As for CDI's second objection: The Court did not preclude CDI from offering evidence on the protected (nor unprotected) elements of Halo's works. The Court only precluded CDI from attacking the copyrightability of the products by arguing that the products were similar to things in the public domain. That issue had already been decided on summary

judgment. CDI's argument was thus irrelevant and might have confused the jury. CDI cites to a portion of the transcript where the Court asked defense counsel to move on after he asked a witness: "Do you understand that the functional and utilitarian aspects of this table are not subject to copyright?" (1/23/18 Trial Tr. 65:17-22.) However, the Court's admonition was based on the witness's answer ("No, I didn't"), which indicated a lack of personal knowledge. (*Id.* 65:7-19.) Immediately following that testimony, the Court permitted defense counsel to ask about specific parts of the works, specifically the columns, legs, and carved mirrors, pointing out the differences between the protected elements of Halo's and CDI's products. (*Id.* 65:20-72:8.) Although it is true that defense counsel was precluded from introducing pictures of other furniture similar to Halo's works, excluding such evidence was proper. The purpose of such evidence was to show that Halo's works were unoriginal and thus attack the validity of the copyright, which, again, had already been decided on summary judgment. (*Id.* 73:9-22.) Therefore, precluding this evidence was not error.

Further, the Court permitted CDI to offer ample evidence focused on the elements of Halo's furniture that were protectable, as well as on the differences between Halo's protected elements and CDI's products. (*See, e.g.,* 1/23/2018 Trial Tr. 66:5-71:19 (Georgian table); *id.* 71:20-82:15 (Georgian mirror); *id.* 88:10-91:23 (ODEON chandelier); *id.* 91:24-102:9 (gyro chandelier); *id.* 102:10-105:4 (Tomcat chair); *id.* 105:5-107:15 (Mars Chair); *id.* 107:16-109:17 (Valkyrie desk); 1/25/18 Trial Tr. AM 59:16-69:20 (various lighting fixtures); *id.* 72:24-76:10 (Georgian Table); *id.* 76:11-79:10 (Georgian mirror); 1/26/18 Trial

Tr. 66:9-70:19 (Georgian dining table and mirror); *id.* 1/26/18 72:10-73:8 (Valkyrie desk).) CDI points to a few portions of the transcript where evidence was precluded, but none of the identified rulings precluded CDI from contrasting the protectable elements of Halo's and CDI's works to show non-infringement. (*See* 1/23/2018 Trial Tr. 62:17-22 (permitting evidence to "show the difference in the products" as long as it was not directed at apportioning liability (1/23/2018 Trial Tr. 64:6-19).)

As for CDI's third objection: CDI argues that it was precluded from offering evidence that the elements on which Halo relied on for its furniture were unprotectable. However, the Court allowed CDI to emphasize that only certain elements of Halo's works were protected. For example, Halo did not have copyright protection for the elements of its work that came from the original antique model. Rather, Halo only had rights in the elements it added. The fact that copyright protection only attached to specific original features was emphasized throughout the testimony by both parties. (*See, e.g.,* 1/23/2018 Trial Tr. 88:15; 1/23/2018 Trial Tr. 98:5; 1/25/2018 Trial Tr. 48:16 (referring to specific features claiming protection).) However, the Court properly precluded CDI from relitigating what had already been decided at summary judgment, namely whether the works had protectible elements subject to copyright protection. (*See* 1/23/2018 Trial Tr. 72:17-73:22 (sustaining an objection because evidence went to invalidity of the copyright); *id.* 83:20-84:23 (same).) Evidence of the validity of the copyright was irrelevant at trial and the Court ruled accordingly.

Therefore, the Court finds no grounds for a new trial. CDI's Motion is thus denied.

### C. CDI's Motion to Alter or Amend Judgment Pursuant to Rule 59(e)

#### 1. Rule 59(e) Standard

CDI also moves this Court to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. "[A] motion to alter or amend a judgment is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier. Instead, a Rule 59(e) motion must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *LB Credit Corp. v. Resolution Tr. Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) (citations and internal quotation marks omitted). Rule 59(e) "essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995).

#### 2. Willfulness

CDI argues that no rational jury could find willful infringement of the asserted design patents, trademarks, or copyrights because no evidence showed that CDI had adequate notice of the alleged infringement before the suit was filed. CDI further argues that it had a good faith belief that Halo's works were not copyrightable.

##### a. Willful Patent Infringement

CDI argues that it had no notice of Halo's asserted patent rights until the lawsuit was filed. Indeed, Mr. Ouaknine denied having any

knowledge of the asserted patents before Halo filed its complaint. (Ouaknine Declaration ¶¶ 8-11, Dkt. 77-1.) However, contrary evidence was entered at trial. Halo introduced a letter dated May 11, 2012, from Halo to CDI, stating that: Halo owned patent design registrations in "many of its furniture designs, including for its well-known Tomcat chair, Valkyrie desk and Mars chair"; CDI had wrongfully displayed a copy of several of Halo's furniture pieces at a furniture show in Canada; and CDI had wrongfully sold and shipped infringing goods in North America. (May 11, 2012 Letter, CDI's Ex. 3 at 1, Dkt. 231-3.) CDI claims that the letter fails to provide notice because the letter focused on foreign design registrations and certain Canadian rights. Although that may be true, the letter specifically asserted that CDI was selling infringing goods and shipping them to North America and demanded that CDI cease any display, depiction, promotion, or sale of the infringing goods on its websites. The jury was entitled to rely on this letter in finding CDI was aware of Halo's patent rights. Based on this evidence, a reasonable jury could find that the letter would lead a reasonable businessman to conduct a U.S. patent search and determine whether Halo's rights in its furniture designs extended to the United States. Additionally, the jury was entitled to credit evidence that CDI continued to sell its allegedly infringing products after such notice. Furthermore, CDI was well aware of Halo's asserted design patent rights when the lawsuit was filed in October 2014 but continued to sell the infringing sofa three months afterwards. (Sales Document PX27-38, Halo's Ex. 10, Dkt. 254-1.) This continued infringement in the face of clear notice also supports the jury's finding of willful infringement.

- 11 -

### b. Willful Trademark Infringement

Agreed Jury Instruction No. 22 states that Halo had to prove that CDI knew that it was infringing Halo's trademark or at least acted with indifference to Halo's trademark rights. (Jury Instructions, Dkt. 209 at 21.) CDI claims it had no knowledge that Halo claimed trademark rights in the ODEON mark. However, CDI surely knew that Halo claimed trademark rights in "ODEON" when the Complaint was filed. Halo presented evidence at trial that CDI was still using the ODEON mark in its search engine on its own website and that CDI sold ODEON-branded products as recently as December 2017, well after the litigation started. (*See* Gilt Order Form, Halo's Ex. 11, PX 950.1, Dkt. 254-1.) This evidence supports the jury's finding of willfulness.

### c. Willful Copyright Infringement

CDI argues that no rational jury could find willful copyright infringement because the U.S. Copyright Office rejected Halo's attempts to register its work, and CDI relied on those decisions when it continued to sell the infringing products. (Copyright Office Correspondence, CDI's Ex. 8, Dkt. 231-8 (rejecting Halo's copyright applications because the products constituted "useful articles").) CDI arguably did not know for certain its conduct was an infringement until the Court's summary judgment ruling, but the lack of a judicial determination on IP matters does not preclude willfulness.

Beyond this, Halo presented an email exchange from April 2013 between David Ouaknine and one of CDI's suppliers, Mr. Pak, wherein Mr. Pak warned Mr. Ouaknine about Halo's copyrights. (April 30, 2013, Email Exchange, Halo's Ex. 3, Dkt 254-1.) CDI sold the Mars Chair—a copyright-

infringing item—even after Mr. Pak's warning. (CDI Sales, Ex. 4, Dkt. 254-1.) In fact, CDI continued to sell the infringing products even after Halo filed its infringement action. (*See* 1/25/2018 Trial Tr. 40:6-14; 1/26/2018 5:12-6:9.) Further, Halo introduced emails from Mr. Ouaknine's assistant to Halo, expressing CDI's interest in buying Halo's product wholesale. Halo then introduced CDI's internal, follow-up emails discussing the exclusive retailer arrangement and the price. The jury may have inferred, based on this evidence, that CDI *knew* it could not sell Halo's products and could not afford to license them; instead, CDI did exactly what it wanted and created copycat products to sell rather than buying Halo's products wholesale. The jury was allowed to draw such an inference and, indeed, such an inference supports the jury's finding of willful copyright infringement.

### 3. Damages

CDI argues that the jury's damages award of $1,043,509.00 was excessive and has no rational connection with the evidence at trial because CDI's direct profits only amounted to $26,965.54. CDI does not challenge the damages awarded based on patent infringement, so the Court will only address trademark and copyright damages. When reviewing a jury's damages award, district courts consider: "whether (1) the award is monstrously excessive; (2) there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas; and (3) whether the award is roughly comparable to awards made in similar cases." *G.G. v. Grindle*, 665 F.3d 795, 798 (7th Cir. 2011) (citation omitted). "A monstrously excessive verdict is one that is a product of passion and

prejudice." *Adams v. City of Chicago*, 798 F.3d 539, 543 (7th Cir. 2015) (internal quotation marks omitted). The Seventh Circuit has "observed that the 'monstrously excessive' standard and the 'rational connection' standard are really just two ways of describing the same inquiry: whether the jury verdict was irrational." *Id.* (citations omitted). To make this determination, the court must review the trial record as a whole in the light most favorable to the verdict. *Id.* This perspective is essential to preserve the jury's role as the trier of fact. *Id.*

### a. Trademark Damages

The jury was instructed to consider "actual damages," including: (1) "lost profits on lost sales"; (2) "Plaintiffs' loss of goodwill"; and (3) "profits that CDI made because of its infringement." (Jury Instructions Nos. 19-20, Dkt. 209.) CDI argues that no rational connection exists between the evidence at trial and the amount of the jury award. Halo presented evidence that its damages from lost sales for trademark infringement totaled $13,653.00, and CDI's unjustly gained profits for trademark infringement totaled $26,965. (*See* Tr. Schedules 2.0 and 6.0.) Mr. Oulton testified that Halo's good will was "irreparably and seriously" damaged by CDI's infringement. (1/23/18 Draft Trial Tr. 53:10-24; Ex. 12, Dkt. 254-1.) He explained that the copies in the market decreased the value of the original because a would-be buyer does not want to look like he bought a copy even if he knows that it is the original. *Id.* Mr. Oulton characterized this phenomenon as "destructive dilution." *Id.* Further, he testified that the poor quality of CDI's products has lasting effects on Halo's brand and reputation because a purchaser of CDI's product may incorrectly attribute the product and any

defective workmanship thereof to Halo. (1/23/18 Trial Tr. 53:25-54:10, Dkt. 254-1.)    Halo presented evidence that return rates for CDI's infringing products were as high as 60% on Wayfair. (*See* CDI Email, Halo's Ex. 14, Dkt 254-1.) Mr. Oulton testified that the "most damaging" injury caused by infringement is the dilution of Halo's brand and estimated that CDI's infringement caused Halo "millions of dollars of product dilution." (1/23/18 Draft Trial Tr. 54:11-21, Dkt. 254-1.) In further support, Mr. Oulton explained that Halo had already seen concrete effects of brand dilution, giving the example that Restoration Hardware, Halo's largest customer, had moved several of the infringed product either to the back of certain stores or removed them completely due to copies in the market. (1/23/18 Draft Trial Tr. 54:22-55:9, Dkt. 254-1.) Ms. Haslam also testified that CDI's infringement "severely damaged" Halo due to loss of good will. (1/23/18 Draft Trial Tr. 159:1-8, Dkt. 254-1.) Ms. Haslam estimated that CDI copied around 25 different product lines from Halo and that customers often bought CDI's infringing products, thinking they were Halo's products, thereby injuring Halo's reputation due to the lesser quality of those products. (1/23/18 Trial Tr. 148:12-149:15; 150:7-21; 165:12-187:21; Dkt. 254-1.) She further testified that Restoration Hardware removed several Halo products from its galleries or center showcase due to reputational harm. (1/23/18 Trial Tr. 159:1-8; Dkt. 254-1.) Ms. Haslam estimated Halo's goodwill damages for trademark and copyright together amounted to somewhere between $2 to 3 million. (1/23/18 Trial Tr. 160:7-18, Dkt. 254-1.) The jury was entitled to credit this evidence and Mr. Oulton's and Ms. Haslam's

estimation of damages. Thus, the jury's award of $1,043,509 was tied to and supported by the evidence.

### b. Copyright Damages

CDI argues that the jury impermissibly included damages for loss of goodwill in the copyright infringement award. The jury was instructed that it could award damages for the actual losses caused by CDI's infringement, plus any profits CDI made attributable to the infringement. (Jury Instruction No. 29, Dkt. 209.) Actual losses include "reduction of the market value of the copyrighted work" and any profits Halo would have made without the infringement. *Id.* Notably, these jury instructions did not include loss of good will as a permissible damage category under copyright infringement. *Id.* Halo's damages expert. Mr. Pakter, testified that he reviewed all of CDI's sales documents and calculated Halo's lost profits due to CDI's infringing sales at $217,894.00 and CDI's profits from infringing sales at $555,414.00, totaling $773,308.00. (*See* Tr. Schedules 2.0 and 6.0.) CDI asserts that any copyright damages above and beyond $773,308.00 were impermissibly awarded for loss of goodwill. However, damages could permissibly be awarded for any profits CDI made attributable to the infringement.

Halo presented evidence of such damages in two other broad categories: (1) CDI's indirect profits from its infringing sales that "opened the door" to other sales, and (2) CDI's indirect profits from increased profitability due to the use of Halo's designs. (*See* Tr. Schedules 4.0 and 5.0.) For the "opened the door" damages, Halo presented evidence at trial that a substantial percentage of CDI's first sales to new customers were copies of Halo's products, supporting the inference

that CDI's infringement was the proximate cause of the new customer relationship and the subsequent sales. (*See* 1/26/2018 Trial Tr. 121:10-18.) For example, such evidence established that copies of Halo's products composed the majority of CDI's first sales to multiple large customers, including Gilt, Home Decorators, Ambiance Home, and Cella Luxuria. (Halo's Ex. 15, Dkt 254-1.) Mr. Pakter estimated that these indirect profits totaled approximately $1,097,000.00. (1/26/2018 Trial Tr. 145:2-15.)

For increased profitability damages, Mr. Pakter offered testimony that CDI's annual sales revenue grew exponentially after CDI began infringing Halo's copyrights in 2012 and that CDI's above-average industry growth was attributable to CDI's infringement. (Halo's Ex. 17, Dkt 254-1; 1/26/2018 Trial Tr. 139:4-17.) Mr. Pakter calculated these damages based on infringement in the amount of $461,000.00, leading to a total amount of $1,558,000.00 for indirect profitability. Thus, Mr. Pakter estimated total copyright damages of $2,331,308.00. (*See* 1/26/2018 Trial Tr. 145:16-146:17; Tr. Schedules 2.0-6.0.) In comparison, the jury's verdict was less than what Halo's expert estimated was allowed for damages. *See Borg-Warner Corp. v. York-Shipley, Inc.*, 293 F.2d 88, 95 (7th Cir. 1961) (finding that "damages are not rendered uncertain because they cannot be calculated with absolute exactness").

Additionally, Halo offered evidence of a "reduction of the market value" of its products. Mr. Oulton and Ms. Haslam testified that Restoration Hardware pulled Halo's products from the main showcase area of its stores due to the CDI copies diluting the value of those works, which in turn caused a decrease in sales. (Halo's Ex. 12 at 49, 55, 159,

- 17 -

Dkt. No. 254-1.) Mr. Oulton estimated that this product dilution caused "millions of dollars" of damage. (Halo's Ex. 12, Dkt. 254-1 at 54.) Thus, the evidence at trial supported an award of up to $3.331 million. The jury's decided upon $2,500,000.00 fell within that range. Furthermore, the jury heard evidence that Mr. Pakter's damage calculation might be underestimated because CDI's sales documents show multiple inaccuracies and appear to be manipulated downwardly by at least 38%. Finally, Halo's damage calculations did not include any infringing sales from September to the date of trial. (1/26/2018 Trial Tr. 118:19-119:16.) The jury could have inflated Mr. Pakter's calculations to account for such underestimation. Thus, the copyright award is supported by the evidence heard at trial.

CDI argues that the evidence at trial showed that Halo and CDI catered to different customers. However, the jury was not required to believe this evidence. Halo presented evidence that it lost customers to CDI (*e.g.,* Hudson's Bay and Gilt) and end consumers (*e.g.,* Michelle Hayes). (*See* 1/23/2018 Trial Tr. 153:19-155:7; 167:21-181:3. The jury was entitled to find that Halo's evidence was more convincing on this point. Similarly, CDI argues that Halo failed to show a causal connection between the infringement and Halo's decreased sales. CDI asserts that it submitted evidence that the decrease in sales was just as likely a result of the end of the products' lifecycles. However, again, the jury was entitled to credit Halo's evidence and explanation of its decreased sales as opposed to CDI's.

Therefore, the jury's damages award of $1,043,509.00 was not excessive, so CDI's Motion to Amend the Judgment is denied.

### D. Halo's Motion for Exceptional Case and Enhanced Damages

Halo moves this Court to declare this an exceptional case and award enhanced damages pursuant to 35 U.S.C. § 285 and 15 U.S.C. § 1117(a). A case is exceptional if it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). In determining whether a case is exceptional, courts look at the totality of the circumstances, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). "[A]s a general matter, many forms of misconduct can support a district court's exceptional case finding, including inequitable conduct before the U.S. Patent and Trademark Office ("PTO"); litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit; or willful infringement." *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1366 (Fed. Cir. 2013). A case need not have every form of misconduct to grant enhanced damages. "Indeed, it is well-established that litigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285." *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003) (citation omitted). "Litigation misconduct typically involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings." *MarcTec, LLC v. Johnson & Johnson*, 664

- 19 -

F.3d 907, 919 (Fed. Cir. 2012) (citation and internal quotation marks omitted).

The Court grants Halo's Motion, determining this to be an exceptional case and granting enhanced damages. However, the lost profits will be doubled rather than tripled, because the Court finds that CDI's actions were willful, but were not so egregious as to warrant trebling of the damages: The case exemplified willful infringement on the one hand, but also involved close questions of law on the other.

Strong evidence of CDI's willful infringement was proven at trial, discussed in further detail *supra*. For example, CDI's emails indicate that CDI directed its manufacturers to copy (or at least closely mimic) Halo's products. *See* Ouaknine's email stating that he needed "the same leather as halo" for his order. (Email from Ouaknine, Ex. 2, Dkt. No. 223-1.) In response to a question asking about the "finish panel," CDI responded by writing: "The chair is exactly as the one on the Restoration Hardware site, please go to the site and see the chair directly." (Email from Michael M., Ex. 2, Dkt. No. 223-1.) Additionally, CDI continued selling the infringing products after the lawsuit commenced and throughout trial. (Sales documents, Ex. 9, Dkt. 223-1 (indicating portions in highlighted sales after litigation commenced).) Even where CDI acknowledged liability on the trademark claims, CDI still used the Odeon descriptor with the "Fringe Table Lamp," well after it knew "ODEON" was protected. (Ex. 13, 14, Dkt. 223-1.) Further, that lamp CDI offered for sale on Gilt's e-commerce platform until January 23, 2018, the second day of trial. (*See* 1/25/2018 68:8-69:21.) All this evidence amounts to CDI not taking seriously the infringement with which it was charged. *See*

- 20 -

*Ind. Cheer Elite, Inc. v. Champion Cheering Org.,* LLC, No. 3:05-CV-125 RM, 2005 U.S. Dist. LEXIS 12342, at *8-9 (N.D. Ind. June 22, 2005) (finding exceptional case and awarding attorneys' fees where infringement was deliberate and continued to occur after defendant was put on notice).

Further, CDI's multiple misrepresentations through the litigation and trial support a finding of enhanced damages. *Monolithic Power Sys., Inc.* at 1364 (affirming trial court's finding of exceptionality based on various misrepresentations made to the court); *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 305 (S.D.N.Y. 2002) (finding exceptional case where defendant willfully infringed and committed perjury in deposition and at trial). Mr. Ouaknine declared under oath that he "had no knowledge of Halo's asserted patents before [CDI] offered the accused products for sale in the United States" (Ouaknine Decl. ¶ 8), and "no knowledge that Halo claimed copyright protection in its furniture and lighting designs," (Ouaknine Decl. ¶ 11). However, Halo offered evidence that it sent CDI a cease-and-desist letter in 2012 and that CDI was further informed of Halo's rights by its own manufacturer as early as April 2013. (*See* Email from Henry at Pak Furniture, Ex. 18, Dkt. No. 223-1; May 11, 2012, Letter, Ex. 16, Dkt. No. 223-1.)

Second, Mr. Ouaknine asserted that CDI stopped selling the infringing products after the lawsuit was filed, when in fact it did not. (*Compare* Interrogatory Response No. 3, Ex. 8, *with* Sales documents, Ex. 9, Dkt. 223-1 (indicating in highlighted portions sales after litigation commenced).) When confronted with these facts, CDI claimed it was a technical error and amended its interrogatory response to

- 21 -

acknowledge it made "limited sales of some of the accused products after the filing of the Amended Complaint." (Interrogatory Response No. 3, Ex. 8.) The "technical error" resulted in 253 additional sales of infringing product, totaling $239,342.13 in sales, after litigation commenced. *Cf. R-BOC Representatives, Inc. v. Minemyer*, 233 F. Supp. 3d 647, 651 (N.D. Ill. 2017) (finding case exceptional and awarding attorneys' fees where competitor allegedly redesigned the product so as not to infringe, but evidence showed product was never redesigned).

Third, CDI's social media account claimed credit for its "Aero Desk" being on the Two and a Half Men, even though the evidence at trial showed that the desk featured on that show was Halo's Aviator Valkyrie Desk (Facebook screenshot, Ex. 3, Dkt. No. 223-1.)

Fourth, Mr. Ouaknine testified that he never asked manufacturers specifically to make the infringing products like Halo's products. However, Mr. Ouaknine's own emails undercut his testimony. (See Ex. 12, Dkt. No. 223-1 PX-0006 (stating "please look at all our mails (*sic*) indicating that it needs to be exactly like restoration hardware . . . please make sure all new metal scissor table (*sic*) must be exactly like the technical sheet we have sent you"), PX-0048 ("The chair is exactly as the one on the Restoration Hardware site, please go to the site and see the chair directly."), PX-0016 (stating CDI needed "the same leather as halo" for order), PX-0006-020 (stating "i (*sic*) do not aprouve (*sic*) of those two bars in the middle of the table when i (*sic*) sent you the image from RH there was (*sic*) no two bars in the middle").) The discrepancies between these emails and Mr. Ouaknine's testimony support a finding of willfulness. *See R-BOC Representatives, Inc. v. Minemyer*,

- 22 -

at 652 (finding willfulness and noting that "Mr. Lundeen told inconsistent and conflicting stories about virtually everything that mattered in the case").

And yet, two other facts counter against trebling damages in this case. First, CDI conceded liability as to the patent and trademark claims earlier in the litigation, greatly simplifying the litigation. (Stipulation, Dkt. No. 114.) Second, this Court acknowledged in its summary judgment ruling that this case involved close legal questions. (*See* Jan. 17, 2018 Memorandum Opinion and Order at 1, 26, 29, 34, 36, Dkt. No. 187.) The close legal questions involving the copyright claims weigh against enhanced damages. Yet, as discussed above, the willfulness of CDI's infringement, its continued infringement, and the multiple misrepresentations on the record warrant a finding of enhanced damages. However, given these countervailing considerations, the Court will double, rather than triple, Halo's damages.

### E. Halo's Bill of Costs

Federal Rule of Civil Procedure 54(d)(1) provides that a prevailing party may obtain reimbursement for certain litigation costs at the conclusion of a lawsuit. The Rule establishes a "presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005) (citing *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1409 (7th Cir. 1991)). In evaluating an application for costs, the Court must first determine whether the claimed expenses are recoverable and, second, whether the costs requested are reasonable. *Majeske v. City of Chicago*,

218 F.3d 816, 824 (7th Cir. 2000) (citation omitted). The Court has "wide latitude" in fixing a reasonable award. *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 345 (7th Cir. 1995) (citations omitted). Halo claims $44,794.55 in costs. (Halo's Bill of Costs, Dkt. 237.)

### 1. *Fees Paid to the Clerk and for Service of Process*

Halo requests $2,000.00 under 28 U.S.C. § 1920(1), comprising: $400.00 in fees paid to the clerk and $1,600.00 in fees for service of process. All these costs are recoverable under § 1920(1) and are reasonable. *See Clarendon Nat. Ins. Co. v. Medina*, No. 8 C 4245, 2010 WL 3526515, at *1 (N.D. Ill. Sept. 1, 2010) (reasonable rates for service of process); *see also Dishman v. Cleary*, 279 F.R.D. 460, 466 (N.D. Ill. 2012) ("Where service on a witness is reasonable at the time, witness fees advanced will be awarded."). Further, CDI does not object to this request. The Court allows the $2,000.00 in costs.

### 2. *Court Reporter and Transcript Fees for Depositions and Hearings*

Halo seeks costs for court reporter and transcript fees for depositions and hearings in the amount of $10,508.48. CDI objects to $4,924.93 of these costs as being unnecessary. Where the party seeking costs does not provide "any explanation as to why [it] obtained a copy of a daily transcript," it "may only recover costs at the ordinary transcript rates." *Se-Kure Controls, Inc. v. Vanguard Prod. Grp., Inc.*, 873 F. Supp. 2d 939, 945 (N.D. Ill. 2012); *accord Cascades Computer Innovation, LLC v. Samsung Elecs. Co.,* No. 11 C 4574, 2016 WL 612792, at *4 (N.D. Ill. Feb. 16, 2016) (Realtime services). Halo justifies the added expense for real time/rough transcripts and expedited delivery for Michael Pakter's and Carrie Distler's deposition transcript by

explaining that the parties' motions *in limine* were due only days after the scheduled depositions and the real time/rough transcripts and expedited delivery were necessary to prepare the motions. The Court finds this explanation adequate and grants Halo its additional costs for Michael Pakter's and Carrie Distler's depositions. Halo does not address CDI's other objections. Thus, the Court will award costs for transcript copies in the amount of $9,404.93: the total amount, $10,508.48, minus the amount of unexplained and objected-to costs, $1,103.55.

### 3. *Copies*

Halo seeks $8,726.31 for copies of trial exhibits. Copying costs are recoverable but must be reasonable and "necessarily obtained for use in the case." *See* 28 U.S.C. § 1920(4). Halo must "identify the nature of each document copied, the number of copies of each document prepared, the copying cost per page, and the total copying cost." *Druckzentrum Harry Jung GmbH & Co. KG v. Motorola, Inc.*, No. 09 CV 7231, 2013 WL 147014, at *7 (N.D. Ill. Jan. 11, 2013) (citation and internal quotation marks omitted). However, Halo need not "submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991). Halo requests costs for four copies of its trial exhibits: a copy each for the Court, the jury, CDI, and Halo. CDI objects to two of those copies. "[D]istrict courts have usually limited recovery to three sets of copies, as a prevailing party may not recover copies made for its personal use, but may recover for copies submitted to the court and opposing counsel." *Menasha Corp. v. News Am. Mktg. Instore, Inc.*,

No. 00 C 1895, 2003 WL 21788989, at *4 (N.D. Ill. July 31, 2003) (citations and internal quotation marks omitted). Thus, Halo will be awarded costs for three copies of its trial exhibits. However, the invoice also includes non-recoverable expenses such as tabs and document scanning. *Berry Plastics Corp. v. Intertape Polymer Corp.*, No. 310 CV 00076, 2017 WL 167829, at *8 (S.D. Ind. Jan. 17, 2017) ("[T]abs, hole drilling, binders, and document scanning [. . .] are not compensable."). Thus, Halo will be awarded $6,096.39 for copying costs: the total amount ($8,726.31), minus the cost of "custom tabs" and "PDF w/OCR" ($242.00 + $206.34 = $448.34), reduced by 25% to cover three copies ($8,726.31 x 0.75 = $6,544.73), totaling $6,096.39.

### 4. Demonstrative Trial Exhibits

Halo seeks $13,937.92 for costs for presenting its full-sized products at trial as demonstratives. As an initial matter, the costs of preparing exhibits may be recovered, *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 981 (N.D. Ill. 2010) (citing *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 428-29 (7th Cir. 2000)), but only for exemplification that was reasonably necessary "to the presentation of one's case to the court." *Cefalu*, 211 F.3d at 429 (citing 18 U.S.C. § 1920(4)). Although the full-sized products certainly benefited Halo's case, these demonstratives were not necessary as the jury could have properly decided the case without full-sized products being brought into the courtroom at great expense. As such, these costs will not be awarded to Halo.

### E.   Copyright Application Filing Fees

Halo seeks $3,470.00 for costs for filing copyright applications. These costs will not be awarded. Filing copyright applications with the U.S. Copyright Office provides Halo protection independent of this case and as such the associated costs will not be imposed on CDI.

\*     \*     \*

CDI did not object to any other costs and the Court finds the balance reasonable. Accordingly, the Court will award costs to Halo for witness fees ($4,780.00), docket fees ($20.00), and costs as shown on Mandate of the Court of Appeals ($1,351.84). In total, the Court awards Halo $22,301.32 in costs.

### III. <u>CONCLUSION</u>

For the reasons stated herein, the Court denies Defendant CDI's Petition for Recognition and Motion to Stay Proceedings pending bankruptcy [Dkt. Nos. 249, 261] and Defendant CDI's Motion for a New Trial or, in the alternative, for this Court to amend the judgment [Dkt. No. 231]. The Court grants Plaintiff Halo's Motion to declare this case an exceptional case and grant enhanced damages [Dkt. Nos. 222, 223] and doubles the damages. The Court also grants in part and denies in part Halo's bill of costs.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated:  10/2/2018

- 27 -