**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HALO CREATIVE & DESIGN LIMITED, a Hong Kong company, HALO TRADEMARKS LIMITED, a Hong Kong company and HALO AMERICAS LIMITED, a Hong Kong company,<br><br>*Plaintiffs,*<br><br>v.<br><br>COMPTOIR DES INDES INC., a Quebec corporation, CDI INTERNATIONAL, CDI FURNITURE, DAVID OUAKNINE, DANIEL OUAKNINE, CONCEPT DESIGN INNOVATION FURNITURE, INC. (*dba* Meubles de Concept Design et Innovation Inc.), and CONTAINER DIRECT INTERNATIONAL FURNITURE INC. (*dba* Meubles Conteneur Direct International Inc.),<br><br>*Defendants.* | Civil Action No. 1:14-cv-08196<br><br>Judge Harry D. Leinenweber<br>Magistrate Judge Susan E. Cox |

**CORRECTED[1] MEMORANDUM IN OPPOSITION TO PLAINTIFFS' EX PARTE MOTION FOR ATEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO FREEZE ASSETS, FOR A SEIZURE ORDER, FOR EXPEDITED DISCOVERY AND RESPONDING TO THE ORDER TO SHOW CAUSE**

---

[1] Citations to supporting exhibits G, H, and I on page 5 of the originally filed brief were inadvertently omitted and have been added in the corrected brief.

I.  INTRODUCTION AND FACTUAL BACKGROUND

The evidence shows that, contrary to Halo's assertions, there are no "recently discovered" facts, no "continued infringement," and no "fraudulent conveyance." To secure a grant of the requested TRO, the Court was intentionally misled by Halo and the individuals on whose statements the meritless claims and arguments were based. Moreover, the timing of Halo's motion is suspect. Nothing was genuinely "recently discovered," but Halo's *ex parte* request for extraordinary relief was made during one of the industry's most important trade exhibits of the year, knowing that its false allegations would cause New CDI and the Ouaknines substantial and irreparable damage. Halo's secret request and very public execution of the TRO cost New CDI orders and quotes (which become orders) and unjustified damage to its reputation.

After the final judgment was entered, Original CDI took immediate steps to comply with the injunction. It notified its online reseller partners to immediately cease sales and to take down the web pages that showed items held to be infringing. See Exhibit A. But, beyond Old CDI's control, some Amazon pages, for example, cannot be removed. They do, however, show the item as being "no longer available." See Exhibit B. Moreover, items shown on New CDI's website are available outside the United States, where there is no copyright infringement claim or injunctive effect.

It quickly became clear to Original CDI that the business could not possibly pay the money judgement as an ongoing concern and that the judgment liability far surpassed its unsecured assets, regardless of whether the damages would be enhanced by the Court. As is common—and perfectly legal—for businesses to do when faced with such a situation, Original CDI declared bankruptcy in Canada, where the business was located. CIBC (Canadian Imperial Bank of Commerce) was a secured creditor whose claim exceeded the value of the business

assets and whose secured claim would be satisfied before any unsecured claim, including any leases or Halo's judgment.

Halo and its in-house counsel, Emily Haslam, were fully aware of the bankruptcy proceeding and interacted with the trustee many times during the process. Regarding the identification of the Halo entity and address in the bankruptcy documents—which Halo now characterises as evidence of fraud—Ms. Haslam brought this to the trustee's attention in April 2018 and the correction was immediately confirmed by KPMG (the bankruptcy trustee) that same day. Halo could have pursued its judgment in Canada in the bankruptcy process or could have objected to the process, but chose not to.

Many parties expressed interest in bidding. Only three bids were made, two of which were for nominal value. The Ouaknines wanted to protect the jobs of the skilled employees and knew the business. They negotiated forbearance by the secured lender (CIBC) and through the new company offered to assume loans (which were in excess of the liquidation value) and the employee liabilities (which preserved their seniority status for benefits). Neither of the other offers did this. No unsecured creditor received any recovery, including leaseholders. So, no special preference or benefit was given to the Ouaknines and Halo would not have benefited from making the objections they raise now. Because their objections have no merit, they would not have succeeded with an objection in the Canadian bankruptcy proceeding. Even if they had successfully objected to the bid from the Ouaknines' new company and forced the assets to be liquidated, HALO still would have received no proceeds. Instead, the employees would have lost their jobs, suppliers would have lost a customer, and the secured lender would have received less than the value it received from the offer from the new company formed by Ouaknines.

Stephane De Broux, of KPMG, will be presented as a witness to be examined at the hearing on February 6, 2019. He will testify that there is nothing uncommon, devious, or fraudulent in individuals with diversified investments holding them in separate legal entities nor in one of those entities providing services to another for fair compensation. This includes owning property that is rented to another entity closely held by the same principal(s). This was not "concealed" from the bankruptcy court. It was simply irrelevant. The lease was critical to the value of the ongoing concern because the inventory was stored there. He will explain that there is nothing unusual about a bid being made by a party or entity with principals who are the same or related to the bankrupt company. A section of the Canadian bankruptcy law specifically addresses this (see Exhibit C) and was complied with. He will explain that a new entity had to be formed *before* it could place a bid or the sale be authorized by the bankruptcy court. Thus, there is nothing untoward, devious, or fraudulent in the Ouaknines forming a new company before making an offer while the bankruptcy was proceeding.

Halo was fully aware and stayed informed of the bankruptcy status as it proceeded. See Exhibit D. Mr. De Broux will testify that he exchanged correspondence with Emily Haslam multiple times, spoke to her by phone on multiple occasions, sent her documents showing the status, and spoke to a Canadian attorney from the firm of Osler, Hoskin & Harcourt LLP who inquired about the bankruptcy proceeding on behalf of Halo. He will testify that the Ouaknines received no special benefit and that their bid was not for "zero dollars." Instead, it was for considerable value and in excess of what CBIC would have received from a liquidation.

The two furniture items (Athena Table and Vintage Leather Chair) now alleged to be infringing and to have been "recently discovered" are neither. Both of these items are substantially different designs from any copyright held by Halo. Halo knew this and chose not to

4

assert a claim against them in the prior litigation. Both items were in the CDI catalog both before and all through the prior litigation. These items (and the items found to infringe) were in a catalogue produced to Halo in discovery. See Exhibit E. Halo and its counsel were (or should have been) fully aware of them and it is an intentional misrepresentation to this Court for them to have stated—under oath and/or penalty of perjury—to the contrary.

These two items were not being displayed in the Las Vegas showroom raided by Halo (see pictures), were not displayed in the September 2018 show in High Point, North Carolina, and are not in the lookbook distributed at those shows. *See* "Declaration of BG Photography, represented by Bernhard Goetsch, Owner" attached hereto as Exhibit G; *also see* "Declaration of Yevgeniy Zakharkin" attached hereto as Exhibit H. In any event, the newly accused items have not been sold By New CDI in the United States. The use of the complained-of pictures on New CDI's website is not a copyright violation or a violation of the injunction. Halo refers to these "as another example," presumably of "continued infringement," but does not explain how. Halo has not claimed copyright in the photographic images. The items are not being offered for sale and every page of the CDI website includes the notice: "*Please note that not all products shown in photos on this website are available for sale. There are some which are for decorative purpose only and are not available for sale from CDI Furniture." *See* "Declaration of Chris Lemieux" attached hereto as Exhibit I. Customers are not being misled or deceived and the photos are not a copyright infringement. But, as a show of good faith, the photos have been taken down.

II. LEGAL STANDARDS

A party seeking to obtain a preliminary injunction must demonstrate: (1) its case is likely to succeed on the merits; (2) that no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted. *Ty v. The Jones Group*, 237 F. 3d 891, 895 (7th

Cir. 2001). If the court is satisfied that these three conditions have been met, then it must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the court must consider the public interest (non-parties) in denying or granting the injunction. *Id.* This process involves engaging in what we term the sliding scale approach; the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position. *Id.* The sliding scale approach is not mathematical in nature, rather it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief. *Id.* at 896 (internal citations omitted).

The purpose of a preliminary injunction is to preserve the status quo, not to conclude the merits of the controversy. *EEOC v. City of Janesville*, 630 F.2d 1254, 1259 (7th Cir.1980) and *Lektro-Vend Corp. v. Vendo Co.*, 660 F. 2d 255, 264 (7th Cir. 1981). Thus, this is another prong the plaintiff must prove. If the plaintiff asks for more than a return to the status quo he is apt to be turned down on that ground. *Roland Machinery Co. v. Dresser Industries*, 749 F. 2d 380, 383 (7th Cir. 1984).

To sustain a claim for contempt cannot be granted unless the moving party, by clear and convincing evidence, proves *all* of the following elements: (1) the injunction sets forth an unambiguous command; (2) the accused party violated that command; (3) the accused party's violation was significant, meaning it did not substantially comply with the Order; *and* (4) the accused party failed to take steps to reasonable and diligently comply with the Order. *Prima Tek II v. Klerk's Plastic Industries, BV*, 525 F. 3d 533, 542 (7th Cir. 2008). Remedial sanctions are limited to *provable* losses sustained by the non-breaching party as a result of the violation of the

order. *Id.* at 543, citing *Autotech Techs. LP v. Integral Research and Dev. Corp.*, 499 F.3d 737, 752 (7th Cir. 2007).

    III.    ARGUMENT

        a.  Halo Is Not Likely to Succeed on the Merits

Halo raises three claim issues in its pleadings: (1) fraudulent conveyance, (2) alter ego, and (3) continued infringement. Halo is not likely to succeed on the merits of these claims. The "evidence" on which Halo relies for each of these is false, misleading, and/or grossly incomplete. The facts presented and arguments made in Defendants' Motion to Dismiss further demonstrate why.

        b.  There Was No Fraudulent Conveyance

The evidence Halo relies on relate to transfers during done litigation or outside of the bankruptcy process. Contrary to Halo's allegation, Original CDI was not "bankrupted" by the sale of the assets. It was bankrupted by the judgment against it. There is nothing uncommon, devious, or fraudulent in individuals with diversified investments holding them in separate legal entities nor in one of those entities providing services to another for fair compensation. There is nothing "fraudulent" about Daniel Ouaknine holding property through a different entity, and that entity leasing space to, among others, Original CDI. This was not "concealed" from the bankruptcy court. It was simply irrelevant. None of the leaseholders (which included leases on the spaces in Las Vegas and Nigh Point, North Carolina) received any preference or any compensation in the bankruptcy. The trustee and court found that the lease on the showroom in Canada, where the inventory was stored, was critical to the value of the ongoing concern.

There is nothing unusual about a bid being made by a party or entity with principals who are the same or related to the bankrupt company. A section of the Canadian bankruptcy law

7

specifically addresses this and, as Mr. Du Broux will testify, was complied with. A new entity *had* to be formed before while the Old CDI still existed and was in bankruptcy in order to place a bid or for the sale be authorized by the bankruptcy court. Thus, there is nothing untoward, devious, or fraudulent in the Ouaknines forming a new company before making an offer while the bankruptcy was proceeding.

Halo was fully aware and stayed informed of the bankruptcy status as it proceeded. Mr. De Broux, acting for the trustee, exchanged correspondence with Emily Haslam, in-house counsel for Halo, multiple times, spoke to her by phone on multiple occasions, sent her documents showing the status. He spoke to a Canadian attorney from the firm of Osler, Hoskin & Harcourt LLP who also inquired about the bankruptcy proceeding on behalf of Halo. The Ouaknines received no special benefit and the bid by New CDI was not for "zero dollars." The full assumption of the secured loans from CIBC was of significant and considerable value and was far greater than what CBIC would have received in a liquidation.

Halo has not alleged facts that establish a "fraudulent scheme to hinder and defraud creditors." It has just alleged unfounded assumptions and jaded conclusions by ascribing dark motivations to ordinary, legal business practices. It is simply frustrated by the fact that the judgment it received forced the Original CDI into bankruptcy, which left its unsecured claim unsatisfied. It is frustrated that it has not received its "pound of flesh" from the Ouaknines and that they may survive. The Ouaknines' made a substantial investment of risk to buy the assets of the prior company and start over, protecting the secured lender, the vendors' businesses, and the employees. Following the bankruptcy process is not a "fraudulent scheme." As Mr. Du Broux will testify, the process and Canadian bankruptcy law has safeguards to prevent such from happening, just as does U.S. bankruptcy law.

8

c. Halo Has Not Established That the Ouaknines were the Alter Ego of Old CDI

Halo carefully avoided a claim to "pierce the corporate veil," because it knew it could not meet the applicable standard. Instead, it made a vague "alter ego" argument, expecting the Ouaknines would be viewed by the Court through darkly tinted glasses. But the argument still fails if given unbiased consideration. Without facts to support its accusation, Halo attempts to portray law-abiding businessmen as conniving scoundrels, intent on usurping U.S. law through conjured-up Canadian loopholes.

d. There Is No "Continuing Infringement"

The designs newly accused by Halo of being derivatives of items found to infringe are substantially different designs. But this Court need not undertake a new infringement analysis. Halo has waived any claim it may have had against these items. Halo knew, or should have known, better than to falsely claim that the items were "newly discovered" or that the belated claim had merit.

These items were in the catalogs of Original CDI before and during the pretrial litigation. For example, a CDI catalog used as an exhibit in the trial was produced to Halo in discovery with Bates labels CDI-0048715-CDI0049040. See Exhibit F. In it (on page CDI-0048720) is the Athena table with marble top, model numbers TD1262DB & TD1266DB. In the same catalog (on page CDI-0048973) is the Reclaimed Dining Table, model number TD1213, that was fond to be infringing at trial. On page CDI-0049028, one can see the Pacific Coup Chair, model number FA1088BR, that was found to be infringing. On the opposing page of the catalog, page CDI-0049029, can be seen the newly accused Vintage Leather Chair, model number FA1096BR.

As fully explained in the accompanying Motion to Dismiss, Halo waived any infringement claim it could have asserted when it failed to include these in the prior trial and is

now estopped from relitigating these allegations, just as it would be estopped if it brought a new action.

      e.   Balance of Harms Weighs in Favor of New CDI and the Ouaknines

The request for the order to freeze and seize assets was made on false pretenses and there was no information "recently discovered" by Halo. It is unnecessary, unjust, and threatens the Ouaknines' legitimately purchased and operated business both in the U.S. and in Canada. Halo has shown no genuine risk of further transfer of assets or destruction of evidence. So long as secured claims exceed the value of liquidated assets, no unsecured creditor receive satisfaction in a forced liquidation. This remains true for both the New CDI companies and the Ouaknines individually. Halo's judgment will not be satisfied by destroying New CDI or financially ruining the Ouaknines.

The TRO goes, and requested preliminary injunction would go, far beyond preserving the status quo. Rather than preserving assets, it will invoke the end of an ongoing legitimate enterprise, destroying multiple businesses, damaging other secured and unsecured creditors, and causing employees to lose their jobs and benefits. All of this irreparable damage will result without a chance for a fair and full hearing on the merits.

      f.   The Bond Posted by Halo is Grossly Inadequate

As described above, the TRO has already caused the loss of orders and opportunity to give quotes (which become orders). This damage is likely hundreds of thousands of dollars in the short term, and could be millions of dollars in the longer terms. The requested preliminary injunction, if found to unnecessarily issued, would result in irreparable harm difficult to calculate in total. As has been shown above, Halo's likelihood of success argument is based on false

pretenses and without any "recently discovered" information. A substantial bond, in excess of $3,000,000 is needed to secure the risk to the New Defendants

    g.  No Need For Expedited Discovery—Or Any Discovery

The discovery requests already served are onerous and extraordinarily burdensome. Halo made no legitimate showing of a need for expedited discovery. As set forth above, it arguments lack merit. If the Court finds in favor of the Ouaknines as a result of the hearing on February 6, no discovery will be necessary.

IV.    CONCLUSION

As set forth above, Halo's motions are without merit. For these reason, the requested relief should be denied.

Date: February 5, 2019　　　　　　　　　　Respectfully Submitted,

Marshall Gerstein

*/s/ Julianne M. Hartzell*_____
Julianne M. Hartzel
Partner
Marshall, Gerstein & Borun LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357 USA
D: +1.312.474.6625
T: +1.312.474.6300
F: +1.312.474.0448
jhartzell@marshallip.com

*Attorney for Defendants*
DAVID OUAKNINE, DANIEL OUAKNINE, CONCEPT DESIGN INNOVATION FURNITURE, (dba MEUBLES DE CONCEPT DESIGN ETINNOVATION INC.), AND CONTAINER DIRECT INTERNATIONAL FURNITURE INC. (dba MEUBLES CONTENEUR DIRECT INTERNATIONAL INC.)

## **CERTIFICATE OF SERVICE**

      I certify that on February 5, 2019, I electronically filed the above document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of notice of electronic filing generated by CM/ECF.

                                                    */s/ Julianne M. Hartzell*