# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HALO CREATIVE & DESIGN, LTD., et al., <br><br> Plaintiffs, <br><br> vs. <br><br> COMPTOIR DES INDES, et al., <br><br> Defendants. | Case No. 1:14 C 8196 <br><br> Honorable Harry D. Leinenweber |

**NON-PARTY STEPHANE DE BROUX'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR LIMITED INTERVENTION AND TO QUASH SUBPOENAS**

Non-party Stephane De Broux respectfully submits this memorandum in support of his motion for limited intervention and to quash the Rule 45 subpoenas for documents and deposition testimony served on him on February 6, 2019 by counsel for Plaintiffs Halo Creative & Design Limited, Halo Trademarks Limited, and Halo Americas Limited ("Plaintiffs").

## PRELIMINARY STATEMENT

Movant Stephane De Broux is a resident of Montreal and a citizen of Canada who works as a Partner in the advisory practice of KPMG LLP, a Canadian partnership ("KPMG Canada"). He is not a party to this litigation and has no contacts with this forum but for one: on February 6, 2019, he travelled to Chicago and provided testimony in this Court regarding the Canadian bankruptcy proceedings of defendant Comptoir des Indes Inc. ("Old CDI")[1], in which KPMG

---

[1] Adopting the convention used by the Court in its Findings of Fact and Conclusions of Law, this memorandum will reference Comptoir des Indes Inc. as "Old CDI" and the entities that purchased Old CDI's assets in the Canadian bankruptcy sale as "New CDI."

Inc. (a subsidiary of KPMG Canada) was the court-appointed bankruptcy trustee, and Mr. De Broux served as KPMG Inc.'s primary representative.

Plaintiffs had the opportunity to examine Mr. De Broux at the hearing in order to develop evidence to support their theory that the Canadian bankruptcy proceedings were a court-assisted "fraud," but the Court specifically found that his testimony was credible and held that the Canadian bankruptcy was not fraudulent. (Dkt. 314 at ¶ II.A.3.) Seeking a second bite at the proverbial apple, Plaintiffs served Mr. De Broux, *while he was still in the courthouse*, with two Rule 45 subpoenas to produce documents and to appear for a deposition here in Chicago, along with a personal check drawn on one of their attorney's bank accounts for $40. (*See* Declaration of Jonathan R. Lahn, Exs. A-C.) The subpoenas purported to require Mr. De Broux to produce a broad array of documents at Plaintiffs' counsel's office in Chicago within 7 days and to appear for a deposition in Chicago two days later, on February 15.

The subpoenas must be quashed for multiple independently sufficient reasons:

- *First*, serving Mr. De Broux while he was in the Northern District of Illinois solely for the purpose of testifying as a witness in this proceeding violated the long-standing—and still vital—doctrine of process immunity for non-resident witnesses travelling to or attending court proceedings.

- *Second*, the subpoenas are facially invalid under Rule 45, as they purport to require Mr. De Broux to produce documents and appear for a deposition more than 100 miles from Montreal, Quebec, where he resides, is employed, and conducts business in person. Plaintiffs also failed to tender any payment for Mr. De Broux's travel, as Rule 45 requires.

- ***Third***, the subpoenas should be quashed as unduly burdensome because the only issue as to which the documents and testimony sought are conceivably relevant—Plaintiffs' collateral attack on the Canadian bankruptcy proceedings—has already been squarely decided by the Court in its February 14, 2019 Findings of Fact and Conclusions of Law. Because the documents and testimony the subpoenas seek are not relevant to any issue remaining in the case, they have no probative value to weigh against the substantial burden that compliance would impose on Mr. De Broux.

- ***Fourth***, and finally, the document subpoena improperly seeks to compel Mr. De Broux to produce documents and information that belong to KPMG Inc., the bankruptcy trustee, which he does not have the legal authority to produce.

For all of these reasons, the subpoenas are improper, unenforceable, and unduly burdensome, and must be quashed.

## I. FACTUAL BACKGROUND

After a jury trial, this Court entered a judgment in favor of Plaintiffs and against Old CDI on January 29, 2018 based on Old CDI's infringement of Plaintiffs' patents, copyrights and trademarks embodied in certain articles of furniture. (Dkt. 314 at ¶ 1.)[2] As the Court has explained, the judgment against Old CDI set in motion a series of events that resulted in Old CDI filing for bankruptcy protection in Canada, where it was headquartered and had all of its assets and operations. (*Id*. at ¶¶ 3-5.) KPMG Inc. was appointed by the Superior Court of Quebec as the bankruptcy trustee to oversee Old CDI's bankruptcy sale process. (*Id*. at ¶ 5.) Mr. De Broux was KPMG Inc.'s primary representative in the bankruptcy process. (*Id*.)

---

[2] As a non-party to this case, in which several key pleadings including Plaintiffs' pending Amended Verified Complaint are under seal and unavailable to him, Mr. De Broux relies in large part on the Court's summary of the relevant facts in its February 14, 2019 Findings of Fact and Conclusions of Law (Dkt. 314).

The bankruptcy process resulted in the court-approved sale of all of Old CDI's assets to two new entities that had been formed by David Ouaknine, the CEO of Old CDI, and his father, Daniel ("New CDI"). (Dkt. 314 at ¶¶ 7-10.) After the sale closed in August 2018, Old CDI filed for bankruptcy as an entity without any assets. (*Id.* at ¶ 10.) Plaintiffs filed a claim with the Canadian bankruptcy court as an unsecured creditor of Old CDI and had notice of the Canadian bankruptcy proceedings, but did not object to the sale or to Old CDI's subsequent declaration of bankruptcy. (*Id.*)

In January 2019,[3] Plaintiffs filed a "Verified Amended Complaint" against Old CDI, New CDI, and the Ouaknines alleging, in relevant part, that the Canadian bankruptcy sale was a "fraudulent conveyance" in violation of the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/5. This Court granted Plaintiffs' *ex parte* motion for a temporary restraining order and, on February 6, 2019, held an evidentiary hearing in connection with Plaintiffs' motion to convert the TRO into a preliminary injunction. (Dkt. 314 at ¶ 2.) Mr. De Broux appeared voluntarily at the hearing and testified regarding the Canadian bankruptcy process and the sale of Old CDI's assets. (*Id*. at ¶¶ II.A.3-4.) He was examined by counsel for Defendants and cross-examined by Plaintiffs' counsel at the hearing. Eight days later, the Court issued Findings of Fact and Conclusions of Law in which the Court observed that Mr. De Broux's testimony was credible and ruled that "the sale of assets from Old CDI to New CDI was not fraudulent." (*Id*. at ¶¶ II.A.3-4.)

While Mr. De Broux was physically present in the courthouse on February 6, one of Plaintiffs' attorneys, Barry Horwitz, presented him with two Rule 45 subpoenas. The first

---

[3] Because there are a number of docket entries in this case that are sealed, including Plaintiffs' Amended Verified Complaint, Mr. De Broux is unable to determine the exact date in January 2019 that Plaintiffs filed their Amended Complaint or moved the Court for injunctive relief.

4

subpoena (Lahn Decl., Ex. A) ordered Mr. De Broux to produce seven broad categories of documents, including every document received in connection with the Canadian bankruptcy; every communication he ever had with anyone affiliated with Old CDI; all documents regarding Old CDI "that [were] or have ever been" in his possession, custody or control; documents relating to Mr. De Broux's relationship with Old CDI's principal secured creditor, the Canadian Imperial Bank of Commerce ("CIBC"); all documents relating attempts by Mr. De Broux or KPMG Inc. to analyze or verify financial information provided by Old CDI; all documents relating to "when [Mr. De Broux] first met or spoke with David or Daniel Oauknine" and when Mr. De Broux or KPMG Inc. first learned of Old CDI or its purported financial issues; and all documents KPMG Inc. made available to prospective bidders for Old CDI's assets in connection with the bankruptcy sale. The subpoena ordered Mr. De Broux to produce these documents at Mr. Horwitz's office in Chicago by February 13.

The second subpoena (Lahn Decl., Ex. B) ordered Mr. De Broux to return to Chicago on February 15 to testify in a deposition at Mr. Horwitz's office. In addition to the two subpoenas, Mr. Horwitz tendered to Mr. De Broux a personal check for $40 (Lahn Decl., Ex. C)[4] with a handwritten notation stating "If you incur any additional travel expenses please notify our offices."

Mr. De Broux personally notified Mr. Horwitz via e-mail on February 13, 2019 that he would not be complying with the subpoenas because they were unenforceable. (Lahn Decl., Ex. D.) Mr. Horwitz replied on the same day, asking to "begin a dialogue as to how Halo may properly obtain the documents requested." (*Id*.) Alexandre Blanchard, in-house counsel for

---

[4] Counsel for Mr. De Broux has redacted the image of Mr. Horwitz's check to obscure his bank account information and home address.

KPMG Canada, replied to Mr. Horwitz on Mr. De Broux's behalf and explained that the appropriate process for obtaining discovery from Canadian respondents is via letters rogatory issued by a U.S. court and domesticated in the Canadian provincial court where the respondent resides. (*Id.*) Mr. Horwitz continued to take the position that the subpoenas were valid and enforceable because they were personally served on Mr. De Broux in Chicago. (*Id.*) Mr. De Broux subsequently retained U.S. counsel, who conferred with Mr. Horwitz on February 20, 2019 regarding Mr. De Broux's objections to the subpoenas. (Lahn Decl., ¶¶ 7-8.) Plaintiffs and Mr. De Broux have been unable to reach agreement regarding the enforceability of the subpoenas or any proposed compromise. (*Id.* ¶ 9.) Mr. De Broux therefore has no choice but to seek to intervene in this case in order to ask the Court to quash the subpoenas.

**II.     ARGUMENT**

To be compelled to produce documents or sit for a deposition, a non-party must be validly served with a subpoena that is itself valid. The subpoenas at issue here fail on both counts: Mr. De Broux was invalidly served with subpoenas that flout the basic requirements of Rule 45. And even if they were not facially invalid and unenforceable, the subpoenas are unduly burdensome because they seek to impose onerous document production and deposition obligations on Mr. De Broux in support of a legal theory—Plaintiffs' collateral attack on Old CDI's Canadian bankruptcy proceedings—that this Court has already rejected. Finally, while issued to Mr. De Broux in his personal capacity, Plaintiffs' document subpoena seeks documents and information that belong to KPMG Inc. in its capacity as bankruptcy trustee, and that are not in Mr. De Broux's "possession, custody or control" because he lacks the authority to produce them in his personal capacity. For all of these reasons, the subpoenas should be quashed.

6

### A. Mr. De Broux Was Not Validly Served Because He Enjoyed Immunity From Process While Attending and Travelling To and From the Hearing

Over a century ago, the Supreme Court of the United States recognized the rule, already well-established in state courts, that "suitors, as well as witnesses, coming from another state or jurisdiction, are exempt from the service of civil process while in attendance upon court, and during a reasonable time in coming and going." *Stewart v. Ramsey*, 242 U.S. 128, 129 (1916). *See also Durst v. Tautges, Wilder & McDonald*, 44 F.2d 507, 508-11 (7th Cir. 1930) (recognizing that "[a] suitor or witness is exempt from service of process while without the jurisdiction of his residence for the purpose of attending court in an action to which he is a party.").

While the rule is old, it continues in force and has been applied in this District as recently as 2017. *See Haan Corporation Korea v. Sparkling Drink Systems Innovation Ctr. Hong Kong*, No. 16 CV 50311, 2017 WL 8186998 (N.D. Ill. Dec. 15, 2017) (quashing service on non-resident defendant who was present in Northern District of Illinois courthouse to attend hearing in another matter). As Judge Alonso's well-reasoned decision in *Haan Corporation* shows, the "long-standing rule that a non-resident is immune from service of process while in a forum for the purpose of attending court proceedings" is not a mere vestige of common law formalities; rather, it continues to promote an important policy "by ensuring that a court will not be hampered by wary, non-resident witnesses and parties who refuse to attend the court's proceedings for fear that they will be served" with additional process to which they would not be subject but for their presence in court. 2017 WL 8186998, at *1.

This case illustrates perfectly the need for such a rule. Mr. De Broux is not a party to the underlying litigation. He does not reside, work, or regularly conduct business in the Northern District of Illinois. He lacks the "minimum contacts" with this District that would be

7

necessary to sustain specific jurisdiction over him under our Constitution's Due Process Clause. He had absolutely no obligation to travel to this Court to provide his testimony, which the Court found "credible" and relied on in part to render its Findings of Fact and Conclusions of Law. Had he known that he would be served by Plaintiffs' counsel with burdensome document and deposition subpoenas that could not have been served on him but for his voluntary attendance, he might have been deterred from attending the hearing and providing his evidence—the precise result the rule seeks to avoid. *See Lamb v. Schmitt*, 285 U.S. 222, 225 (1932) (exposing non-resident witnesses to service of process "would prevent, or . . . tend to discourage, the voluntary attendance of those whose presence is necessary or convenient to the judicial administration in the pending litigation.").

The court in *Haan Corporation* recognized that the process immunity rule for non-resident witnesses prevents this undesirable result and encourages witnesses to attend proceedings they could not otherwise be compelled to attend, thereby promoting the administration of justice in the federal courts. Because Mr. De Broux was immune from service of process when travelling to and attending the February 6th hearing, Plaintiffs' service of the two subpoenas on him at the courthouse was ineffective, and the subpoenas should be quashed.

**B.     The Subpoenas Must Be Quashed Because They Are Facially Invalid Under Rule 45**

In addition to being improperly served, the subpoenas are facially invalid because they fail to comply with the basic requirements of Rule 45. Rule 45(c)(1)(A) provides that a subpoena for testimony may command a person to attend a hearing, deposition or trial ***only*** "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). Similarly, Rule 45(c)(2)(A) provides that a subpoena may only command production of documents within the same 100-mile parameters. Fed. R.

Civ. P. 45(c)(2)(A). Despite these clear instructions, and Plaintiffs' recognition that "Mr. De Broux is a resident of Montreal and Quebec" (*see* 2/13/19 E-mail from B. Horwitz to A. Blanchard, Lahn Decl., Ex. D), Plaintiffs' subpoenas purport to require Mr. De Broux to attend a deposition and produce documents in Chicago, almost 1,000 miles from where he lives, works, and conducts business.

The remedy for these defects is clear: Rule 45(d)(3)(A)(ii) requires the Court to "quash or modify" a subpoena that "requires a person to comply beyond the geographic limits specified in Rule 45(c)." *See also Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 183 (N.D. Ill. 2013) ("Under Rule 45, a court is required to quash a subpoena under various circumstances, including when it requires a non-party to travel more than 100 miles from where he resides, is employed, or regularly transacts business . . . ."). This is true even where the subpoena was served within the geographic boundaries of the district. *See Jamsports Entm't, LLC v. Paradama Prods., Inc.*, No. 02 C 2298, 2005 WL 14917, at *1 (N.D. Ill. Jan. 3, 2005) ("[E]ven if a subpoena is *served* within the geographic boundaries of a district . . . it must be quashed if it requires a non-party witness to *travel* more than 100 miles from where he or she resides, employs, or regularly transacts business.") (emphasis in original).

Plaintiffs also flouted the requirement set forth in Rule 45(a)(1) that they tender "the fees for 1 day's attendance ***and the mileage allowed by law***" when they presented Mr. De Broux with a check for $40 and no travel costs, with a scrawled note to "notify [Mr. Horwitz's] offices" if he incurred additional travel costs. (Lahn Decl., Ex. C.) This failure is itself a sufficient basis to quash the deposition subpoena. *See Parker*, 291 F.R.D. at 188 ("Plaintiff failed to tender any witness fees or travel costs . . . . Failure to provide these required fees is a violation of Federal Rule of Civil Procedure 45(b)(1) and sufficient basis to quash a subpoena."); *In re Dennis v.*

*Dennis and Gulf South Title Corp.*, 330 F.3d 696, 705 (5th Cir. 2003) ("[W]hen the subpoenaing party makes no attempt to calculate and tender at least a reasonably estimated mileage allowance, he plainly violates Rule 45(b)(1) . . . . Thus, a court does not abuse its discretion by quashing [the] subpoena . . . .")

It is evident on the face of the subpoenas and the accompanying personal check from Mr. Horwitz that the subpoenas violate the geographic limitations of Rule 45(c) and that Plaintiffs violated Rule 45(b)(1) by failing to tender any amount of money to defray the substantial costs Mr. De Broux would have incurred in travelling from Montreal to Chicago, as the deposition subpoena purported to require. Both failures are sufficient to render the subpoenas invalid. Accordingly, they must be quashed.

### C. The Subpoenas Must Be Quashed Because They Impose an Undue Burden On Mr. De Broux

Rule 45(d)(3)(A)(iv) provides that the Court "must quash or modify" a subpoena that "subjects a person to an undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "[A]s with all discovery, information sought under Rule 45—while it need not be admissible at trial—must nonetheless be 'relevant to any party's claim or defense and proportional to the needs of the case . . . .'" *United States v. Handrup*, No. 13 C 7733, 2016 WL 8738943, at *1 (N.D. Ill. July 11, 2016). Because of the different expectations for non-parties in accepting the burdens of litigation, "courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs." *Tresona Multimedia, LLC v. Legg*, No. 15 C 4834, 2015 WL 4911093, at *2 (N.D. Ill. Aug. 17, 2015). "A subpoena is obviously unduly burdensome if the information is wholly irrelevant under any reasonable legal theory [. . . ]." *Builders Ass'n of Greater Chicago v. City of Chicago*, 215 F.R.D. 550, 554 (N.D. Ill. 2003).

Here, Plaintiffs seek broad document discovery from Mr. De Broux relating to Old CDI's bankruptcy, including every document received in connection with the bankruptcy, every communication with anyone affiliated with Old CDI, all documents relating to his and KPMG Inc.'s efforts to verify financial information provided by Old CDI, and documents relating to his relationship with CIBC, Old CDI's primary secured creditor. Furthermore, despite the fact that Mr. De Broux already provided testimony before the Court in this case in a hearing where Plaintiffs had the opportunity to cross-examine him, Plaintiffs also seek to burden him with seven more hours of deposition testimony. There can be no doubt that complying with both subpoenas would impose a substantial burden on Mr. De Broux.

This substantial burden has no countervailing benefit in the form of information "relevant to any party's claim or defense" in this case. To the contrary, the documents and testimony Plaintiffs seek via their subpoenas to Mr. De Broux are relevant only to Plaintiffs' theory that Old CDI's Canadian bankruptcy was a sham and the court-approved sale of Old CDI's assets was a "fraudulent conveyance" that can be voided under the Illinois Uniform Fraudulent Transfer Act. Setting aside Plaintiffs' highly dubious legal theory—that final judgments of a duly-empowered foreign court can be abrogated via collateral attack by a party that chose not to participate in the proceedings despite having notice and the opportunity to do so—this Court has unambiguously rejected Plaintiffs' argument.

In its February 14 Findings of Fact and Conclusions of Law, this Court found that Mr. De Broux's in-court testimony was credible and that Plaintiffs "failed to prove that the transfer carried out in the Canadian Bankruptcy proceeding was fraudulent." (Dkt. 314 at ¶ II.A.3.) Indeed, the Court found that "the sale of the assets to New CDI was the only practical alternative to the liquidation of Old CDI." (*Id.*) The Court also held that it "owe[d] comity" to the

11

Canadian bankruptcy court's approval of the sale, which was "entitled to preclusive effect." (*Id*. at ¶ II.A.4.) The Court unambiguously summarized its findings on the fraudulent transfer topic: "Accordingly, the Court finds that the sale of assets from Old CDI to New CDI was not fraudulent and therefore does not assist Halo in proving that the TRO should be turned into a preliminary injunction." (*Id*.)

Because the Court has already ruled that the Canadian bankruptcy sale was not fraudulent, and that the Canadian court's approval of the sale was "entitled to preclusive effect" under principles of international comity, there is no longer any need for discovery on the issue. Because the documents and testimony sought by Plaintiffs' subpoenas are not relevant to any issue that remains to be decided in the case, any burden on Mr. De Broux is, by definition, undue. *Builders Ass'n*, 215 F.R.D. at 554 (where information sought is irrelevant, subpoena is "obviously unduly burdensome"). Therefore, the subpoenas should be quashed in their entirety.

> **D. Plaintiffs' Document Subpoena Improperly Seeks to Compel Production of Documents That Belong to KPMG Inc.**

Plaintiffs opportunistically served Mr. De Broux with a subpoena seeking production of documents, calculating—incorrectly, as demonstrated above—that by doing so they could obtain discovery of a foreign citizen with no ties to this forum without going through the letters rogatory process that governs discovery of Canadian individuals and entities. Although the subpoenas were served on Mr. De Broux personally and Mr. De Broux is the only respondent listed on the subpoenas, Plaintiffs' document requests and correspondence indicate that they seek to leverage their subpoena to Mr. De Broux to obtain documents that belong to KPMG Inc. as an entity, and not to Mr. De Broux in his personal capacity. This is improper.

As discussed above, and reflected in the Court's Findings of Fact and Conclusions of Law, KPMG Inc.—the firm—was appointed as the bankruptcy trustee for Old CDI. Mr. De

12

Broux, in his capacity as a partner of KPMG Canada, was KPMG Inc.'s principal representative in connection with the bankruptcy. Plaintiffs' document subpoena seeks to erase the distinction between Mr. De Broux as an individual and KPMG Inc. as an entity by demanding that Mr. De Broux produce all documents relating to Old CDI's bankruptcy, including documents relating to KPMG Inc.'s attempts to analyze or verify Old CDI's financial information (Lahn Decl., Ex. A, Request No. 5); documents relating to when KPMG Inc. first "became aware of [Old CDI]" and its "purported financial issues" (*Id.*, Request No. 6); and all documents placed in KPMG Inc.'s virtual data room for potential buyers of Old CDI to review (*Id.*, Request No. 7). Any doubt that Plaintiffs seek to use their subpoena to Mr. De Broux as a hook to obtain discovery from KPMG Inc. is resolved by Mr. Horwitz's February 13 e-mail to KPMG Canada's in-house counsel, Alexandre Blanchard, in which Mr. Horwitz writes that "one of our requests was for a complete copy of the bankruptcy documents created and/or filed by ***KPMG and Mr. De Broux***" and asks "Is it KPMG's position that Halo is not entitled to receive a complete copy of the entire bankruptcy record in ***Mr. De Broux's and KPMG's possession***?" (2/13/19 E-mail from B. Horwitz to A. Blanchard, Lahn Decl., Ex. D (emphasis added).)

For the reasons discussed in Sections II.A-C above, the subpoenas are invalid and not enforceable as to Mr. De Broux in his individual capacity. But even assuming that Plaintiffs' document requests to Mr. De Broux were enforceable as to Mr. De Broux, his "possession, custody or control" does not extend to documents that belong to KPMG Inc., the entity, which is plainly ***not*** a respondent to Plaintiffs' subpoenas. *See, e.g., American Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 501 (D. Kan. 2001) (subpoena to individual defendant seeking documents that were the property of his non-party employer was improper, notwithstanding individual's "practical ability" to access the documents, because requesting party "cannot

13

properly seek to obtain from one entity or individual what belongs to another."). To the extent that the Court is inclined to enforce any part of Plaintiffs' document subpoena, it must quash the subpoena to the extent that it seeks documents or information that belong to KPMG Inc. and not Mr. De Broux in his personal capacity.

### E. The Court Should Award Mr. De Broux His Attorney Fees Incurred in Moving to Quash the Subpoenas

As discussed above, the subpoenas were improperly served; are facially invalid based on even a cursory reading of Rule 45; are unduly burdensome in their entirety because they seek discovery relating to an issue the Court has already resolved in this litigation; and seek to improperly force Mr. De Broux to produce documents that belong to KPMG Inc. Plaintiffs' ill-conceived end-run around the normal procedures for obtaining international discovery was doomed from its inception, yet Plaintiffs persisted—even after Mr. De Broux objected, after Mr. Blanchard informed them of the proper procedure to follow, and after undersigned counsel met and conferred with them. Plaintiffs' aggressiveness (or carelessness) in issuing the subpoenas and intransigence when informed of the subpoenas' numerous flaws have imposed substantial costs upon Mr. De Broux, who was forced to retain counsel and intervene in this litigation in order to quash the subpoenas.

Rule 45(d)(1) explicitly provides that attorney fees may be awarded where an issuing party fails to comply with Rule 45's directive to "avoid imposing undue burden or expense on a person subject to the subpoena." As this Court has held, "[g]ood faith in issuing a subpoena is not sufficient to avoid sanctions . . . if a party has issued the subpoena in violation of the duty imposed by that Rule." *Am. Soc. of Media Photographers, Inc. v. Google, Inc.*, No. 13 C 408, 2013 WL 1883204, at *6 (N.D. Ill. May 6, 2013) (citing *Builders Ass'n of Greater Chi.*, 2002 WL 1008455 at *3). The Court "must determine if there has been a breach of counsel's duty to

14

take reasonable steps to avoid imposing an undue burden or expense upon the person subject to the subpoena." *Id*. In making that inquiry, the Court may also consider the reasonableness of the issuing party's conduct after being presented with information indicating the futility of seeking to enforce the subpoena. *Id*. (awarding attorney fees where counsel for plaintiff continued to insist on compliance with subpoena rather than withdrawing subpoena).

Here, Plaintiffs' counsel behaved unreasonably both in issuing the subpoenas and in their subsequent conduct. Reading Rule 45 should have put sophisticated counsel such as Plaintiffs' attorneys in this case on notice that—process immunity aside—they could not validly require Mr. De Broux to produce documents or appear for testimony nearly 1,000 miles from his places of residence and business. They similarly knew or should have known that they could not satisfy Rule 45(b)(1) by presenting a witness from Montreal with $40 dollars and what amounted to an I.O.U. to cover the costs of travelling from Canada to Chicago for a deposition. Moreover, Plaintiffs continued to demand compliance with the subpoenas even after Mr. De Broux objected, after Mr. Blanchard directed them to the appropriate letters rogatory process for obtaining discovery in Canada, and after U.S. counsel met and conferred and outlined the subpoenas' numerous defects. In short, Plaintiffs' counsel failed to "take reasonable steps to avoid imposing an undue burden or expense upon" Mr. De Broux as Rule 45(d)(1) requires. Therefore, Mr. De Broux respectfully requests that, in addition to quashing Plaintiffs' subpoenas, the Court award him reasonable attorney fees and costs associated with this motion.

## III. CONCLUSION

For the reasons set forth above, Mr. De Broux's motion for limited intervention should be granted; Plaintiffs' Rule 45 subpoenas to Mr. De Broux should be quashed in their entirety; and the Court should award Mr. De Broux his reasonable attorney fees and costs incurred in connection with this motion.

Dated: February 26, 2019                    Respectfully Submitted,

*/s/ Jonathan R. Lahn*
John F. Hartmann, P.C.
Jonathan R. Lahn
Samantha G. Rose
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
john.hartmann@kirkland.com
jonathan.lahn@kirkland.com
sam.rose@kirkland.com

*Counsel for Non-Party Stephane De Broux*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2019, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issued through the Court's Electronic Case Filing System on this date.

*/s/ Jonathan R. Lahn*
Jonathan R. Lahn

*Counsel for Non-Party Stephane De Broux*